E-FILED
Tuesday, 29 November, 2022  03:56:20 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **JULIE CAMPBELL,**<br>**KEITH SADAUSKAS,**<br>**DIANA BICKFORD** and<br>**KERRIE MULHOLLAND,** on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiff**,**<br><br>v.<br><br>**SIRIUS XM RADIO, INC.**<br><br>Defendant. | Case No.: _____<br><br><br>**ORIGINAL CLASS**<br>**ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Julie Campbell, Keith Sadauskas, Diana Bickford and Kerrie Mulholland (collectively "Plaintiffs"), on behalf of themselves and all similarly situated individuals, by and through their undersigned counsel, allege on personal knowledge, investigation of their counsel, and on information and belief, the following claims against Sirius XM Radio, Inc. ("Sirius XM" or "Defendant"):

### NATURE OF ACTION

1.      For years, Sirius XM has engaged in a business model of placing unsolicited telemarketing calls urging persons who own or lease cars to sign up for Sirius XM's satellite radio service.  Sirius XM, or companies acting on its behalf, made these calls in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA" or "the Act"). Among other things, the TCPA and its accompanying regulations prohibit telemarketers from

1

making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement. It also requires companies like Sirius XM to maintain and use an Internal Do-Not-Call Registry to record and honor requests from individuals who ask Sirius XM to stop calling them.

2.      Sirius XM is well aware of its illegal calling practices.  Hundreds of people contacted the Federal Trade Commission ("FTC") to complain about these calls.  In the past decade Sirius XM has entered into class action settlement agreements twice in which it has agreed to pay over $60 million to class members.  Even with all these complaints and the millions spent, Sirius XM has continued its illegal calls unabated.

3.      Each of the Plaintiffs has spent years receiving unwanted telemarketing calls from Sirius XM.  Plaintiffs Sadauskas, Bickford and Mulholland's phone numbers are on the National Do-Not-Call Registry. Plaintiffs either repeatedly asked Sirius XM to stop calling them or were precluded by Sirius XM's failure to maintain the required opt-opt mechanism to record do-not-call requests.  Nevertheless, Sirius XM made many dozens of calls to these Plaintiffs.

4.      Plaintiffs now bring this action on behalf of themselves, and all others similarly situated, to try to stop Sirius XM's harassing calling practices.

**SUBJECT MATTER JURISDICTION AND VENUE**

5.      This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See* 28 U.S.C. §1331; 28 U.S.C. §1367; *Mims v. Arrow Fin. Serv., LLC,* 565 U.S. 368 (2012).

6.      Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendant called Plaintiff Julie Campbell on her phone located in Mahomet, Illinois where she lives.

7.      Venue is also proper in this Court under 28 U.S.C. §1391(b) as Defendant regularly does business in the district and division, is subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, "resides" in the district.

## PARTIES AND PERSONAL JURISDICTION

8.      Plaintiff Julie Campbell is, and at all times mentioned herein was, a citizen of the State of Illinois who resides in Mahomet, Illinois.

9.      Plaintiff Keith Sadauskas is, and at all times mentioned herein was, a citizen of the State of Washington who resides in Vancouver, Washington.

10.      Plaintiff Diana Bickford is, and at all times mentioned herein was, a citizen of the State of Maine who resides in Norridgewock, Maine.

11.      Plaintiff Kerrie Mulholland is, and at all times mentioned herein was, a citizen of the State of North Carolina who resides in Burgaw, North Carolina.

12.      Defendant Sirius XM is a Delaware corporation with its principal place of business located at 1500 Eckington Pl NE, Washington, DC 20002.

13.      At all times pertinent, Defendant was, and is, in the business of providing satellite radio programming for a fee.

14.      Defendant transacts business throughout the United States, including in Illinois and specifically in this district and division.

15.      In addition to transacting business in Illinois, Defendant contracts to supply services or goods in Illinois, including in this district and division.

16.      Defendant regularly does, or solicits, business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of Illinois, including in this district and division.

17.     In addition, through its acts in calling, or causing to be called, Plaintiffs' Do-Not-Call Registered phones, Defendant caused tortious injury in the nature of an invasion of Plaintiffs' privacy rights in this State, either by its acts in this State or, alternatively, by acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed, or services rendered in this State.

18.     Personal jurisdiction may be exercised over Defendant pursuant to 735 ILCS 5/2-209.

19.     Plaintiffs intend to serve Defendant through the Defendant's registered agent in Delaware.

20.     At all times pertinent, Defendant was, and is, engaged in interstate commerce, and Defendant used, and is using, instrumentalities of interstate commerce, including telephone lines and the mail, in the course of its activities set forth herein.

**APPLICABLE LAW**

21.     The TCPA was enacted in 1991, more than thirty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

22.     The National Do Call Registry.   Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do- Not-Call Registry. 47 C.F.R. § 64.1200(c) (2). According to the Federal Trade Commission ("FTC"), the Registry, which was established in 2003, currently has over 244 million active registrations.

23.     These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.*

24.     Because a telephone subscriber listed on the National Do-Not-Call Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the National Do-Not-Call Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id.* § 64.1200(c)(2)(ii) & 64.1200(f)(8) (defining prior express written consent as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."). The written agreement must include the telephone number to which the calls may be placed. *Id.*

25.     A person whose number is on the National Do-Not-Call Registry and has received more than one telephone solicitation within any twelve-month period by, or on behalf of, the same entity in violation of the TCPA, can sue the violator for $500 per violation, a figure that may be trebled for willful or knowing violations. 47 U.S.C. §227(c)(5).

26.     Telemarketers who wish to avoid calling numbers listed on the National Do-Not-Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

27.     To avoid violating the TCPA by calling registered numbers, telemarketers *inter alia* must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

28.    "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

29.    <u>Internal Do Not Call Registries</u>.  Regulations implementing the TCPA also require entities to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's Internal Do- Not-Call Registry within a reasonable time, not to exceed thirty days from the date of the request. *Id.* at § (d)(3).

30.    To ensure proper access to an Internal Do Not Call Registry, all telemarketing calls utilizing prerecorded messages must "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism." *Id.* § 64.1200(b)(3).

31.    "When the artificial or prerecorded voice telephone message is left on an answering machine or a voice mail service, such message must also provide a toll free number that enables the called person to call back at a later time and connect directly to the automated, interactive voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list." *Id*.

32.    Once a number is added to an entity's Internal Do-Not-Call Registry, "the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(d)(3).

33.    <u>Seller Liability for TCPA Violations</u>.  The TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any

violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

34.     The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

35.     The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. In re Joint Pet. Filed by Dish Network, 28 FCC Rcd. 6574 (2013).

36.     <u>Established Business Relationship</u>.  An established business relationship ("EBR") is an affirmative defense to a violation of the TCPA's National Do Not Call Registry prohibitions.

37.     The FCC has ruled that:

> [T]he definition of "established business relationship" requires a voluntary two-way communication between a person or entity and a residential subscriber regarding a purchase or transaction made within eighteen (18) months of the date of the telemarketing call or regarding an inquiry or application within three (3) months of the date of the call. Any seller or telemarketer using the EBR as the basis for a telemarketing call must be able to demonstrate, with clear and convincing evidence, that they have an EBR with the called party.

Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 FR 44144-01, at ¶ 83 (2003) ("2003 FCC Order").  Thus, an EBR defense is only accepted where a defendant establishes, by "clear and convincing evidence," a "voluntary two-way

communication" that evidences either a "payment," "financial transaction," "inquiry," or "application." *Id.* at ¶ 81.

38.     Sirius does not have an EBR with those consumers who purchased or leased vehicles with a free trial subscription to Sirius XM radio.  Rather, the relationship that exists at the time of the lease or purchase of a vehicle is between the consumer and a car dealer, not Sirius XM.

## SIRIUS XM RECENT TCPA SETTLEMENTS

39.     During the past decade alone, Defendant Sirius XM has paid a total of over $60 million into settlement funds for two separate class action complaints alleging violations of the TCPA. *See Hooker v. Sirius XM Radio, Inc.,* No. 4:13-cv-003, 2017 U.S. Dist. LEXIS 201809 (E.D. Va. May 11, 2017); *Buchanan v. Sirius XM Radio, Inc.,* No. 3:17-CV-0728-D, 2019 U.S. Dist. LEXIS 146269 (N.D. Tex. Aug. 28, 2019).

40.     In *Hooker v. Sirius,* the complaint alleged that Sirius and it telemarketers placed prerecorded or automated calls to class members who had free access to three months of Sirius XM radio service, but did not become paying subscribers. No. 4:13-cv-003, 2017 U.S. Dist. LEXIS 201809, at *2-3 (E.D. Va. May 11, 2017).  The $ $35 million Settlement Fund resolved three similar class action lawsuits: *Knutson v. Sirius XM Radio Inc.,* No. 12-cv-0418 (S.D. Cal.); *Elikman v. Sirius XM Radio Inc.,* No. 12-cv-2093 (ND. Ill.); and *Parker v. Sirius XM Radio Inc.,* No. 8:15-cv-01710 (M.D. Fla.).  Sirius XM agreed to ensure that its telephone systems complied with the TCPA going forward. *Id*. at *4.

41.     In *Buchanan v. Sirius,* the plaintiff filed a class action complaint alleging that Sirius XM and its telemarketers violated the TCPA by not complying with the TCPA's National Do Not Call Registry and Internal Do Not Call Registry requirements.  Again, Defendant Sirius XM entered into a Settlement Agreement whereby it paid $25 million into a Settlement Fund, and

agreed to alter some of its telemarketing practices, including providing notices contained in its Customer Agreement, glove box materials and welcome kit to explain that consumers may be contacted and explaining how consumers can take steps to place themselves on Sirius XM's internal DNC list.  No. 3:17-CV-0728-D, 2019 U.S. Dist. LEXIS 146269 (N.D. Tex. Aug. 28, 2019).

42.     Sirius XM, however, failed to implement practice changes sufficient to comply with the TCPA.  It therefore has continued the same practices challenged in *Buchanan* of calling persons on the Do Not Call Registry without their prior express written consent.

43.     Indeed, as described below, Plaintiff Sadauskas, Plaintiff Mulholland, and the Pre-Buchanan National Do-Not-Call Registry Class bought or leased cars *prior to* the Buchanan Settlement, but still received Sirius XM's telemarketing calls long after that settlement, even though they have not purchased or leased another car.  Because they had no interaction with Sirius XM (other than the unwanted phone calls), it would have been impossible for them to be exposed to the supposed practice changes, even if those changes were sufficient for Sirius XM to form an EBR with them, which they were not.

## COMPLAINTS TO THE FEDERAL TRADE COMMISSION

44.     Consumers have registered their ongoing dissatisfaction with Sirius XM's illegal telemarketing calls since approval of the Buchanan settlement on February 1, 2020 ("*Buchanan* Approval Date")

45.     A recent Freedom of Information Act request to the FTC resulted in the return of data showing 454 consumer complaints since the *Buchanan* Approval Date.  Those complaints detail  Defendant Sirius XM's serial violations of the TCPA, the Federal Communications Commission Rules, 47 C.F.R. §§ 64.1200 *et seq.,* and/or the Telemarketing Sales Rule, 16 C.F.R.

§ 310. *Id.* Of the 454 consumer complaints, 444 complaints were made by individuals who had registered their phone numbers on the National Do- Not-Call Registry, 296 complaints were made by individuals who requested that Sirius XM stop calling, and 380 complaints were made by individuals who reported having no existing business relationship with Sirius XM.

### FACTUAL ALLEGATIONS AS TO PLAINTIFF JULIE CAMPBELL

46.    In or about February 2017, Plaintiff Julie Campbell ("Ms. Campbell") purchased a Lincoln MKZ in Peoria, Illinois.

47.    The Lincoln came with a Sirius XM Radio pre-installed, an option that she did not request and was not able to refuse.[1]

48.    Upon information and belief, without Ms. Campbell's consent, Sirius XM obtained contact information for Ms. Campbell from the dealership where she purchased the Lincoln, including her cellular phone number (XXX) XXX-5279, which was registered to Ms. Campbell and was used as a primary residential line for her household.

49.    Commencing in August 2018 and continuing through October 2020, Ms. Campbell received marketing calls approximately once every two months from Sirius XM on her phone number ending in 5279 with offers for her to become a Sirius XM customer.

50.    During that time period, from approximately August 2018 through October 2020, Ms. Campbell endured tremendous personal hardship. Ms. Campbell's son was very sick on kidney dialysis for eleven months during this period. Ms. Campbell could not turn the ringer on her cell phone off in case of a call from the doctor regarding news about a transplant. Every phone call that was not about her son's transplant was a disappointment. Ultimately, Ms. Campbell gave her son one of her kidneys in July 2019. Then in October 2020, her fiancé passed away.

---

[1] Ms. Campbell purchased another used car in October 2020, but that car did not come with a free trial subscription to Sirius XM.

51.     Given everything going on in her life, Ms. Campbell was especially motivated to stop receiving unwanted telemarketing phone calls.  Therefore, shortly after the first telemarketing calls from Sirius XM to her phone number ending in 5279, Ms. Campbell asked the company to stop calling her. Nevertheless, Ms. Campbell continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 5279 including beyond the 30-day period following her requests not to be contacted by Sirius XM.

52.     The Sirius XM telemarketing calls Ms. Campbell received significantly interrupted her daily activities, including while Ms. Campbell was working full-time as an administrative assistant for the University of Illinois Medical School and while she was providing kidney dialysis services for her son.  She especially recalls one incident in which she was coordinating delivery of dialysis equipment to her home and she received a telemarketing call from Sirius XM that forced her to stop what she was doing in order to answer the phone.

53.     Ms. Campbell stopped using her phone number when her fiancé died in October 2020.

54.     Ms. Campbell has never signed up for Sirius XM's service or paid it anything. Ms. Campbell therefore never gave Sirius XM prior express written consent to place telemarketing calls to her, or entered into an EBR with Sirius XM.  Furthermore, even if she once had an EBR, which she did not, any purported EBR with Sirius XM could not protect the company because she continued to receive unwanted telemarketing calls more than 18 months after her most recent car purchase.  *See* 2003 FCC Order, ¶ 83.

### FACTUAL ALLEGATIONS AS TO PLAINTIFF KEITH SADAUSKAS

55.     In April 2010, Plaintiff Keith Sadauskas ("Mr. Sadauskas") added to the National Do-Not-Call Registry his cellular phone number (XXX) XXX-1277, which he uses as his primary

11

residential line. A true and correct certification that the phone number ending in 1277 was registered on the National Do-Not-Call Registry is annexed hereto as Exhibit "A" and incorporated herein by reference.

56.     In 2019, Mr. Sadauskas purchased a new Chevrolet Tahoe.

57.     The Tahoe came with an unconfigured Sirius XM Radio installation, a service that he did not request and was not able to refuse.

58.     Upon information and belief, without Mr. Sadauskas' permission, Sirius XM obtained from the car dealer where he purchased the Tahoe contact information for Mr. Sadauskas, including his cellular phone number ending in 1277.

59.     Commencing in or about May 2019 and continuing through 2022, Mr. Sadauskas received marketing calls from Sirius XM on his phone number ending in 1277 with offers for him to become a Sirius XM paying customer.

60.     According to Mr. Sadauskas, from 2019 to 2022, he received marketing calls from Sirius XM "four to five times a month."

61.     In or about August 2019, Mr. Sadauskas asked Sirius XM to stop calling his phone number ending in 1277 and requested that Sirius XM add his number to the Sirius XM Internal Do-Not-Call Registry. Nevertheless, Mr. Sadauskas continued to receive unauthorized marketing calls from Sirius XM to his phone number ending in 1277 including beyond the 30-day period following his request not to be contacted again by Sirius XM.

62.     Mr. Sadauskas has never signed up for Sirius XM's service or paid it anything. Mr. Sadauskas therefore never gave Sirius XM prior express written consent to place telemarketing calls to him, or entered into an EBR with Sirius XM. Indeed, any purported EBR with Sirius XM

would have expired as he continued to receive unwanted telemarketing calls more than 18 months after his car purchase. *See* 2003 FCC Order, ¶ 83.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF DIANA BICKFORD

63.     Plaintiff Diana Bickford's ("Ms. Bickford") cellular phone number (XXX) XXX-8744, which she uses as her primary residential line, has been registered on the National Do-Not-Call Registry since June 2007. A true and correct certification that the phone number ending in 8744 was registered on the National Do-Not-Call Registry is annexed hereto as Exhibit "B" and incorporated herein by reference.

64.     In or about June 2021, Ms. Bickford bought a 2018 Kia Sorrento from a dealership in Waterville, Maine.

65.     The Kia Sorrento came with an unconfigured Sirius XM Radio installation, a service that she did not request and was not able to refuse.

66.     Upon information and belief, without Ms. Bickford's permission, Sirius XM obtained contact information for Ms. Bickford, including her phone number ending in 8744 from the car dealer where she purchased the Sorrento.

67.     Commencing in or about September 2021 and continuing through at least July 2022, Ms. Bickford received marketing calls from Sirius XM on her phone number ending in 8744 with offers for her to become a Sirius XM paying customer.

68.     According to Ms. Bickford, from in or about September 2021 through at least July 2022, she received a marketing call from Sirius XM approximately 3-4 times per month. Ms. Bickford did not answer her phone when she was at work, but the calls interrupted her family time outside of working hours.

69.     During one of the marketing phone calls she received from Sirius XM, Ms. Bickford asked Sirius XM to stop calling her and requested that the company add her to its Internal Do-Not-Call Registry. Nevertheless, Ms. Bickford continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 8744 including beyond the 30-day period following her request not to be contacted again.

70.     Ms. Bickford has never signed up for Sirius XM's service or paid it anything.  Ms. Bickford therefore never gave Sirius XM prior express written consent to place telemarketing calls to her, or entered into an EBR with Sirius XM.  *See* 2003 FCC Order, ¶ 83.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF KERRIE MULHOLLAND**

71.     In 2011, Plaintiff Kerrie Mulholland ("Ms. Mulholland") purchased a new Hyundai Elantra Touring.

72.     The Hyundai Elantra Touring came with an unconfigured Sirius XM Radio installation, a service that she did not request and was not able to refuse.

73.     Upon information and belief, without Ms. Mulholland's permission, Sirius XM obtained contact information for Ms. Mulholland, including her cellular phone number (XXX) XXX-3130, which she uses as her primary residential line, from the car dealer where she purchased the Elantra.

74.     Commencing in 2011 or 2012 and continuing through 2021, Ms. Mulholland received marketing calls from Sirius XM on her phone number ending in 3130 with offers for her to become a Sirius XM paying customer.

75.     Ms. Mulholland changed vehicles several times from 2014 to 2018. In 2014, she traded in her vehicle for a new Hyundai Tucson. In 2017, she traded her vehicle for a new Hyundai Elantra. In 2018, she traded her vehicle for a used Kia Sportage which is her current vehicle.

14

76.     In April 2019, Ms. Mulholland added her phone number ending in 3130 to the National Do-Not-Call Registry. A true and correct certification that the phone number ending in 3130 was registered on the National Do-Not-Call Registry is annexed hereto as Exhibit "C" and incorporated herein by reference.

77.     According to Ms. Mulholland, in 2020 and 2021, she received a marketing call from Sirius XM "a few times a week."  These calls interrupted her daily activities, including while working as a driver for Uber.  The marketing calls distracted Ms. Mulholland while she was driving her Uber, especially when she was picking up and dropping off customers.

78.     Ms. Mulholland began to block numbers to stop receiving marketing calls from Sirius XM. Ms. Mulholland blocked dozens of phone numbers and eventually stopped receiving calls from Sirius XM in 2021.

79.     In or about 2012, during one of the marketing phone calls she received from Sirius XM, Ms. Mulholland asked Sirius XM to stop calling her and requested that the company add her to its Internal Do-Not-Call Registry. Nevertheless, Ms. Mulholland continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 3130 including beyond the 30-day period following her request not to be contacted again.

80.     Ms. Mulholland has never signed up for Sirius XM's service or paid it anything. Ms. Mulholland therefore never gave Sirius XM prior express written consent to place telemarketing calls to her, or entered into an EBR with Sirius XM.  Indeed, any purported EBR with Sirius XM would have expired as she continued to receive unwanted telemarketing calls more than 18 months after her car purchase. *See* 2003 FCC Order, ¶ 83.

## CLASS ACTION ALLEGATIONS

**NATIONAL DO-NOT-CALL REGISTRY CLASSES**:

81.　　Plaintiff Sadauskas and Plaintiff Mulholland bring Count I of this action under Rule

23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as the **Pre-**

**Buchanan National Do-Not-Call Registry Class**:

> All natural persons in the United States who purchased a car prior
> to the *Buchanan* Approval Date, received more than one telephone
> solicitation call in a 12-month period on their residential phone
> number telemarketing Sirius XM's satellite radio service after the
> *Buchanan* Approval Date and more than 31 days after registering
> their telephone number with the National Do-Not-Call Registry, and
> did not purchase Sirius XM's satellite radio service.

82.　　Plaintiff Bickford brings the same claim on behalf of the **Post-Buchanan National**

**Do-Not-Call Registry Class**:

> All natural persons in the United States who purchased a car after
> the *Buchanan* Approval Date, received more than one telephone
> solicitation call in a 12-month period on their residential phone
> number telemarketing Sirius XM's satellite radio service the
> *Buchanan* Approval Date and more than 31 days after registering
> their telephone number with the National Do-Not-Call Registry, and
> did not purchase Sirius XM's satellite radio service.

83.　　Excluded from these class definitions are any employees, officers, directors of

Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

84.　　Plaintiffs reserve the right to modify these class definitions as they obtain relevant

information, including marketing call records, through discovery.

**INTERNAL DO-NOT-CALL REGISTRY CLASS**:

85.　　Plaintiffs bring Count II of this action under Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of a class defined as:

> All natural persons in the United States who received one or more
> telephone solicitation calls on their residential phone number

16

telemarketing Sirius XM's satellite radio service after the *Buchanan* Approval Date and after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry, and did not purchase Sirius XM's satellite radio service.

86.     Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

**INTERNAL DO-NOT-CALL ILLINOIS SUB CLASS**:

87.     Plaintiff Ms. Campbell brings Count III of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a sub class tentatively defined as:

> All natural persons in Illinois who, after the *Buchanan* Approval Date, received one or more telephone solicitation calls on their residential phone number telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and purchase Sirius XM's satellite radio service.

88.     Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

**DO-NOT-CALL NORTH CAROLINA SUB CLASS**:

89.     Plaintiff Ms. Mulholland brings Count IV of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a sub class tentatively defined as:

> All natural persons in North Carolina who, after the *Buchanan* Approval Date, received one or more telephone solicitation calls on their residential phone number telemarketing Sirius XM's satellite radio service after registering their telephone number with the National Do-Not-Call Registry and who did not purchase Sirius XM's satellite radio service.

90.     Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

**INTERNAL DO-NOT-CALL NORTH CAROLINA SUB CLASS**:

91.     Plaintiff Ms. Mulholland brings Count V of this action under Rule 23(b)(3) of the

Federal Rules of Civil Procedure on behalf of a sub class tentatively defined as:

> All natural persons in North Carolina who, after the *Buchanan*
> Approval Date, received one or more telephone solicitation calls on
> their residential phone number telemarketing Sirius XM's satellite
> radio service after registering their telephone number with
> Defendant's Company-Specific Do-Not-Call Registry and did not
> purchase Sirius XM's satellite radio service.

92.     Excluded from this class definition are any employees, officers, directors of

Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

**INTERNAL DO-NOT-CALL WASHINGTON SUB CLASS**:

93.     Plaintiff Mr. Sadauskas brings Count VI of this action under Rule 23(b)(3) of the

Federal Rules of Civil Procedure on behalf of a sub class tentatively defined as:

> All natural persons in Washington who, after the *Buchanan*
> Approval Date, received one or more telephone solicitation calls on
> their residential phone number telemarketing Sirius XM's satellite
> radio service after registering their telephone number with
> Defendant's Company-Specific Do-Not-Call Registry and did not
> purchase Sirius XM's satellite radio service.

94.     Excluded from this class definition are any employees, officers, directors of

Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

95.     Plaintiffs reserve the right to modify the class definitions as they obtain relevant

information, including marketing call records, through discovery.

96.     The proposed classes can be identified through telephone records and databases

used in transmitting the marketing calls.

97.     The number of Class Members is believed to be in the millions, rendering the

classes so numerous that individual joinder of all class members is impracticable.

18

98.     Plaintiffs are members of some or all the proposed classes.

99.     There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

        a.      Did Defendant place, or have placed, marketing calls to Plaintiffs and the Class Members?

        b.      Whether Defendant's conduct violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?

        c.      Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?

        d.      Whether Defendant's conduct violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?

        e.      Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?

        f.      Whether Defendant willfully or knowingly violated the Illinois Telephone Solicitations Act, 815 ILCS 413 *et seq.*?

        g.      Whether Defendant willfully or knowingly violated the North Carolina Telemarketing Law, NC Code § 75-100 *et seq.*?

        h.      Whether Defendant willfully or knowingly violated the Washington Do Not Call Statute, RCW 80.36.390 *et seq.*?

100.    **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the proposed Classes' Members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the proposed Classes.

101.    **Adequacy**. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the proposed Classes because their interests coincide with, and are not antagonistic to, the interest of the Members of each proposed Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of Members of the proposed Classes.

102.    **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to proposed Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and/or knowledge, not upon the effect of Defendant's conduct on the Classes' Members.

103.    The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the proposed Classes individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the proposed Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

104.    Class certification is appropriate because Defendant has negligently and/or willfully or knowingly acted on grounds generally applicable to the proposed Classes, making appropriate equitable injunctive relief with respect to Plaintiffs and the proposed Class Members. Fed. R. Civ. P. 23(b)(2).

**CAUSES OF ACTION**

**Count I**
**Violation of 47 U.S.C. § 227(c)**
**Telemarketing in violation of the TCPA's National Do-Not-Call provisions**

105.    Plaintiffs Keith Sadauskas, Diana Bickford and Kerrie Mulholland incorporate by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

106.    In violation of 47 U.S.C. § 227(c), Defendants knowingly and willfully placed calls to Plaintiffs Sadauskas and Mulholland and all Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class, telemarketing the sale of Sirius XM Satellite Radio to residential phone numbers listed on the National Do-Not-Call Registry.

107.    Plaintiffs Sadauskas and Mulholland and Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class received more than one such call in a twelve month period.

108.    By virtue of the foregoing, Defendant negligently and/or knowingly and willfully violated 47 U.S.C. §227(c) as to Plaintiffs Sadauskas and Mulholland and the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class by initiating, on more than one occasion, a telephone solicitation call to the residential phone numbers of Plaintiffs Sadauskas and Mulholland and the Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan

21

National Do-Not-Call Registry Class without the prior express written consent or permission of Plaintiffs or the Members of the Classes, and without there being an established business relationship with the Plaintiffs or the Members of the Classes.

109.    Pursuant to 47 U.S.C. § 227(c)(5), Plaintiffs Sadauskas and Mulholland and the Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class are entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiffs Sadauskas and Mulholland and each Member of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class.

110.    Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiffs Sadauskas and Mulholland, on behalf of themselves and the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class, also seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

### Count II
### Violation of 47 U.S.C. § 64.1200(d)(3)
### Failure to honor company-specific Do-Not-Call requests

111.    Plaintiffs incorporate by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

112.    In violation of 47 C.F.R. § 64.1200(d)(3), Defendant knowingly and willfully continued to make telemarketing calls to Plaintiffs and the Internal Do-Not-Call Registry Class after they were listed on the Defendant's Internal Do-Not- Call Registry.

113.   Plaintiffs and the Internal Do-Not-Call Registry Class received more than one such call in a twelve-month period.

114.   Pursuant to 47 U.S.C. §227(c)(5), Plaintiffs and each Internal Do-Not-Call Registry Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiffs and each Internal Do-Not-Call Registry Class Member.

115.   Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiffs, on behalf of themselves and the Internal Do-Not-Call Registry Class, also seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

**Count III**
**Violation of 815 ILCS 413 *et seq.***
**Telemarketing in Violation of the Illinois Telephone Solicitations Act**

116.   Plaintiff Julie Campbell incorporates by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

117.   Defendant engaged in "telephone solicitation" within the meaning of 815 ILCS 413/5.

118.   In violation of 815 ILCS 413/15, Defendant knowingly and willfully continued to make telemarketing calls to Plaintiff Ms. Campbell and the Illinois Sub Class Members after they requested to be added to the Defendant's Internal Do-Not- Call Registry.

119.   Plaintiff Ms. Campbell and the Illinois Sub Class Members received more than one such call in a twelve-month period.

120.    Pursuant to 815 ILCS 413/25(d), Plaintiff Ms. Campbell and each Illinois Sub Class Member is entitled to recover from Defendant three times the actual damages plus costs and reasonable attorney fees.

**Count IV**
**Violation of NC Code § 75-100 *et seq.***
**Telemarketing in Violation of the North Carolina Telemarketing Law § 75-102(a)**

121.    Plaintiff Kerrie Mulholland incorporates by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

122.    Plaintiff Ms. Mulholland and the DNC North Carolina Sub Class Members meet the definition of "telephone subscriber" as defined by NC Code § 75-101(11).

123.    Defendant engaged in "telephone solicitation" within the meaning of NC Code § 75-101(9).

124.    In violation of NC Code § 75-102(a), Defendant knowingly and willfully continued to make telemarketing calls to Plaintiff Ms. Mulholland and the DNC North Carolina Sub Class Members after their telephone numbers appeared on the "Do Not Call" Registry, which includes the National Do-Not-Call Registry pursuant to NC Code § 75-101(3).

125.    Plaintiff Ms. Mulholland and the DNC North Carolina Sub Class Members received more than one such call in a twelve-month period.

126.    Pursuant to NC Code § 75-105(b), Plaintiff Ms. Mulholland and each DNC North Carolina Sub Class Member is entitled to recover from Defendant $500 from the first violation, $1,000 from the second violation, and $5,000 for the third and any other violation that occurs within two years of the first violation.

127.    Pursuant to NC Code § 75-105(d), the court may award a prevailing Plaintiff reasonable attorneys' fees if the court finds that Defendant's violations were willful.

24

128.    Plaintiff Ms. Mulholland and the DNC North Carolina Sub Class, also seek injunctive relief prohibiting Defendant's violations of NC Code § 75-102 in the future.

### Count V
### Violation of NC Code § 75-100 *et seq.*
### Telemarketing in Violation of the North Carolina Telemarketing Law § 75-102(b)

129.    Plaintiff Kerrie Mulholland incorporates by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

130.    Plaintiff Ms. Mulholland and the IDNC North Carolina Sub Class Members meet the definition of "telephone subscriber" as defined by NC Code § 75-101(11).

131.    Defendant engaged in "telephone solicitation" within the meaning of NC Code § 75-101(9).

132.    In violation of NC Code § 75-102(b), Defendant knowingly and willfully continued to make telemarketing calls to Plaintiff Ms. Mulholland and the IDNC North Carolina Sub Class Members after they previously communicated to Defendant their desire to receive no further telephone solicitations.

133.    Plaintiff Ms. Mulholland and the IDNC North Carolina Sub Class Members received more than one such call in a twelve-month period.

134.    Pursuant to NC Code § 75-105(b), Plaintiff Ms. Mulholland and each IDNC North Carolina Sub Class Member is entitled to recover from Defendant $500 from the first violation, $1,000 from the second violation, and $5,000 for the third and any other violation that occurs within two years of the first violation.

135.    Pursuant to NC Code § 75-105(d), the court may award a prevailing Plaintiff reasonable attorneys' fees if the court finds that Defendant's violations were willful.

136.   Plaintiff Ms. Mulholland and the IDNC North Carolina Sub Class, also seek injunctive relief prohibiting Defendant's violations of NC Code § 75-102 in the future.

**Count VI**
**Violation of RCW 80.36.390** *et seq.*
**Telemarketing in Violation of the Washington Do Not Call Statute, RCW 80.36.390(6)**

137.   Plaintiff Sadauskas incorporates by reference paragraphs 1-105 of this Complaint as if fully set forth herein.

138.   Defendant engaged in "telephone solicitation" within the meaning of RCW 80.36.390(1).

139.   In violation of RCW 80.36.390(6), Defendant knowingly and willfully continued to make telemarketing calls to Plaintiff Sadauskas and the IDNC Washington Sub Class Members after they previously communicated to Defendant their desire to receive no further telephone solicitations.

140.   Plaintiff Sadauskas and the IDNC Washington Sub Class Members received more than one such call in a twelve-month period.

141.   Pursuant to RCW 80.36.390(10), Plaintiff Sadauskas and each IDNC Washington Sub Class Member is entitled to recover from Defendant $100 for each violation.

142.   Pursuant to RCW 80.36.390(10) the court should also award Plaintiff Sadauskas his reasonable attorneys' fees and costs.

143.   Plaintiff Sadauskas and the IDNC Washington Sub Class, also seek injunctive relief prohibiting Defendant's violations of RCW 80.36.390 in the future.

**INCORPORATION OF PARAGRAPHS**

144.   Every paragraph in this Complaint is hereby incorporated into every other paragraph.

26

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and as representatives of all other persons similarly situated, pray for judgment against Defendant, awarding relief as follows:

      a.      Certifying the proposed National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the National Do-Not-Call Registry Class, Internal Do-Not-Call Registry Class, IDNC Illinois Sub Class, DNC North Carolina Sub Class, IDNC North Carolina Sub Class, and IDNC Washington Sub Class;

      b.      As to the National Do-Not-Call Registry Class, statutory damages of $500 per violation as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

      c.      As to the Internal Do-Not-Call Registry Class, statutory damages of $500 per violation as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

      d.      As to the IDNC Illinois Sub Class, DNC North Carolina Sub Class, IDNC North Carolina Sub Class, and IDNC Washington Sub Class, statutory damages as provided by law;

      e.      As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to residential phone numbers that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party or at a time when no established business relationship exists between Defendant and the called party;

      f.      As to the Internal Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency

calls to residential phone numbers that are on the Internal Do-Not-Call Registry without first obtaining the prior express written consent of the called party;

    g.  Pre-judgment interest from the date of filing this suit;

    h.  Reasonable attorneys' fees;

    i.  All costs of this proceeding; and

    j.  All general, special and equitable relief to which Plaintiffs and the respective Members of the National Do-Not-Call Registry Class and the Internal Do-Not-Call Registry Class are entitled by law.

## <u>DEMAND FOR JURY TRIAL</u>

    Plaintiffs hereby demand trial by jury on all counts so triable.


Dated: November 29, 2022        Respectfully submitted,

                By: */s/ Laura M. Carroll*_____

                Mason A. Barney, Esq. (*pro hac vice* to be filed)
                Laura M. Carroll, Esq. (# 6338793)
                SIRI & GLIMSTAD LLP
                200 Park Avenue
                17th Floor
                New York, NY 10016
                Telephone: (212) 532-1091
                Email: mbarney@sirillp.com
                Email: lcarroll@sirillp.com

                Daniel M. Hutchinson, Esq. (*pro hac vice* to be filed)
                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                275 Battery Street, 29th Floor
                San Francisco, California  94111-3339
                Telephone:  (415) 956-1000
                Facsimile:  (415) 956-1008
                Email:  dhutchinson@lchb.com

Jarrett L. Ellzey, Esq. (*pro hac vice* to be filed)
ELLZEY & ASSOCIATES, PLLC
1105 Milford St,
Houston, TX 77006
Telephone:  (888) 350-3931
Email:  Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone:  217-544-3403
Email:  cdraper@feldman-wasser.com

*Attorneys for Plaintiffs and the Proposed Classes*