E-FILED
Wednesday, 15 February, 2023  04:07:17 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

|  |  |
|---|---|
| JULIE CAMPBELL,<br>KEITH SADAUSKAS,<br>DIANA BICKFORD and<br>KERRIE MULHOLLAND, on behalf of<br>themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>SIRIUS XM RADIO, INC,<br><br>  Defendant. | Case No. 2:22-cv-02261-CSB-EIL<br><br>Hon. Colin Stirling Bruce |

**DEFENDANT SIRIUS XM RADIO INC.'S MOTION TO STRIKE CLASS
ALLEGATIONS AND MOTION TO DISMISS
WITH INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| BACKGROUND | | 3 |
| A. | Plaintiffs' Counsel Have Already Been Paid for Changing Sirius XM's Calling Practices | 3 |
| B. | The Current Lawsuit | 6 |
| ARGUMENT | | 8 |
| I. | The Court Should Strike the Post-*Buchanan* National Class Allegations from the Complaint Because Plaintiffs' Counsel Are Facially Inadequate | 8 |
| A. | Courts closely scrutinize the adequacy of counsel in class actions, especially for ethical breaches and conflicts of interest | 8 |
| B. | Plaintiffs' counsel cannot adequately represent the Post-*Buchanan* National Class because of their representations to a sister federal court in the *Buchanan* fee motion that cannot be reconciled with what they allege here | 9 |
| II. | The Court Should Dismiss Count III for Failure To State a Claim | 13 |
| CONCLUSION | | 15 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brunner v. Liautaud*,
No. 14-c-5509, 2015 WL 1598106 (N.D. Ill. Apr. 8, 2015)....................................................12

*Buonomo v. Optimum Outcomes, Inc.*,
301 F.R.D. 292 (N.D. Ill. 2014)....................................................................................11, 12

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011) ........................................................................................8, 10

*Day v. Humana Ins. Co.*,
335 F.R.D. 181 (N.D. Ill. 2020)...........................................................................................8

*Epstein v. Epstein*,
843 F.3d 1147 (7th Cir. 2016) ............................................................................................13

*Freeman v. Quicken Loans, Inc.*,
No. 18 C 1052, 2019 WL 13203215 (N.D. Ill. Feb. 26, 2019)......................................13, 14

*Heller Fin., Inc. v. Midwhey Powder Co.*,
883 F.2d 1286 (7th Cir. 1989) ............................................................................................13

*Iowa Mut. Ins. Co. v. Hennings*,
No. 05-3073, 2006 WL 2945477 (C.D. Ill. Oct. 13, 2006).................................................15

*Jackson v. Marion Cnty.*,
66 F.3d 151 (7th Cir. 1995) ................................................................................................15

*Kasalo v. Harris & Harris, Ltd.*,
656 F.3d 557 (7th Cir. 2011) ..............................................................................................12

*Koch v. Jerry W. Bailey Trucking, Inc.*,
51 F.4th 748 (7th Cir. 2022) .........................................................................................8, 13

*Meza v. Sirius XM Radio Inc.*,
No. 17-CV-02252, 2020 WL 905588 (S.D. Cal. Feb. 25, 2020)........................................12

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................................................................10

*Parish v. City of Elkhart*,
614 F.3d 677 (7th Cir. 2010) ................................................................................................3

*Parungao v. Cmty. Health Sys., Inc.*,
858 F.3d 452 (7th Cir. 2017) ................................................................................................3

*Piambino v. Bailey*,
757 F.2d 1112 (11th Cir. 1985) ............................................................................................1

*Redman v. Radioshack Corp.*,
768 F.3d 622 (7th Cir. 2014) ..............................................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Reliable Money Order, Inc. v. McKnight Sales Co.*,
704 F.3d 489 (7th Cir. 2013) ................................................................8, 9, 11

*Soo Line R.R. v. St. Louis Sw. Ry. Co.*,
125 F.3d 481 (7th Cir. 1997) ..................................................................14

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
303 F.R.D. 287 (N.D. Ill. 2014)...............................................................8

*Wright v. Fam. Dollar, Inc.*,
No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)...................................8

**STATUTES**

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.*...........................3

47 U.S.C. § 227 ......................................................................3, 4

815 Ill. Comp. Stat. 413/15 .............................................................13

815 Ill. Comp. Stat. 413/25 ........................................................2, 13, 14

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200 ..................................................................1, 3

Fed. R. Civ. P. 23 ...................................................................2, 8, 11

Fed. R. Civ. P. 12 ......................................................................2

Merriam-Webster Online Dictionary (accessed Feb. 20, 2019) ....................................14

Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the
TCPA Went from Consumer Protection Statute to Litigation Nightmare*,
2018 U. Ill. J.L. Tech. & Pol'y 313 (2018)...................................................4

Victor E. Schwartz & Cary Silverman, *The Case in Favor of Civil Justice Reform*,
65 Emory L.J. Online 2065 (2016) .........................................................4

"It has been said that class actions are strike suits promoted by attorneys who simply are seeking fat fees." *Piambino v. Bailey*, 757 F.2d 1112, 1143 (11th Cir. 1985) (internal quotation marks omitted). This case proves the point. The ink has barely dried on the last settlement negotiated by these Plaintiffs' counsel with Sirius XM Radio Inc. ("Sirius XM") in an earlier case for which they received nearly $6.5 million in fees for their efforts. They now return with new plaintiffs and raise largely the same claims that they previously settled—namely, that Sirius XM unlawfully calls consumers who have placed their telephone numbers on the national Do-Not-Call ("DNC") Registry. That case, like this one, largely turned on whether consumers—once they purchased or leased vehicles containing Sirius XM's satellite radio service—had an "established business relationship" with Sirius XM as defined in 47 C.F.R. § 64.1200(f)(5), permitting Sirius XM to call them even though their phone numbers were on the DNC Registry.

In settling the earlier case, Sirius XM agreed to make even clearer that Sirius XM has established business relationships with such consumers and therefore may call them. In presenting the settlement agreement to the federal court in that earlier case, Plaintiff's counsel asserted that the settlement resulted from "their successful efforts" and that Sirius XM had "agreed to meaningful business practice changes." Fee Motion 2, 7–8, *Buchanan v. Sirius XM Radio, Inc.*, No. 17-cv-728 (N.D. Tex. Jan. 14, 2020), ECF No. 126 ("*Buchanan* Fee Motion"). Plaintiffs' counsel further asserted that the settlement negotiations were "hard-fought" and that the resulting business practice changes "provide[d] significant additional value" to the class—and most importantly, that those changes represented "substantial steps" that "enhance[]" Sirius XM's "EBR defense." *Id.* at 7–8.

Plaintiffs' counsel now seek to represent new plaintiffs in a cynical attack on the very changed business policies for which they pressed in the earlier settlement and for which they were

1

richly rewarded in fees.  In doing so, though, Plaintiffs' counsel cannot "fairly and adequately represent the interests of" a proposed class of consumers who purchased vehicles after the date of the *Buchanan* Settlement ("the Post-*Buchanan* National Class"), at which time the changed business practices in that settlement were in effect.  Fed. R. Civ. P. 23(g)(1)(B).

On the one hand, Plaintiffs' counsel cannot attack the adequacy of those changed business practices because they would be contradicting what they previously told the *Buchanan* court in extolling the benefits of the settlement in that case, which they cannot do without asserting (however wrongly) that they sold out their last class; doing so would also destroy whatever credibility they have with the Court.  On the other hand, if Plaintiffs' counsel do not challenge the adequacy of that settlement, they will be relinquishing an argument that many of the members of the Post-*Buchanan* National Class might want to make (however wrong such an argument would be).  Either way, the putative class loses.  Plaintiffs' counsel's inadequacy is apparent from the face of the Complaint; no amount of discovery will change anything.  The Post-*Buchanan* National Class allegations must be stricken.[1]

The Court should also dismiss Count III of the Complaint for failure to state a claim under Illinois law.  The relevant Illinois statute provides a cause of action only to "customer[s]" of the alleged telephone solicitor.  815 Ill. Comp. Stat. 413/25.  But the Complaint expressly states that Julie Campbell—the only named Illinois plaintiff—is not Sirius XM's customer.

Sirius XM therefore moves to strike the Post-*Buchanan* National Class allegations under Federal Rules of Civil Procedure 12(f) and 23, and moves to dismiss Count III for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Post-*Buchanan* National Class is the largest of the proposed classes in the Complaint, and eliminating it will dramatically affect the path of this litigation.

## BACKGROUND[2]

### A.    Plaintiffs' Counsel Have Already Been Paid for Changing Sirius XM's Calling Practices.

Just a few years ago, in March 2017, Thomas Buchanan filed a class action against Sirius XM for alleged violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA").  *See* Compl. ¶ 1, *Buchanan*, No. 17-cv-728 (N.D. Tex. Mar. 13, 2017), ECF No. 1 ("*Buchanan* Compl.").  The TCPA provides a private right of action for "person[s] who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" 47 U.S.C. § 227(c)(5).  Those regulations set out two prohibitions, one of which is relevant to this motion:  "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2) (the "national DNC" allegations).[3]  Those regulations also provide a safe harbor:  the term "telephone solicitation" "does not include a call or message … [t]o any person with whom the caller has an established business relationship," often abbreviated as "EBR."  *Id.* § 64.1200(f)(15)(ii).

---

[2] The Complaint's allegations are taken as true for purposes of this motion.  *See Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).  Additionally, courts "may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."  *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

[3] The statute also prohibits a person from "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).  Plaintiffs bring class claims under that so-called "internal do-not-call registry" prohibition (Compl. ¶¶ 85, 87, 89, 91, and 93), and Sirius XM will demonstrate at a later point that those proposed classes cannot be certified because they are filled with individualized issues.

Buchanan claimed that he received more than one call from Sirius XM in a twelve-month period despite being on the national DNC Registry. *Buchanan* Compl. ¶¶ 31, 58. He also claimed that he had no "established business relationship" with Sirius XM. *Id.* ¶ 54. Buchanan therefore claimed at least $500 per unlawful call for himself (and for each putative class member in supposedly similar circumstances) under 47 U.S.C. § 227(c)(5). *Id.* ¶¶ 55, 60.

The statutory damages provision in the TCPA creates the risk of ruinous liability, which is what attracts plaintiffs' lawyers to the statute. *See, e.g.*, Victor E. Schwartz & Cary Silverman, *The Case in Favor of Civil Justice Reform*, 65 Emory L.J. Online 2065, 2082 (2016) (noting how the TCPA's "uncapped $500 statutory damage provision" has "given rise to a cottage industry for lawyers and serial plaintiffs"); Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the TCPA Went from Consumer Protection Statute to Litigation Nightmare*, 2018 U. Ill. J.L. Tech. & Pol'y 313, 322 (2018) (describing the rise in TCPA litigation). Not surprisingly, Buchanan and Sirius XM eventually agreed to a settlement. Class Action Settlement Agreement and Release, *Buchanan*, No. 17-cv-728 (N.D. Tex. May 1, 2019), ECF No. 105-1 ("*Buchanan* Settlement"). Representing the class were Jarrett L. Ellzey, Jr., of Hughes Ellzey, LLP, Mark A. Alexander P.C., Mason A. Barney of Siri & Glimstad LLP, Turner Law Offices, LLC, Werman Salas P.C., and Daniel Hutchinson of Lieff Cabraser Heimann & Bernstein, LLP. *Id.* ¶ 2.4; Final Settlement Approval Order and Judgment¶ 5, *Buchanan*, No. 17-cv-728 (N.D. Tex. Jan. 28, 2020), ECF No. 129 ("*Buchanan* Order"). The *Buchanan* Settlement contained three elements of consideration: $20 million in cash, an option (in lieu of cash) to receive free access to Sirius XM's premium service at the time, and Sirius XM's agreement to implement the following changed business practices:

a.  Sirius XM shall ensure its outbound dialing practices incorporate a pre-dial check for internal Do-Not-Call ("DNC") status just prior to dialing, and neither Sirius XM nor its vendors or agents will dial any number found to be on the internal DNC list.

b.  Sirius XM shall, twice annually, train its vendor personnel on proper DNC practices.

c.  Sirius XM shall regularly audit its outbound telemarketing vendors and internal data management practices to ensure proper management of internal DNC requests.

*Buchanan* Settlement ¶ 4.  Sirius XM also agreed to implement the following changed business practices, which are most critical for purposes of this motion because they relate directly to the national DNC claim raised by the Post-*Buchanan* National Class:

d.  Sirius XM shall ensure that its Customer Agreement has an easily visible and clear explanation that trial subscribers have a business relationship with Sirius XM that may result in Sirius XM calling them; the Customer Agreement shall also provide an explanation of how Sirius XM communicates with consumers, and shall provide notice to consumers that Sirius XM may call them regarding their service and trial or other subscription, a URL where consumers may manage their contact preferences and an 800 number they may call for customer service.

e.  Sirius XM shall modify the timing of its telemarketing calls to ensure that Sirius XM does not make calls to trial subscribers until a reasonable period of time after the mailing of the welcome kit (which shall include a copy of the Customer Agreement or, if the welcome kit is delivered electronically, a link to the Customer Agreement).

f.  Sirius XM shall, wherever possible, include in vehicle material that provides subscription details an [sic] explanation of how Sirius XM communicates with consumers, and shall provide notice that Sirius XM may call them regarding their service and trial or other subscription, a URL where they may manage their contact preferences and an 800 number they may call for customer service.

*Id.*

Buchanan then moved for attorneys' fees and expenses, representing that *Buchanan* was "a hard-fought litigation, where both sides were ably represented." *Buchanan* Fee Motion 2.  In particular, it informed the federal court that "Class Counsel secured a very significant recovery as

part of the settlement," *including "meaningful business practice changes*." *Id.* at 6–7 (emphasis added) (capitalization altered). The motion said that "[p]laintiff agrees that Sirius XM has taken substantial steps to communicate its calling practices to trial subscribers and that in so doing *Sirius XM has enhanced its EBR defense upon which it relies on calling trial subscribers to market paid subscriptions*." *Id.* at 7–8 (emphasis added). In fact, as Plaintiffs' counsel confirmed, those "hard-fought practice changes are extremely valuable to class members." *Id.* at 25; *see also id.* at 10 (arguing that the fact that "no-one filed an objection to the requested fee award" is "a testament to the high quality of the settlement Class Counsel obtained for the class"); Jarrett L. Ellzey's Declaration ¶ 15, *Buchanan*, No. 17-cv-728 (N.D. Tex. Jan. 14, 2020), ECF No. 126-1 ("Sirius XM's commitments involving its TCPA policies are significant.").

The lawyers requested $6,471,000 in attorneys' fees and costs for their efforts. *Buchanan* Fee Motion 2, 30. The district court approved the request. *Buchanan* Order ¶ 13.

**B.     The Current Lawsuit.**

In November 2022, Plaintiffs Julie Campbell, Keith Sadauskas, Diana Bickford and Kerrie Mulholland filed this case on behalf of various classes and subclasses, alleging violations of the TCPA and assorted state-law analogues. Compl. ¶ 4. Most importantly, the Complaint raises DNC allegations on behalf of a Pre-*Buchanan* National Class and a Post-*Buchanan* National Class. *Id.* ¶¶ 81–82, 106. The Pre-*Buchanan* National Class is defined as those persons on the national DNC Registry who purchased a vehicle before the *Buchanan* Settlement and who received more than two phones calls in a twelve-month period after the date of that settlement. *Id.* ¶ 81. The Post-*Buchanan* National Class is defined as those persons on the national DNC Registry who purchased a vehicle after the *Buchanan* Settlement and similarly received calls. *Id.* ¶ 82. It is the larger of the two proposed national DNC classes, and the largest proposed class in the Complaint.

6

The Complaint also alleges a violation of the Illinois Telephone Solicitations Act ("ITSA"), brought by a sub-class of persons in Illinois who, after the *Buchanan* Settlement, received one or more phone calls after registering on Sirius XM's Internal Do-Not-Call Registry. *Id.* ¶¶ 87, 118.

Plaintiffs here are represented by three of the same lawyers and two of the same law firms that prosecuted and settled *Buchanan* and that received substantial fees for their efforts there: Daniel M. Hutchinson of Lieff Cabraser Heimann & Bernstein, LLP (who led the earlier effort), Mason A. Barney of Siri & Glimstad LLP, and Jarrett L. Ellzey of Ellzey & Associates, PLLC. Having pocketed substantial fees from the *Buchanan* settlement, they now attack the practices that they negotiated, describing them as "supposed practice changes" that are "not" "sufficient for Sirius XM to form an EBR," *Id.* ¶ 43.

To sum up: The lawyers who now seek to certify the Post-*Buchanan* National Class told the Northern District of Texas that they had "ably represented" Mr. Buchanan and the settlement class there and that they "secured a very significant recovery as part of the [*Buchanan* Settlement]." *Buchanan* Fee Motion 2, 6–7 (capitalization altered). They told the *Buchanan* court that, via its changed practices, "Sirius XM has enhanced its EBR defense upon which it relies on calling trial subscribers to market paid subscriptions," *id.* at 7–8, further describing the settlement negotiations that led to those changed practices as "hard-fought," with the result being changed business practices that were "meaningful" and "extremely valuable," *id.* at 7–8, 25. They received nearly $6.5 million for their efforts. They now challenge as not good enough those practice changes that previously formed a key part of their "significant recovery."

## ARGUMENT

**I.    The Court Should Strike the Post-*Buchanan* National Class Allegations from the Complaint Because Plaintiffs' Counsel Are Facially Inadequate.**

"[W]hen pleadings 'are facially defective and definitively establish that a class action cannot be maintained,' the court can properly grant a motion to strike class allegations at the pleading stage." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014) (quoting *Wright v. Fam. Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010)). And "[a] showing of counsel's adequacy to represent a class is a crucial step in this type of litigation; a court cannot certify a class without it." *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 755 (7th Cir. 2022). Here, the Complaint itself conclusively shows that Plaintiffs' counsel will not be able to make that showing, and the Court should strike the Post-*Buchanan* National Class allegations.

**A.    Courts closely scrutinize the adequacy of counsel in class actions, especially for ethical breaches and conflicts of interest.**

"A motion to strike class allegations is analyzed under Federal Rule of Civil Procedure 23." *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 198 (N.D. Ill. 2020). Under Rule 23, "[a]nything 'pertinent to counsel's ability to fairly and adequately represent the interests of the class' bears on the class certification decision." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013) (quoting Fed. R. Civ. P. 23(g)(1)(B)).

In particular, "unethical conduct" will "raise[] a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case." *Id.* at 499. Under the "serious doubt standard," "misconduct that prejudices the class or creates a direct conflict between counsel and the class requires … denial" of class certification. *Id.* at 498. Such misbehavior need not rise to "the most egregious misconduct" for a court to deny certification. *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th

8

Cir. 2011).  Rather, "when class counsel have demonstrated a lack of integrity through misconduct and unethical action, a court can have no confidence that they will act as conscientious fiduciaries of the class."  *Reliable Money Order*, 704 F.3d at 495 (internal quotation marks omitted).

> **B.      Plaintiffs' counsel cannot adequately represent the Post-*Buchanan* National Class because of their representations to a sister federal court in the *Buchanan* fee motion that cannot be reconciled with what they allege here.**

Plaintiffs' counsel have put themselves in an impossible position.  If they argue that the *Buchanan* Settlement is inadequate, they will sabotage their credibility before the Court by contradicting the claims they made to get paid in *Buchanan*.  But if they abandon that challenge to the *Buchanan* Settlement, they necessarily will abandon an argument that putative members of the Post-*Buchanan* National Class may want to pursue.  There is no in-between path through which to navigate, and the answer is clear no matter which path Plaintiffs' counsel choose to take:  they are not adequate counsel, and the Post-*Buchanan* National Class allegations must be stricken.

1.      To start, Plaintiffs' counsel cannot argue that the *Buchanan* Settlement is inadequate—they have already told the Northern District of Texas that the changed practices in that settlement were "hard-fought," "meaningful," and "extremely valuable," and that these practices "enhance[] [Sirius XM's] defense upon which it relies on calling trial subscribers to market paid subscriptions."  *Buchanan* Fee Motion 7–8, 25.  Making those representations, Plaintiffs' counsel "ask[ed] that the Court approve an attorney award of $6,471,000.00," and told the district court that they "believe[] this amount is fair and reasonable, especially given the results achieved for the class."  *Id.* at 11.  They pointed out that no one objected to the settlement, saying it was "a testament to the high quality of the settlement [they] obtained for the class."  *Id.* at 10. In approving the attorneys' request, the district court necessarily "assess[ed] the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel,

9

bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).

Given that history, Plaintiffs' counsel cannot now argue that the *Buchanan* Settlement is not "sufficient to comply with the TCPA," that it mandated only "supposed" practice changes, or that its revised practices are not "sufficient for Sirius XM to form an EBR," all as alleged in the Complaint. Compl. ¶¶ 42–43. The doctrine of judicial estoppel prevents prevailing litigants (and here, affected counsel) from switching positions and thus threatening "judicial integrity" by contradicting positions that they previously took; one way or the other, "the perception [remains] that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). Indeed, it is worse here because it is *counsel* (and not just the litigant) that would have to change positions if they were to attack the adequacy of the *Buchanan* Settlement. And they would have to do so after telling the federal court in the Northern District of Texas that Sirius XM's "hard-fought practice changes [were] extremely valuable to class members" and "enhanced [Sirius XM's] EBR defense." *Buchanan* Fee Motion 7–8, 25. And, if counsel were to argue that the practice changes in the *Buchanan* Settlement were ineffective or, worse, useless, Plaintiffs' counsel would be conceding that they previously "recommend[ed] that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers." *Ashford Gear*, 662 F.3d at 918. That is straightforwardly unethical.

In short, Plaintiffs' counsel cannot challenge the *Buchanan* Settlement without impugning their own integrity. But if Plaintiffs' counsel do *not* press that argument, they cannot adequately represent the interests of the Post-*Buchanan* National Class. This is because, by definition, the Post-*Buchanan* National Class excludes members of the *Buchanan* class, which is limited to persons receiving calls up to "the date of [the *Buchanan*] Agreement." *See Buchanan* Settlement

10

¶ 2.17.  The putative members in the Post-*Buchanan* National Class, as a result, never "agree[d] that Sirius XM has taken substantial steps to communicate its calling practices to trial subscribers." *Buchanan* Fee Motion 7.  And they also never agreed "that in doing so Sirius XM has enhanced its EBR defense upon which it relies on calling trial subscribers to market paid subscriptions."  *Id.* at 7–8.  Nor did those class members ever have an opportunity to object to the fee award, and so never gave any sort of "testament to the high quality of the settlement."  *Id.* at 10.  That class and the putative members in it require counsel that would be able to argue (if they chose to do so, however wrong it would be) that Sirius XM did not "enhance[] its EBR defense" despite implementing the changed business practices in the *Buchanan* Settlement.  *Id.* at 7–8.  Counsel which cannot do so simply would not "adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

In brief, Plaintiffs' counsel—who were responsible for and extolled the benefits of the *Buchanan* Settlement—have an unsolvable problem, namely, "a direct conflict" between themselves and the putative Post-*Buchanan* National Class.  *Reliable Money Order*, 704 F.3d at 498.  Plaintiffs' counsel has an interest in preserving their credibility before the Court by refraining from directly attacking the *Buchanan* Settlement.  But the putative Pre-*Buchanan* National Class has an interest in disputing the sufficiency of the *Buchanan* Settlement.  Whether it is represented by counsel deemed untrustworthy by the Court or by counsel who cannot make arguments on its behalf, the Post-*Buchanan* National Class would be prejudiced by these Plaintiffs' counsel.

2.      The remedy for this obvious deficiency is to strike the class allegations.  "If the plaintiff's class allegations are facially and inherently deficient," a motion to strike class allegations "can be an appropriate device to determine whether [the] case will proceed as a class action."  *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (internal

11

quotation marks omitted).  This is not a case when the dispute is factual and when "discovery is needed to determine whether a class should be certified," which would make "a motion to strike the class allegations at the pleading stage" premature.  *Brunner v. Liautaud*, No. 14-c-5509, 2015 WL 1598106, at *5 (N.D. Ill. Apr. 8, 2015) (internal quotation marks omitted).  Rather, when (as here) the complaint and other judicially noticeable material "make it clear that class certification is inappropriate," a court can make that determination "before the parties conduct class discovery." *Buonomo*, 301 F.R.D. at 295 (internal quotation marks omitted); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("[A court] need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination.").

The Complaint makes it perfectly clear that Plaintiffs' counsel are conflicted.  The facts regarding the *Buchanan* Settlement are a matter of public record.  And Plaintiffs have *already* forecast their intent to argue that the *Buchanan* Settlement's practices are inadequate.  According to the Complaint, "Sirius XM … failed to implement practice changes sufficient to comply with the TCPA" and "therefore has continued the same practices challenged in *Buchanan*." Compl. ¶ 42.  The Complaint goes on to criticize the *Buchanan* Settlement, calling its practice changes only "supposed" ones, and making the legal claim that they "were not" "sufficient for Sirius XM to form an EBR." *Id.* ¶ 43.  A consumer who purchased a vehicle after the *Buchanan* Settlement and later received telephone calls (thus making it a member of the Post-*Buchanan* Class) may want to make that argument, but *Plaintiffs' counsel* cannot and therefore cannot adequately represent a class that may want to make it.[4]

---

[4] For that reason, this case differs from *Meza v. Sirius XM Radio Inc.*, where the district court denied as premature Sirius XM's motion to strike class allegations there notwithstanding a similar about-face from a prior settlement.  *See* No. 17-CV-02252, 2020 WL 905588 (S.D. Cal. Feb. 25, 2020).  The court there required discovery because it was unclear from that complaint "whether [the prior settlement's] practices [we]re even at issue" in the second lawsuit. *Id.* at *5.

That is enough to require that the Court strike the class allegations. Again, "a court cannot certify a class without" a "showing of counsel's adequacy to represent" it. *Koch*, 51 F.4th at 755. The Complaint on its face makes clear that Plaintiffs' counsel cannot prosecute the arguments pressed in it, and the Court need not wait for discovery to confirm what is clear already. *See, e.g.*, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (proper motions to strike "expedite" cases rather than "delay" them by "remov[ing] unnecessary clutter" from the litigation).

## II.     The Court Should Dismiss Count III for Failure To State a Claim.

The Court should also dismiss Count III, which alleges that Sirius XM allegedly violated the Illinois Telephone Solicitations Act. "A plaintiff can plead himself out of court by pleading facts that show that he has no legal claim." *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) (internal quotation marks omitted). That is what Plaintiffs have done here.

The ITSA requires a caller to "refrain from calling" any person who "requests to be taken off the [caller's] contact list." 815 Ill. Comp. Stat. 413/15. The statute makes clear, though, that when it comes to private enforcement suits, only a "*customer* injured by a violation of this Act may bring an action for the recovery of damages." *Id.* 413/25(d) (emphasis added).

Plaintiff Jane Campbell (the only plaintiff bringing this claim) lacks standing to bring an ITSA claim because she specifically pleads that she is not one of Sirius XM's "customer[s]." In *Freeman v. Quicken Loans, Inc.*, a case essentially identical to this one, the plaintiff brought an ITSA claim, alleging that the defendant had called him after he "demand[ed] that [it] cease contacting him." No. 18 C 1052, 2019 WL 13203215, at *1 (N.D. Ill. Feb. 26, 2019). The court dismissed the claim. The court explained that "customer" in 413/25(d) means "one that purchases

---

Here, by contrast, the Complaint squarely places at issue the business practices in the *Buchanan* Settlement.

13

a commodity or service," not just any person who happens to receive an unwanted phone call. *Id.* at \*3 (quoting Merriam-Webster Online Dictionary (accessed Feb. 20, 2019). "[I]f the Illinois General Assembly meant to provide a private right of action in [413/25(d)] to *any* person injured by violations of the ITSA," it "would have used the word 'persons'"—just as it did in a neighboring provision authorizing the Illinois Attorney General to bring suit on behalf of "'*persons* who incurred actual damages'" as a result of a violation of the statute. *Id.* (quoting 815 Ill. Comp. Stat. 413/25(e)) (emphasis in *Freeman*). Section 413/25(d), by contrast, covers only those who have "sought to purchase [something] from a seller," and because Freeman "ha[d] not alleged that he had made any purchases from defendant at any time," the district court held that Freeman "d[id] not have standing to bring his ITSA claim" and dismissed it. *Id.* at \*3–4.

So too here. Ms. Campbell did not "allege[] that [she] had made any purchases from [Sirius XM] at any time." *Id.* at \*4. Far from it—the Complaint instead says that she "has never signed up for Sirius XM's service *or paid it anything*." Compl. ¶ 54 (emphasis added). Ms. Campbell further alleges that there is *no* relationship between herself and Sirius XM, let alone a customer-seller relationship. *Id.* ¶ 38 ("[T]he relationship that exists at the time of the lease or purchase of a vehicle is between the consumer and a car dealer, not Sirius XM.").

Sirius XM will argue that it does have an established business relationship with the putative class members in this case (enhanced by the changed business practices implemented in the *Buchanan* settlement). But, that is not relevant here. Ms. Campbell joins the other plaintiffs in alleging that she has no relationship with Sirius XM, and that allegation must be taken as true in view of the "well-settled rule that a party is bound by what it states in its pleadings." *Soo Line R.R. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). "Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the federal

courthouse." *Jackson v. Marion Cnty.*, 66 F.3d 151, 153–54 (7th Cir. 1995) (citations omitted). And "[a]dmissions bind the party making the admission"—they are "not binding on any other party." *Iowa Mut. Ins. Co. v. Hennings*, No. 05-3073, 2006 WL 2945477, at *8 (C.D. Ill. Oct. 13, 2006). So while Sirius XM will prove the existence of an established business relationship with Ms. Campbell, that does not matter here: Ms. Campbell cannot succeed on Count III without directly contradicting her own allegations that she never "paid [Sirius XM] anything" and had no relationship with it. Compl. ¶ 54. The Court should therefore dismiss that claim for relief.

**CONCLUSION**

For the foregoing reasons, the Court should strike the Post-*Buchanan* National Class allegations in Plaintiffs' Complaint and dismiss Count III.

15

By: /s/ *Christopher A. Hall*

JONES DAY

Christopher A. Hall
IL #6316715
chall@jonesday.com
110 North Wacker Drive
Suite 4800
Chicago, IL  60606
Telephone:  +1.312.782.3939
Facsimile:  +1.312.782.8585

Lee A. Armstrong (admission forthcoming)
JONES DAY
250 Vesey Street
New York, New York
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: laarmstrong@jonesday.com

Thomas Demitrack (admission forthcoming)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel: (216) 586-3939
Fax: (216) 579-0212
Email: tdemitrack@jonesday.com

Jeffrey R. Johnson (admission forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: jeffreyjohnson@jonesday.com

*Counsel for Defendant Sirius XM Radio Inc.*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not exceed 15 pages in length.

/s/ *Christopher A. Hall*
Christopher A. Hall

*Counsel for Defendant Sirius XM Radio Inc.*

17