**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, KEITH SADAUSKAS, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated, | Case No.  2:22-cv-02261-CSB-EIL |
| Plaintiffs | Judge:  Hon. Colin Stirling Bruce |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SIRIUS XM RADIO INC.'S
MOTION TO STRIKE CLASS ALLEGATIONS AND MOTION TO DISMISS**

2752240.1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 8

I.      The Purported Basis of Sirius XM's Motion to Strike the Post-*Buchanan* National
        Class Allegations Lacks Merit. ..................................................................................... 8

        A.      Sirius XM's Cited Cases Do Not Support Striking Plaintiffs' Class
                Allegations. ....................................................................................................... 13

II.     Sirius XM's Motion Is Premature. .............................................................................. 14

III.    Plaintiff Campbell's Illinois Telephone Solicitations Act Claim Should Not Be
        Dismissed. .................................................................................................................... 16

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Advanced Dermatology v. Fieldwork, Inc.*,
  550 F. Supp. 3d 555 (N.D. Ill. 2021) ........................................................................... 7, 14, 16

*Bell v. City of Chicago*,
  835 F.3d 736 (7th Cir. 2016) ................................................................................................ 16, 18

*Brown v. Swagway, LLC*,
  No. 3:15-CV-588 JVB, 2017 WL 899949 (N.D. Ind. Mar. 7, 2017)........................................ 7

*Buchanan v. Sirius XM Radio, Inc.*,
  Case No. 17-cv-728 (N.D. Tex. Jan. 14, 2020) ............................................................. passim

*Buonomo v. Optimum Outcomes, Inc.*,
  301 F.R.D. 292 (N.D. Ill. 2014)......................................................................................... 15, 16

*Creative Montessori Leaning Ctrs. v. Ashford Gear LLC*,
  662 F.3d 913 (7th Cir. 2011) ...................................................................................................... 13

*Damasco v. Clearwire Corp.*,
  662 F.3d 891 (7th Cir. 2011) ......................................................................................................... 7

*Day v. Humana Ins. Co.*,
  335 F.R.D. 181 (N.D. Ill. 2020)................................................................................................... 13

*Dowding v. Nationwide Mut. Ins. Co.*,
  490 F. Supp. 3d 1291 (N.D. Ill. 2020) ............................................................................. 1, 7, 14

*Drake v. Mirand Response Sys., Inc.*,
  No. 119CV01458RLYDML, 2020 WL 4218335 (S.D. Ind. July 22, 2020) ............... 10, 14, 16

*F.T.C. v. Pac. First Ben., LLC*,
  472 F. Supp. 2d 981 (N.D. Ill. 2007) ....................................................................................... 17

*Freeman v. Quicken Loans, Inc.*,
  No. 18 C 1052, 2019 WL 13203215 (N.D. Ill. Feb. 26, 2019)........................................ 16, 17

*Heller Fin., Inc. v. Midwhey Powder Co.*,
  883 F.2d 1286 (7th Cir. 1989) ...................................................................................................... 6

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ...................................................................................................... 14

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) ...................................................................................................... 14

*Kurt v. Platinum Supplemental Ins., Inc.*,
  No. 19 C 4520, 2021 WL 3109667 (N.D. Ill. July 22, 2021) ............................................. 7, 14

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ...................................................................................................... 16

*Meza v. Sirius XM Radio Inc.*,
  No. 17-CV-02252-AJB-JMA, 2020 WL 905588 (S.D. Cal. Feb. 25, 2020) ........................ 5, 15

*Mortimer v. Diplomat Pharm. Inc.*,
  No. 19 C 1735, 2019 WL 4934602 (N.D. Ill. Oct. 7, 2019) .................................................... 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............................................................................................... 15

*Parish v. City of Elkhart*,
614 F.3d 677 (7th Cir. 2010) ................................................................................ 10

*Redman v. Radioshack Corp.*,
768 F.3d 622 (7th Cir. 2014) ................................................................................ 11

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
704 F.3d 489 (7th Cir. 2013) ................................................................................ 13

*Rysewyk v. Sears Holdings Corp.*,
No. 15-cv-4519, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015)........................... 7, 14

*Sandoval v. Ali*,
34 F. Supp. 3d 1031 (N.D. Cal. 2014) ................................................................. 15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ................................................................................ 14

*Womick v. Kroger Co.*,
No. 21-CV-00574-NJR, 2022 WL 1266630 (S.D. Ill. Apr. 28, 2022) ...................... 7

*Wright v. Fam. Dollar, Inc.*,
No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010)............................. 7, 13

**Statutes**
765 Ill. Comp. Stat. Ann. 1065/2(d) ...................................................................... 17

**Other Authorities**
Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ................................. 1

**INTRODUCTION**

To prevail on a Rule 12(f) motion to strike class allegation, Defendant Sirius XM Radio, Inc. ("Sirius XM") must "definitively establish that a class action cannot be maintained consistent with the class allegations" and that "the pleadings are facially defective." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020). Sirius XM's motion fails to mention that legal standard and does not meet it. Plaintiffs' well-pled class allegations—which must be accepted as true on a Rule 12(f) motion—give rise to claims under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA"). Where, as here, Plaintiffs' class allegations satisfy Rules 12(f) and 23, there is no basis whatsoever to strike those allegations. Sirius XM's motion must be denied.

Rather than address Plaintiffs' claims on the merits, Sirius has engaged in *ad hominem* attacks on their counsel.[1] While such attacks are irrelevant to the question of whether a class action can be maintained, they also are without basis. There was, in fact, a prior settlement that provided substantial benefits to the settlement class—a non-reversionary all-cash settlement fund of $25 million, free service to each class member who chose it, and *promises* of corrective action on a forward-going basis. However, as alleged in the Class Action Complaint here, Sirius XM "failed to implement practice changes sufficient to comply with the TCPA." Original Class Action Complaint ("CAC"), Dkt. No. 1, ¶ 42. Plaintiffs' counsel tried to avoid litigation by appraising Sirius XM of this failure to implement the practice changes before filing this action, but Sirius XM did nothing in response.

---

[1] Sirius XM mentions at least 10 times that some of Plaintiffs' counsel received attorneys fees' from a prior settlement on behalf of a different class of consumers. While that fact may upset Sirius XM, it is not a proper basis to bring a Rule 12(f) motion to strike Plaintiffs' class allegations.

- 1 -

As Sirius XM concedes, Plaintiffs' allegations must be accepted as true. Plaintiffs should therefore be entitled to pursue these allegations that, despite notice and an opportunity to avoid TCPA violations, Sirius XM continues to violate the TCPA.

Moreover, even if Sirius XM did fully implement the promised practice changes, Plaintiffs' counsel at no time represented that the practice changes could somehow insulate Sirius XM from ever violating the TCPA again. To the contrary, Plaintiffs' Complaint clearly explained: Because Plaintiffs Sadauskas and Mulholland and the Pre-*Buchanan* National Do-Not-Call Registry Class "had no interaction with Sirius XM (other than the unwanted phone calls), it would have been impossible for them to be exposed to the supposed practice changes, even if those changes were sufficient for Sirius XM to form an EBR with them, which they were not." *Id.*, ¶ 42.

Ultimately, Sirius XM's motion is premature. In its haste to dispose of Plaintiffs' class TCPA claims before the full factual record supporting those claims can be developed, Sirius XM's simply ignores the many cases finding that motions to strike class allegations at this stage of class litigation are premature. Plaintiffs' well-pled claims must rise or fall based on whether—*after* discovery is conducted—the evidence supports those claims, not on anything certain Plaintiffs' counsel said or did in prior class litigation successfully challenging Sirius XM's illegal telemarketing calls.

**FACTUAL BACKGROUND**

Sirius XM has long engaged in a business model of placing unsolicited telemarketing calls urging persons who own or lease cars to sign up for Sirius XM's satellite radio service. CAC, ¶ 1. Over the past decade, Sirius XM has paid a total of over $60 million into settlement funds for class action lawsuits alleging violations of the TCPA. CAC, ¶ 39. Most relevant here, the *Buchanan* settlement required Sirius XM to (1) pay $25 million into an all-cash non-

- 2 -

reversionary common settlement fund,[2] (2) provide free service to all settlement class members who requested it, and (3) implement changes to its telemarketing practices.  CAC, ¶ 41; *Buchanan v. Sirius XM Radio, Inc.*, Case No. 17-cv-728 (N.D. Tex. Jan. 14, 2020), Dkt. No. 105-1 (Class Action Settlement Agreement & Release) (attached as Exhibit C to the Hutchinson Declaration).

Starting in or around June 2022, Plaintiffs' counsel began to receive consumer complaints about ongoing TCPA violations by Sirius XM.  Hutchinson Decl., ¶ 4.  Over the course of the next three months, Plaintiffs' counsel thoroughly investigated those claims and confirmed that Sirius XM's calling practices were widespread and that consumers never received customer agreements containing the disclosures required by the *Buchanan* settlement.  *Id.*, ¶ 5.  Plaintiffs also obtained and reviewed 454 consumer complaints submitted to the Federal Trade Commission ("FTC") complaining about Sirius XM's telemarketing calls after the *Buchanan* settlement.  *See* CAC, ¶ 2, 44-45.

Two distinct fact patterns emerged from counsel's research.  First, Sirius XM continued to call individuals who purchased or leased cars prior to the *Buchanan* settlement.  CAC, ¶¶ 41-43, 55-62, 71-80, 81.  Those individuals still received Sirius XM's telemarketing calls long after that settlement, even though they had not purchased or leased another car.  *Id.*, ¶ 43.  Because they had no interaction with Sirius XM (other than the unwanted phone calls), they were never exposed to Sirius XM's purported practice changes.  *Id.*

Second, Sirius XM called individuals who purchased or leased cars after the *Buchanan* settlement.  CAC, ¶¶ 46-54, 63-70, 82.  The Customer Agreements for those individuals did not

---

[2] Sirius XM's incorrect statement that the *Buchanan* settlement was for "$20 million in cash" (Mot. at 4) is one of several errors in its Motion.

2752240.1

contain any of the language contemplated by the *Buchanan* settlement.  Hutchinson Decl., ¶ 15 & Ex. D.

Concerned about these serious violations of the TCPA, on September 8, 2022 Plaintiffs' counsel reached out to counsel for Sirius XM, and requested a response by September 23, 2022. Hutchinson Decl., ¶ 6. With that correspondence, Plaintiffs' counsel included a completed 27-page draft of Plaintiffs' class action complaint.  *Id.*, ¶ 7 & Ex. A.  The draft class action complaint detailed Sirius XM's failure to fully implement the required practice changes and explained why, even if Sirius XM had implemented those practice changes, its calling practices still did not comply with the TCPA:

> 39.     Defendant Sirius XM entered into a Settlement Agreement whereby it paid $25 million into a Settlement Fund, and agreed to alter some of its telemarketing practices, including providing notices contained in its Customer Agreement, glove box materials and welcome kit to explain that consumers may be contacted and explaining how consumers can take steps to place themselves on Sirius XM's internal DNC list. No. 3:17-CV-0728-D, 2019 U.S. Dist. LEXIS 146269 (N.D. Tex. Aug. 28, 2019).
>
> 40.     Sirius XM, however, failed to implement practice changes sufficient to comply with the TCPA. It therefore has continued the same practices challenged in *Buchanan* of calling persons on the Do Not Call Registry without their prior express written consent.
>
> 41.     Indeed, as described below, Plaintiff Mulholland, and the Pre-*Buchanan* National Do-Not-Call Registry Class bought or leased cars prior to the *Buchanan* Settlement, but still received Sirius XM's telemarketing calls long after that settlement, even though they have not purchased or leased another car. Because they had no interaction with Sirius XM (other than the unwanted phone calls), it would have been impossible for them to be exposed to the supposed practice changes, even if those changes were sufficient for Sirius XM to form an EBR with them, which they were not.

*Id.*, Ex. A, ¶¶ 39-41.  Thus, Plaintiffs' counsel made Sirius XM fully aware of Plaintiffs' allegations **before filing this lawsuit so that Sirius XM could investigate and address them**.  *See id.*

- 4 -

On September 20, 2022, Sirius XM's counsel acknowledged receipt of Plaintiffs' letter and draft class action complaint, and requested Plaintiffs' telephone numbers, asserting that Sirius XM wanted to investigate their allegations. *See* Hutchinson Decl., ¶ 8 & Ex. B ("We received your draft complaint against Sirius XM on behalf of Julie Campbell and Kerrie Mulholland. So that we can investigate the allegations, can you please provide the full phone numbers for the plaintiffs?"). Plaintiffs' counsel provided the telephone numbers on the same day. *Id.*, ¶ 9. Plaintiffs' counsel followed up again on September 26, 2022, and requested a response. *Id.*, ¶ 10. Sirius XM, however, never responded. *Id.*, ¶ 11.

Plaintiffs therefore filed their class action complaint on November 29, 2022. CAC, Dkt. No. 1.[3] The filed Class Action Complaint contained substantially the same allegations that Plaintiffs voluntarily provided over three months before on September 8, 2022, which Sirius XM never addressed. Specifically, the Class Action Complaint alleges that Sirius XM violates the TCPA by placing telemarketing calls to persons who have listed their telephone numbers on the National Do-Not-Call Registry (TCPA Count I), and by failing to record and honor requests from individuals who ask Sirius XM to stop calling them (TCPA Count II). CAC, ¶¶ 1-144. The Class Action Complaint also alleges that Sirius XM's unsolicited telemarketing calls violate the Illinois Telephone Solicitations Act (Count III), the North Carolina Telemarketing Law (Count IV and V), and the Washington Do Not Call Statute (Count VI).

Each of the Plaintiffs spent years receiving unwanted telemarketing calls from Sirius XM, but Sirius XM never honored their requests that Sirius XM stop calling them. CAC, ¶¶ 3,

---

[3] Plaintiffs did not file with the *Buchanan* court because Plaintiffs' claims involved new violations of the TCPA that were not part of the *Buchanan* settlement. The *Buchanan* court did not retain any jurisdiction over new claims by non-settlement class members. *See Meza v. Sirius XM Radio Inc.*, No. 17-CV-02252-AJB-JMA, 2020 WL 905588, at *5-6 (S.D. Cal. Feb. 25, 2020); Hutchinson Decl., Ex. H (*Buchanan*, Dkt. No. 129 [Final Approval Order & Judgment].)

- 5 -

46-80.  For example, Plaintiff Julie Campbell ("Ms. Campbell") purchased a Lincoln MKZ in Peoria, Illinois, in or around February 2017.  *Id.*, ¶ 46. The Lincoln came with a Sirius XM Radio pre-installed, an option that she did not request and was not able to refuse.  *Id.*, ¶ 47. Without Ms. Campbell's consent, Sirius XM obtained her contact information from the dealership where she purchased the Lincoln.  *Id.*, ¶ 48.  Sirius XM proceeded to bombard her with dozens of unsolicited telemarketing calls.  *Id.*, ¶ 49.  Ms. Campbell could not turn her ringer off because her son was undergoing kidney dialysis and she was awaiting a call from his doctor about a transplant.  *Id.*, ¶¶ 50, 52.  Sirius XM repeatedly ignored her requests to stop calling.  *Id.*, ¶ 51.  Plaintiffs Sadauskas, Bickford, and Mulholland likewise received unsolicited telemarketing calls without their prior express written consent. *Id.*, ¶¶ 55-80.

On February 15, 2023, Sirius XM filed its Motion to Strike Class Allegations and Motion to Dismiss.  Dkt. No. 6.  That Motion seeks to strike Plaintiffs' TCPA Do-Not-Call class allegations for persons who purchased or leased a car after the *Buchanan* Approval Date (the proposed Post-*Buchanan* National Do-Not-Call Registry Class; Count I) and dismiss the Illinois Telephone Solicitations Act claim (Count III).  Sirius XM's motion *does not* address Plaintiffs' TCPA Do-Not-Call class allegations for persons who purchased or leased a car before the *Buchanan* Approval Date (the proposed Pre-*Buchanan* National Do-Not-Call Registry Class; Count I), the internal do-not-call claim (Count II), the North Carolina Telemarketing Law (Count IV and V), or the Washington Do Not Call Statute (Count VI).  Therefore, those class claims under Counts I, II, IV, V, and VI will survive and be subject to classwide discovery regardless of how the Court rules on Sirius XM's motion.

## **LEGAL STANDARD**

"[T]he general rule [is] that motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  "[A] disputed issue of law should

2752240.1

not be decided on a Rule 12(f) motion." *Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 1266630, at *2 (S.D. Ill. Apr. 28, 2022). Thus, it is well-established that "[m]otions to strike class allegations are disfavored . . . in part because a motion for class certification is a more appropriate vehicle for consideration of the relevant issues." *See, e.g., Brown v. Swagway, LLC*, No. 3:15-CV-588 JVB, 2017 WL 899949, at *1 (N.D. Ind. Mar. 7, 2017). Indeed, "a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class." *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011).

On a motion to strike class allegations, the moving defendant bears the burden of persuasion. *See Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015); *see also Womick*, 2022 WL 1266630, at *6 (same). To satisfy that burden, a defendant must "definitively establish that a class action cannot be maintained consistent with the class allegations." *See, e.g.*, *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020) (same); *Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 568 (N.D. Ill. 2021); *Kurt v. Platinum Supplemental Ins., Inc.*, No. 19 C 4520, 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021) (same). Thus, "it is an 'exceptional case' where the complaint is 'so facially lacking that no amount of discovery or time could provide support for class status" because "'[s]triking class allegations at the pleading stage is generally inappropriate.'" *Advanced Dermatology*, 550 F. Supp. 3d at 568 (citations omitted).

Accordingly, as the cases cited by Sirius XM concede, only if "the pleadings are facially defective and definitively establish that a class action cannot be maintained" should class allegations be stricken prior to a motion for class certification and the conclusion of class discovery. *Wright v. Fam. Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010).

2752240.1

## ARGUMENT

### I.    The Purported Basis of Sirius XM's Motion to Strike the Post-*Buchanan* National Class Allegations Lacks Merit.

Sirius XM engages in a parade of *ad hominem* attacks against Plaintiffs' counsel, accusing them of "unethical conduct" and "unethical action," "misconduct that prejudices the class," "misbehavior," and "a lack of integrity;" and of being "straightforwardly unethical," "untrustworthy," and "cynical" attorneys who "sold out their last class" and are "contradicting what they previously told the *Buchanan* court." To be clear: **These assertions have no basis whatsoever in fact**.

There is no conflict whatsoever between the representations *Buchanan* counsel made to the *Buchanan* court and Plaintiffs' allegations here. Neither *Buchanan* counsel nor Plaintiffs' counsel have ever claimed that the remedies obtained—$25 million in cash, free service, and the *promise* of practice changes—were inadequate. Rather, Plaintiffs allege, *inter alia*, that there was a deficiency in the implementation of practice changes by Sirius XM. Five points about the *Buchanan* settlement are salient:

*First*, the *Buchanan* settlement was a negotiated compromise. *Buchanan* "settled only after Plaintiffs and Defendant accepted a mediator's proposal." Hutchinson Decl. Ex. E (*Buchanan*, Dkt. No. 126-2) ¶ 31. Thus, the monetary relief, free service, and promised practice changes in the *Buchanan* settlement were all compromises. *Buchanan* counsel certainly never represented to the *Buchanan* court that the promised practice changes were a complete victory, let alone that they could or would prevent Sirius XM from ever violating the TCPA again.

Sirius XM tries to create the false impression that if the promised practice changes were not sufficient to fully resolve all of Sirius XM's TCPA issues, then they were meaningless, not valuable, and did nothing. That is simply not true. The fact that Mr. Buchanan stated that he

- 8 -

2752240.1

agreed that in promising to make practice changes "Sirius XM has enhanced its EBR defense" in no way establishes, even if those practice changes were fully implemented, that Sirius XM did or does have a valid EBR defense. *See* Hutchinson Decl. Ex. F (*Buchanan*, Dkt. No. 126) at 7. Likewise, the practice changes could have been "meaningful" and "valuable to class members," as stated in the *Buchanan* motion for attorneys' fees, even if those same practice changes did not fully insulate Sirius XM from TCPA liability. *Id.* For example, the *Buchanan* settlement required Sirius XM to create "a URL where consumers may manage their contact preferences," which in theory made it easier for car buyers to stop the Sirius XM calls, if properly implemented. That is valuable for *Buchanan* class members, but is not in and of itself a panacea for all of Sirius XM's violations of the TCPA. *Id.*

*Second*, the relief obtained in the *Buchanan* settlement required substantial work. *Buchanan* counsel described the promised practice changes as meaningful because they—like all aspects of the *Buchanan* settlement—were meaningful. They represented hard-fought compromises (by both Plaintiff Buchanan and Sirius XM), achieved only after years of litigation. As *Buchanan* counsel explained to the *Buchanan* court:

> Prior to the eventual settlement, [*Buchanan* counsel] litigated the case aggressively to the eve of class certification without even a hint that it might settle. . . . At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. The settlement negotiations were also prolonged and hard-fought; the parties exchanged a series of counterproposals on key aspects of the Settlement, including monetary relief for the Class and Defendant's practice changes. The negotiation process nearly broke down several times as Class Counsel continually advocated for a larger fund for the Class, while Defendant wanted a smaller fund.

Hutchinson Decl., Ex. E (*Buchanan*, Dkt. No. 126-2) ¶ 31. Like all other settlement terms, the *Buchanan* parties agreed to the promised practice changes only after thousands of hours of litigation. *See id.* at 17-18. In Plaintiffs' counsel's experience, a corporate defendant such as

- 9 -

Sirius XM will not promise to make any change, big or small, without a substantial expenditure of time and effort, and the attendant risk of litigation.

*Third*, despite the *Buchanan* settlement and its promises of corrective action, Sirius XM continues to violate the TCPA.  As Plaintiffs allege here, Sirius XM "failed to implement" the promised practice changes.  CAC, ¶ 42.  Sirius readily admits that Plaintiffs' "allegations are taken as true for purposes of this motion."  Motion at 3 n. 2 (citing *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)); *accord Drake v. Mirand Response Sys., Inc.*, No. 119CV01458RLYDML, 2020 WL 4218335, at *2 (S.D. Ind. July 22, 2020) (TCPA case) ("Where, as here, a defendant attempts to preemptively strike class allegations on the face of the complaint prior to the plaintiff's motion for class certification and before discovery has been conducted, the court accepts the plaintiff's allegations supporting class certification as true."). As such, Sirius XM faces a heavy burden, which it could only meet by demonstrating that "no possible set of factual allegations ... could justify certifying a class."  *Id.*

Sirius XM cannot meet that heavy burden—and it certainly cannot do so at the pleading stage.  To the contrary, despite being notified six months ago that Sirius XM "failed to implement practice changes sufficient to comply with the TCPA," Hutchinson Decl., ¶ 7 & Ex. A, Sirius XM has never made any attempt to demonstrate that it implemented the promised practice changes (which again, even if fully implemented, would not have immunized Sirius XM).  For example, Sirius XM acknowledges, as it must, that one settlement term promised that: "Sirius XM shall ensure that its Customer Agreement has an easily visible and clear explanation that trial subscribers have a business relationship with Sirius XM that may result in Sirius XM calling them; the Customer Agreement shall also provide an explanation of how Sirius XM communicates with consumers, and shall provide notice to consumers that Sirius XM may call

- 10 -

them regarding their service and trial or other subscription, a URL where consumers may manage their contact preferences and an 800 number they may call for customer service." Mot. at 5 (quoting *Buchanan* Settlement ¶ 4). But, the "Customer Agreement" currently on Sirius XM's website does not contain all these items. Hutchinson Decl., Ex. D, *available at* https://www.siriusxm.com/customer-agreement (last accessed Feb. 27, 2023). It has no mention of any "business relationship with Sirius XM that may result in Sirius XM calling them." *See id.* There is no "explanation of how Sirius XM communicates with consumers" or that "Sirius XM may call them." *See id.* And even though there is a URL and 800 number to call, there is no indication that either can be used to "manage [*Buchanan* class members'] contact preferences." *See id.*[4] Thus, not only must Plaintiffs' allegations be taken as true at the pleading stage, but the publicly available evidence already supports a finding that Plaintiffs' allegations are true.

*Fourth*, Sirius XM's not-so-subtle suggestion that *Buchanan* counsel misrepresented the *Buchanan* practice changes in order to bolster their request for attorneys' fees is false and offensive.[5] *Buchanan* counsel negotiated a class settlement requiring Sirius XM to pay $25 million into an all-cash non-reversionary common settlement fund—which is the gold standard for class action settlements. In addition, *Buchanan* counsel secured free service for every settlement class member who selected it and an agreement by Sirius XM to implement

---

[4] Sirius XM may argue that it places some of this information in a separate Privacy Policy or at other pages on its website. But, that is not sufficient as the *Buchanan* settlement clearly and unambiguously requires that Sirius XM "shall ensure that its Customer Agreement [*i.e.*, not a separate Privacy Policy] has an easily visible and clear explanation" of this information.

[5] *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), which Sirius XM cites, considered a *coupon* settlement and held that reasonable attorneys' fees must be determined in light of the "value of the settlement to the class." *Redman*, 768 F.3d at 629. The concerns underlying *Redman* are not present here, where *Buchanan* Counsel negotiated an all-cash non-reversionary common fund.

2752240.1

practice changes.  As Sirius XM well knows, *Buchanan* counsel "did not begin negotiations on an agreed-upon fee amount with Defendant until after the parties reached agreement on the material terms of the relief for the Class."  Hutchinson Decl., Ex. E (Dkt. No. 126-2) ¶ 32. *Buchanan* counsel based their request for fees on the $25 million cash fund and the free services, and did not make any attempt to monetize the value of the practice changes.  Rather, at all times, *Buchanan* counsel made clear to the *Buchanan* court that the primary settlement relief was the $25 million common fund and free service.

*Fifth*, even if the statement regarding the promised practice changes in *Buchanan* was inconsistent with the positions Plaintiffs have taken in this litigation, which it is not, judicial estoppel is inappropriate here because an attorney may take inconsistent legal positions in different actions on behalf of different clients.  Judicial estoppel is intended to ensure that *parties* do not take inconsistent positions in different actions.  Attorneys, on the other hand, are obligated to zealously advocate on behalf of the client in the instant action, even if that means that the attorney must "simultaneously ma[k]e a very different argument (on behalf of different clients) in" two different litigations because an attorney "when representing different parties in different litigation, is not bound to always take the same position on a question," and "emphasizing a different set of facts to a different court (on a different party's behalf) is not unethical—it's good advocacy."  *Mortimer v. Diplomat Pharm. Inc.*, No. 19 C 1735, 2019 WL 4934602, at *4 (N.D. Ill. Oct. 7, 2019).  So long as the attorneys do "not misstate or misrepresent any facts or otherwise mislead the Court," they are free to make different arguments on behalf of different parties.  *Id.* (noting that the attorneys were candid with the court and "simply argued that some [facts] were more relevant than others").  Here, Mr. Buchanan is not a party to this action.  As such, Plaintiffs' counsel represent different parties.  Furthermore, as discussed above, there is

- 12 -

2752240.1

nothing factually inconsistent or disingenuous about noting that adding a URL to manage contacts is valuable to *Buchanan* class members, or that other promised practice changes could enhance an EBR defense, while stating years later that Sirius XM failed to implement those changes, and even if it had, those changes did not fully solve Sirius XM's TCPA problems.

It is shocking and disappointing that Sirius XM has not fully implemented practice changes and that Sirius XM continues to violate the TCPA. However, the fault for Sirius XM's TCPA violations lies with Sirius XM, not with Plaintiffs' counsel.

A. **Sirius XM's Cited Cases Do Not Support Striking Plaintiffs' Class Allegations.**

None of Sirius XM's cases support the relief they seek here. Notably, not a single case holds—let alone suggests—that Plaintiffs' class allegations can be stricken based on their counsel's successful work obtaining a class settlement in a prior case. In fact, Sirius XM does not cite any cases striking class allegations because the plaintiffs' counsel were purportedly inadequate. Even at the class certification stage after full discovery, Sirius XM's cases hold the opposite: actual "misconduct does not require denial of class certification." *Reliable Money Ord., Inc. v. McKnight Sales Co.,* 704 F.3d 489, 502 (7th Cir. 2013) (affirming Rule 23 certification of class despite alleged misconduct and ethical violations).[6]

Even the few cases Sirius XM cites striking class allegations on *other grounds not applicable here* did so without applying the correct legal standard. *Wright v. Fam. Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at \*2 (N.D. Ill. Nov. 30, 2010) (incorrectly holding that "the

---

[6] This case is also nothing like *Creative Montessori Leaning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011), which Sirius XM cites. There, putative class counsel filed their case using information obtained under false pretenses and solicited a client using misleading communications. *Id.* at 917. No unethical conduct occurred here, much less a "demonstrated [] lack of integrity that cast serious doubt on [counsel's] trustworthiness as representatives of the class." *Id.*

2752240.1

burden remains on the plaintiff" for a Rule 12(f) motion); *Day v. Humana Ins. Co.*, 335 F.R.D.

181, 198 (N.D. Ill. 2020) (same). Here, the correct legal standard squarely places the burden on

Sirius XM, not Plaintiffs. *See Dowding*, 490 F. Supp. 3d at 1298; *Advanced Dermatology*, 550

F. Supp. 3d at 568; *Kurt*, 2021 WL 3109667, at *13; *Drake*, 2020 WL 4218335, at *2; *Rysewyk*,

2015 WL 9259886, at *8.

Thus, Sirius XM asks this Court to do what no court has done before. This Court should

deny that request.

## II.    Sirius XM's Motion Is Premature.

It is far too soon to weigh Sirius XM's arguments about Rule 23 criteria, as shown by the

many cases in this Circuit certifying TCPA class actions. *See, e.g.*, *Ira Holtzman, C.P.A., &*

*Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation

under § 227 [of the TCPA], because the main questions . . . are common to all recipients.");

*accord Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)

(same); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) (TCPA claims are

"conducive to class-wide disposition"); *see also Advanced Dermatology*, 550 F. Supp. 3d at 569

(quoting *Ira Holtzman* and refusing the strike class allegations in a TCPA case). Plaintiffs will

show at the appropriate time that they satisfy all requirements for class certification by bringing a

class certification motion after suitable discovery.

Sirius XM concedes that motions to strike are "premature" "when the dispute is factual

and when "discovery is needed to determine whether a class should be certified" Motion at 12.

Here, the parties have factual disputes, *inter alia*, over whether Sirius XM fully implemented the

practice changes Sirius XM promised in the *Buchanan* settlement and whether, even if they were

implemented, Sirius XM's practices comply with the TCPA. Sirius XM's motion therefore

- 14 -

presents a textbook example of why motions to strike are disfavored before relevant discovery is complete.

Indeed, as Sirius XM concedes, a sister court already denied Sirius XM's motion to strike class allegations challenging its failure to change its calling practices following another class settlement addressing the TCPA's robocalling provisions. Motion at 12 n. 4 (citing *Meza v. Sirius XM Radio Inc.*, No. 17-CV-02252-AJB-JMA, 2020 WL 905588 (S.D. Cal. Feb. 25, 2020)). In that case, the court explained:

> The Court finds Plaintiffs' position persuasive. . . . Here, in order to rule on this motion to strike, the Court would have to delve into factual and legal issues before determining whether a conflict of interest in fact exists. For example, Sirius XM is concerned about the appearance of impropriety if counsel "assumes a certain position in a legal proceeding," "succeeds in maintaining that position," and later, is allowed to assume a contrary position "simply because [their] interests have changed." (Doc. No. 55-1 at 12) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).) Indeed, Sirius XM insists Plaintiffs' counsel cannot attest to the legality of Sirius XM's dialing practice in *Hooker*, and then turn in an about-face and argue those same practices violate the TCPA. (*Id.*) But in order to resolve whether there is in fact a conflict of interest, discovery could be helpful in determining whether those same practices are even at issue. If, for instance, discovery reveals that an ATDS was not used, or Sirius XM has adopted different dialing practices, then it necessarily follows that Plaintiffs' counsel would not have a conflict of interest. Although Plaintiffs' counsel may eventually turn out to be inadequate class counsel, that question should be saved for another day as the Court must test whether Plaintiffs satisfy Rule 23 against evidentiary proof. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1046–47 (N.D. Cal. 2014) (declining to consider whether to disqualify class counsel prior to class certification). As such, a motion to strike is an improper vehicle to test the purported conflict of interest here, the issue of adequacy of counsel may more appropriately be addressed in the context of a motion for class certification.
> . . .
> In summation, striking the class allegations at the pleading stage is an extreme and harsh measure the Court is not willing to take at this time.

*Meza*, 2020 WL 905588, at *5. The same is true here. This Court cannot even *begin* to analyze whether a purported conflict of interest exists without class discovery.

- 15 -

2752240.1

If *after class discovery*, the facts establish that Sirius XM actually implemented changes to comply fully with the TCPA, Plaintiffs would in good faith seek to limit their class allegations accordingly. Indeed, even the *Buonomo* court, which Sirius XM cites, did not strike the class allegations altogether, and instead gave the plaintiff an opportunity to amend his class definition. *See Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 300 (N.D. Ill. 2014). The court specifically noted that any problems regarding over-inclusive class definitions "'should be resolved by refining the class definition rather than by flatly denying class certification on that basis.'" *Id.* at 297 (citing and quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *accord Advanced Dermatology*, 550 F. Supp. 3d 569 (denying motion to strike TCPA class allegations at the pleading stage because "[the defendant] has not borne its burden of showing that [the plaintiff] brings the 'exceptional case' where striking class allegations at the pleadings stage, before the plaintiff has a chance to engage in discovery, is appropriate"); *Drake*, 2020 WL 4218335, at *2 (denying motion to strike TCPA class allegations at the pleading stage and noting: "Since class certification 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' striking class allegations at the pleading stage is generally inappropriate.") (citations omitted).

Sirius XM's motion should likewise be denied as premature.

### III.   Plaintiff Campbell's Illinois Telephone Solicitations Act Claim Should Not Be Dismissed.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

2752240.1

Sirius XM asserts that Plaintiff Campbell is not a "customer" within the meaning of the Illinois Telephone Solicitations Act because she never paid Sirius XM for any goods or services. Sirius XM's sole support for that assertion is Judge Kapala's decision in *Freeman v. Quicken Loans, Inc.*, No. 18 C 1052, 2019 WL 13203215 (N.D. Ill. Feb. 26, 2019), which relied on a Webster's dictionary definition of customer as "one that purchases a commodity or service." *Id.* at *3.

However, Sirius XM's position on this motion is somewhat inconsistent, and truly straddles the *Freeman* definition. Sirius XM considers non-paying recipients of its free trials to be its customers. *See* Customer Agreement, Hutchinson Decl., Ex. D. Likewise, Sirius XM also has taken the position in TCPA litigations that those same free-trial recipients are "customers" of the company who have an Established Business Relationship with Sirius XM. Hutchinson Decl. Ex. G (*Buchanan*, Dkt. No. 80) (asserting that Sirius XM has an established business relationship with "customers" because they purchased a car with a Sirius XM radio installed in it). In fact, in *Buchanan* Sirius XM quoted numerous internal company documents that refer to the people to whom it placed unsolicited telemarketing calls as "Customer." *Id.* at 3 ("Customer hasn't been listening," "Customer unavailable, lead should be recycled," "Customer unaware of SXM service"). If Sirius XM considers the people it called to be customers (a position that Plaintiffs do not necessarily endorse), it cannot now argue that those same people are not customers. At the very least, this raises a question of fact that cannot properly be resolved on a motion to dismiss.

In addition, the *Freeman* interpretation of the term "customer" is not *per se* the correct interpretation. A separate section of the Illinois Telephone Solicitations Act addressing trade secrets states that the term "customer" may apply to "actual or potential customers." 765 Ill.

- 17 -

Comp. Stat. Ann. 1065/2(d). *See also F.T.C. v. Pac. First Ben., LLC*, 472 F. Supp. 2d 981, 984

(N.D. Ill. 2007) (defining "customer" in the telemarketing context to include persons who "may

be required to pay, for goods or services"). Construing the complaint "in a light most favorable

to" Plaintiffs, accepting all "well-pleaded facts as true," and drawing "all inferences" in

Plaintiffs' favor, *see Bell*, 835 F.3d at 738, Plaintiff Campbell respectfully submits that Sirius

XM's motion should be denied so that discovery may proceed on whether she is a "customer"

under these definitions.

## CONCLUSION

For the foregoing reasons, Sirius XM's motion should be denied.

Dated: March 1, 2023                  Respectfully submitted,

                                      By:   */s/ Daniel M. Hutchinson*


                                      Daniel M. Hutchinson, Esq.
                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                      275 Battery Street, 29th Floor
                                      San Francisco, California 94111-3339
                                      Telephone: (415) 956-1000
                                      Facsimile: (415) 956-1008
                                      Email: dhutchinson@lchb.com

                                      Mason A. Barney, Esq.
                                      Laura M. Carroll, Esq.
                                      SIRI & GLIMSTAD LLP
                                      200 Park Avenue, 17th Floor
                                      New York, NY 10016
                                      Telephone: (212) 532-1091
                                      Email: mbarney@sirillp.com
                                      Email: lcarroll@sirillp.com

                                      Jarrett L. Ellzey, Esq.
                                      ELLZEY & ASSOCIATES, PLLC
                                      1105 Milford St,
                                      Houston, TX 77006
                                      Telephone: (888) 350-3931
                                      Email: Jarrett@ellzeylaw.com

2752240.1

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

*Attorneys for Plaintiffs and the Proposed Classes*

- 19 -

2752240.1

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.

/s/ *Daniel M. Hutchinson*
Daniel M. Hutchinson, Esq.

2752240.1