# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD, and KERRIE MULHOLLAND, individually and on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>SIRIUS XM RADIO, INC.,<br><br>      Defendant. | Case No. 2:22-CV-2261<br><br>Hon. Colin S. Bruce |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
<u>DEFENDANT TO PRODUCE RELEVANT DISCOVERY</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 3

    A. Plaintiffs' Telephone Consumer Protection Act Claims .................................................. 3

    B. Discovery and Meet and Confer Efforts ........................................................................... 4

        1. Sirius Refuses to Produce its DNC Lists ..................................................................... 5

        2. Sirius Refuses to Produce All Relevant Call Data ....................................................... 6

III. LEGAL STANDARD .......................................................................................................... 7

IV. ARGUMENT ........................................................................................................................ 8

    A. Defendant's Call Lists and Call Data are Relevant to Plaintiffs' Burdens on Class Certification and Must be Produced in Unredacted Form ................................................ 8

        1. Sirius has Placed the Adequacy of Representation Element of Class Certification at Issue and Cannot Withhold Relevant Documents Bearing on its Position ....... 10

        2. The Call Lists and Call Data are Relevant to the Remaining Class Certification Elements ............................................................................................................... 10

    B. Sirius Must Produce Documents Within the Possession of Third-Party Vendors ......... 12

        1. Sirius' Boilerplate Objection of Undue Burden is Baseless ...................................... 12

        2. Plaintiffs' Requests are Timely Because the Court has not Bifurcated Discovery .... 12

        3. Sirius has Failed to Demonstrate how Privacy Concerns Outweigh Production ....... 13

        4. Confidentiality Agreements do not Bar Plaintiffs' Requests ..................................... 14

        5. Even if Responsive Records are in the Possession of Third-Party Vendors, Sirius has a Responsibility to Search for and Produce Those Records ................. 14

V. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Bond v. Utreras*,
   585 F.3d 1061 (7th Cir. 2009) ................................................................................................ 8

*Breuder v. Bd. of Trs.*,
   Civil No. 15 CV 9323, 2021 U.S. Dist. LEXIS 56943 (N.D. Ill. Mar. 25, 2021) ..................... 12

*Buchanan v. Sirius XM Radio, Inc.*,
   Civil No. 3:17-cv-00728-D (N.D. Tex. January 28, 2020) ............................................. 1, 3, 4, 6

*Cortez v. Target Corp.*,
   Civil No. 1:23-cv-01435, 2023 U.S. Dist. LEXIS 199321 (N.D. Ill. Nov. 7, 2023) ................ 13

*Gebka v. Allstate Corp.*,
   Civil No. 19-cv-06662, 2021 U.S. Dist. LEXIS 41078 (N.D. Ill. Mar. 4, 2021) ........ 8, 9, 13, 14

*Gile v. United Airlines, Inc.*,
   95 F.3d 492 (7th Cir. 1996) ...................................................................................................... 8

*Henderson v. United Student Aid Funds, Inc.*,
   Civil No. 13CV1845-JLS BLM, 2015 WL 4742346 (S.D. Cal. July 28, 2015) ................... 9, 14

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
   633 F.3d 591 (7th Cir. 2011) .................................................................................................... 8

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ................................................................................................................. 7

*Hooker v. Sirius XM Radio, Inc.*,
   Civil No. 4:13-cv-00003-AWA-LRL (E.D. Va. May 11, 2017) ............................................ 1, 3

*Hossfeld v. Allstate Ins. Co.*,
   Case No. 20-CV-7091, 2021 U.S. Dist. LEXIS 199023 (N. D. Ill. October 15, 2021) .. 8, 10, 13

*Hunt v. Northwest Suburban Cmty. Hosp., Inc.*,
   Civil No. 03 C 50250, 2007 U.S. Dist. LEXIS 37157, 2007 WL 1512580
   (N.D. Ill. May 22, 2007) ......................................................................................................... 12

*Johnson v. Yahoo! Inc.*,
   Civil No. 1:14-cv-2028, 2016 WL 25711 (N.D. Ill. Jan. 4, 2016) .......................................... 11

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
    235 F.R.D. 447 (N.D. Ill. 2006) .................................................................................. 8

*Mullins v. Direct Digit., LLC*,
    795 F.3d 654 (7th Cir. 2015) ..................................................................................... 11

*Nvision Biomedical Techs., LLC v. Jalex Med.*, LLC,
    Civil No. 5:15- CV-284 RP, 2016 WL 8285637 (W.D. Tex. Feb. 1, 2016) .............. 14

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ................................................................................... 11

*Tinkers & Chance v. Leapfrog Enterprises, Inc.*,
    Civil No. CIV.A. 2:05-CV-349, 2006 WL 462601 (E.D. Tex. Feb. 23, 2006) ......... 14

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
    Case No. 12 C 5490, 2013 U.S. Dist. LEXIS 136819 (N.D. Ill. September 24, 2013) ............ 13

*Yahnke v. County of Kane*,
    Case No. 12 C 5151, 2013 U.S. Dist. LEXIS 121573 (N.D. Ill. Aug. 27, 2013) ........................ 8

**Statutes**

Telephone Consumer Protection Act ................................................................ 1, 2, 3, 5, 6, 8, 9, 10

**Rules**

Federal Rules of Civil Procedure ........................................................................ 1, 2, 7, 8, 9, 10, 11

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland (collectively, "**Plaintiffs**") hereby move the Court for an order compelling Defendant Sirius XM Radio, Inc. ("**Sirius**" or "**Defendant**") to provide data regarding the calls at issue in this litigation.

I.   **INTRODUCTION**

Sirius is no stranger to claims that it has violated the Telephone Consumer Protection Act ("**TCPA**"), 47 U.S.C. § 227, *et seq*. In the last decade, Sirius has twice settled TCPA class actions against it.[1] Likewise, Sirius has repeatedly been investigated and prosecuted by state authorities for its illegal telemarketing practices.[2] This class action lawsuit again seeks to hold Sirius liable for its continuing violations of the TCPA. Because of its experience facing TCPA investigations and lawsuits, Sirius is aware that information about the calls it placed, and its calling procedures, are central to such litigation and will largely be critical evidence in trial. Even still, the company is refusing to produce complete information that it knows are required by Plaintiffs to establish class certification and liability. Among these categories of documents are SiriusXM's call logs of its telemarketing calls and its internal do-not-call list for the relevant period—undeniably relevant and material to Plaintiffs' claims.

---

[1] *Hooker v. Sirius XM Radio, Inc.*, Civil No. 4:13-cv-00003-AWA-LRL ("***Hooker***"), ECF No. 215 (E.D. Va. May 11, 2017) (final approval order); *Buchanan v. Sirius XM Radio, Inc.*, Civil No. 3:17-cv-00728-D ("***Buchanan***"), ECF No. 129 (N.D. Tex. January 28, 2020) (final approval order).

[2] *E.g.*, *Buchanan*, ECF No. 62-2 (May 14, 2018) (September 4, 2014 N.Y. state Consumer Protection Board Decision and Order finding that Sirius was liable for making unsolicited telemarketing calls in violation of N.Y. law); *Buchanan*, ECF No. 62-4 (May 14, 2018) (July 7, 2014 letter from the Office of the Attorney General of Wyoming finding that Sirius does not qualify for the establish business relationship defense under Wyoming law); *see also* Jordan Valinsky, *SiriusXM sued for allegedly trapping customers in unwanted subscriptions*, CNN (Dec. 20, 2023) (lawsuit by NY attorney general), *available at* https://www.cnn.com/2023/12/20/media/siriusxm-cancellation-lawsuit/index.html.

As demonstrated below, Plaintiffs have repeatedly conferred with Sirius in good faith before filing this motion. Sirius, however, has refused to produce data regarding calls it placed, or that vendors placed on its behalf, to putative class members' phones, including the logs of outbound telemarketing calls, the identity and phone numbers of the individuals who received the telemarketing calls, and reports from vendors to Sirius regarding such calls (collectively, the "**Call Data**"). Furthermore, despite claiming that it complied with the TCPA, Sirius is also refusing to produce any Internal Do Not Call ("**DNC**") registry or National DNC Registry (collectively, the "**DNC Lists**")—even though both lists are at issue and the TCPA *requires* Sirius to maintain and use these DNC Lists to cease telemarketing calls to all persons do not want them. Sirius knows that Plaintiffs' requests for this information are standard practice in actions under the TCPA, and fully supported by case law, yet it is unreasonably refusing to produce such information.

Sirius' DNC Lists and Call Data are relevant to the class certification issues of adequacy of representation, ascertainability, and commonality. *See* Fed. R. Civ. P. 23. Unfortunately, Plaintiffs are forced to file this motion because, to date, Sirius refuses to identify or produce the requested DNC Lists or Call Data. Sirius has not articulated any meritorious objection supporting its refusal to do so. Nor has Sirius cited a single case supporting its position. Sirius is aware of its obligations under the TCPA, and that Plaintiffs' requested information is routine discovery. Its refusal to produce relevant documents without proper justification suggests that company records reveal Sirius has yet again violated the TCPA and Sirius' position is merely the product of gamesmanship rather than a good-faith attempt to ensure mutual knowledge of the relevant facts. By this motion, Plaintiffs merely request that the Court compel Sirius to provide the DNC Lists and Call Data consistent with standard practice so that they can proceed with fact discovery and depositions.

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    A. **Plaintiffs' Telephone Consumer Protection Act Claims**

On November 29, 2022, Plaintiffs filed this action seeking to recover damages and injunctive relief from Sirius for placing unsolicited telemarketing calls to persons who had listed their telephone numbers on the National DNC Registry or its internal DNC registry in violation of the Telephone Consumer Protection Act ("**TCPA**"), 47 U.S.C. § 227, *et seq*. Original Class Action Complaint ("**CAC**"), Dkt. No. 1 ¶¶ 1, 3. The CAC alleges that, for years, after a consumer purchased or leased a vehicle from third-parties, Sirius placed numerous telemarketing calls to try to persuade the consumer to purchase its satellite radio service. Consumers continued to receive telemarketing calls even if they had listed their telephone numbers on the National DNC Registry or had asked the company to stop calling them. CAC, ¶¶ 46-50, 54, 64-80.

Over the past decade, Sirius has settled multiple lawsuits alleging violations of the TCPA including *Hooker v. Sirius XM Radio, Inc.*, Case No. 4:13-cv-003 (E.D. Va.) and *Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-CV-0728-D (N.D. Tex.). Under the *Buchanan* settlement, Sirius was required to implement changes in its telemarketing practices. CAC ¶¶ 39, 41-43; Dkt. No. 9-4. Because Sirius failed to implement such, Plaintiffs bring this action asserting the violations and that Sirius simply continued making its illegal telemarketing calls. *Id.*

The CAC asserts two TCPA causes of action: violation of the statute's National DNC provisions (Count 1) and violation of the statute's Internal DNC provisions (Count II). CAC ¶¶ 105-115. The CAC also alleges violations of similar state laws in North Carolina (Counts IV and V) and Washington (Count VI). CAC ¶¶ 116-143. Sirius has answered the CAC. Instead, on February 15, 2023, Sirius filed a Motion to Strike the CAC's Post-*Buchanan* National Class Allegations and Motion to Dismiss Count III. Dkt. No. 7.

On September 25, the Court denied Sirius' Motion to Strike, granted its Motion to Dismiss Count III (alleging violations of the Illinois Telephone Solicitation Act, which applies only to customers), and referred the matter to the magistrate judge for further proceedings. Dkt. No. 16. The Court noted that the extent to which Sirius implemented the practice changes specified within the *Buchanan* settlement is "likely to be a central point of discovery" and that Sirius is "free to renew its present argument in response to a potential motion for class certification" upon the conclusion of discovery. Dkt. No. 16. On November 20, 2023, the Court entered an Agreed Confidentiality Order. Dkt. No. 18.

Unfortunately, despite lengthy meet and confers, Sirius has refused to produce documents that are critical to the Plaintiffs' allegations – specifically, the Call Lists and Call Data of all persons who, like Plaintiffs, received a call from Sirius or a third party on its behalf advertising its service but were registered on the National DNC Registry at the time of the calls. Plaintiffs therefore seek the Court's intervention so they can obtain this routine discovery to meet their burdens on class certification.

**B. Discovery and Meet and Confer Efforts**

On July 19, 2023, Plaintiffs served their First Set of Requests for Production of Documents and Electronically Stored Information ("**RFPs**") on Sirius, a true and correct copy of which is attached as **Exhibit A** to the Declaration of Mason A. Barney ("**Barney Decl.**") in support of this motion. Plaintiffs' RFPs sought, *inter alia*, a copy of Sirius' Call Lists and Call Data. Barney Decl., Exhibit A, Request Nos. 5, 10, 11, 23, 24, 37, 38, 44, 49, 76, 81. On August 28, 2023, Sirius served its responses and objections thereto on Plaintiffs. *See* Barney Decl., Exhibit B. Over the following months, Plaintiffs and Sirius met and conferred via video teleconference many times and exchanged a series of letters in an attempt to resolve their disputes without Court intervention on

September 29, October 16, October 27, and November 10, 2023. *See* Barney Decl., Exhibits C-F. Despite these good-faith efforts, the parties reached an impasse in light of Sirius' refusal to produce the requested documents or amend its improper objections.

    **1.  Sirius Refuses to Produce its DNC Lists**

Plaintiffs requested Sirius to produce documents "evidencing any version of the [National Do Not Call Registry] … used to cross check Plaintiffs' or any [class members'] telephone numbers before placing dialed calls to those numbers" as well as documents "maintained as an internal do-not-call list from November 29, 2018, to the present." *See* Barney Decl., Exhibit A, RFP Nos. 5, 76. Sirius objected to producing such fundamental information on burden, relevance, and proportionality grounds. *See* Barney Decl., Exhibit B.

During the meet and confer process, Plaintiffs explained such information is relevant to establish class wide TCPA liability and the merits of Sirius' anticipated defenses of prior consent or preexisting business relationship. *See* Barney Decl., Exhibit C, p. 2. In response, Sirius stated that "[c]ompany records establish that none of the Plaintiffs ever made a DNC request to Sirius" – but did not provide those records, specify what these records were, or when these records were created. *See* Barney Decl., Exhibit D, p. 4. Now Sirius continues to refuse to produce its internal DNC lists on the basis that such documents are irrelevant because supposedly "not one named plaintiff is an adequate class representative for any internal DNC class." *See* Barney Decl., Exhibit F, p. 3. Plaintiffs explained to Sirius that its argument places the cart before the horse; Sirius' assertion of an unproven defense theory does not negate Plaintiffs' right to discover relevant information before the issue of class certification is determined on the merits. The documents cited by Sirius are relevant to class certification and should be produced so that the Court can rule on this issue.

5

In a similar vein, Sirius has refused to produce any versions of the National DNC Registry which it compared with its Internal DNC Registry. *Id*. As Plaintiffs explained in their October 27 letter, any DNC list used by Sirius is relevant and discoverable to show what process Sirius used before placing its telemarketing calls and whether that process was appropriate. *See* Barney Decl., Exhibit E, p. 4. Yet, Sirius claims it cannot feasibly produce such records and that Plaintiffs already possess a copy of the National DNC Registry. *See* Barney Decl., Exhibit F, p. 3. Plaintiffs do not possess the National DNC Registry that Sirius used when it placed the calls at issue. Like Sirius' internal DNC lists, such records are necessary to establish class wide TCPA liability and potential anticipated defenses.

### 2. Sirius Refuses to Produce All Relevant Call Data

Plaintiffs requested Call Data, including Sirius' data regarding outbound telemarketing calls and internal reports or summaries concerning Defendant's telemarketing calls from November 29, 2018 to the present. *See* Barney Decl., Exhibit A, RFP Nos. 10, 11, 23, 24, 37, 38, 44, 49, 81, & 84. Sirius responded to the requests with a boilerplate objection on the grounds of undue burden, but it never justified this assertion. *See* Barney Decl., Exhibit C, p. 4. During the meet and confer process, Sirius suggested that it would produce a portion of its Call Data spanning only a one-month period, but it refused even in this tiny sample to produce the identities of the persons called. *See* Barney Decl., Exhibit F, p. 4. Plaintiffs explained that Sirius' proposed limitations are inappropriate because the requested data is routinely produced in TCPA cases. Moreover, based on Plaintiffs' Counsel's experience in similar TCPA class actions against dozens of corporate defendants—including Sirius, it would be more costly and burdensome to compile and extract a single month of data now and then perform another data pull for class certification. *See* Barney Decl., Exhibit E, p. 5. And the two proposed National DNC classes defined in the CAC are separated by when each member bought a car (either before the *Buchanan* approval date or

6

after that date). Thus, Plaintiffs will need to know each person's identity in order to identify when an individual bought a car. Similarly, in order to identify whether a person on the calling list also appeared on the Internal DNC list, it may be necessary to know their identities. The requested information is exclusively within Defendant's possession. Production is therefore necessary.

Sirius agreed only to produce quarterly compliance certificates regarding its telemarketing calls, but not any other reports or summaries. Sirius contends that the request is overly broad and burdensome without specifying any burden. *See* Barney Decl., Exhibit F, p. 5. Sirius also claims that the requests seek privileged documents but have not clarified how the records are privileged —or even produced a privilege log. *See* Barney Decl., Exhibit F, p. 5.

Sirius also refuses to produce any document retention policies about the third-party telemarketing vendors that Sirius contracted with to place calls on its behalf; Sirius contends such records are not relevant, necessary, or proportional. *Id*. Sirius contends that these records are subject to a private nondisclosure agreement between Sirius and the vendors; but as Plaintiffs have explained, the existence of such an agreement is not a valid objection to Plaintiffs' RFPs. *See* Barney Decl., Exhibit C, p. 3.

Accordingly, despite the lengthy meet and confers, the parties have been unable to break the logjam caused by Sirius' refusal to produce any DNC Lists or the vast majority of the Call Data. Plaintiffs therefore seek the Court's intervention so that they can meet their burdens on class certification.

### III.   LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Federal Rules of Civil Procedure apply a broad scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense…. Information within this scope need not be admissible in evidence to be

discoverable." Fed. R. Civ. P. 26(b)(1).

"[P]recertification discovery is appropriate concerning Rule 23's threshold requirements of numerosity, common questions/commonality, and adequacy of representation." *Hossfeld v. Allstate Ins. Co.*, Case No. 20-CV-7091, 2021 U.S. Dist. LEXIS 199023, *4 (N. D. Ill. October 15, 2021) (citing *Gebka v. Allstate Corp.*, 2021 U.S. Dist. LEXIS 41078, at *8 (N.D. Ill. March 4, 2021)). "Moreover, the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification." *Id*. "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Yahnke v. County of Kane*, Case No. 12 C 5151, 2013 U.S. Dist. LEXIS 121573, at *4 (N.D. Ill. Aug. 27, 2013); *see Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009).

When ruling on a motion to compel, a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). The party objecting to the request bears the burden of showing that a particular discovery request is improper. Fed. R. Civ. P. 34(b); *see also, e.g.*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."). Lack of such a foundation is grounds for dismissing the objections and ordering production. *Id.*

IV. **ARGUMENT**

    A. **Defendant's Call Lists and Call Data are Relevant to Plaintiffs' Burdens on Class Certification and Must be Produced in Unredacted Form**

"Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by

8

others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable." *Gebka v. Allstate Corp.*, No. 19-cv-06662, 2021 U.S. Dist. LEXIS 41078, at *20 (N.D. Ill. Mar. 4, 2021) (citing, *inter alia*, *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845-JLS BLM, 2015 WL 4742346, at *7 (S.D. Cal. July 28, 2015) (allowing discovery of the call records of vendors who called plaintiff on behalf of defendant)).

In *Gebka*, the plaintiff brought a TCPA class action against Allstate, alleging it, or someone on its behalf, violated the TCPA by making telemarketing calls to his telephone number without his prior express consent. *Gebka*, 2021 U.S. Dist. LEXIS 41078, at *2. Mr. Gebka moved to compel Allstate to produce documents in response to his written discovery requests seeking documents with the name, telephone number, date of contact, and location of outbound telemarketing calls by a third-party on Allstate's behalf. *Id.*, at *17. Allstate produced the call lists, but redacted the identifying information of dozens of other individuals who also received the telemarketing calls. *Id*. The *Gebka* Court found that the redacted information was relevant to the TCPA claims alleged, overruled Allstate's objections, and ordered Allstate to produce the unredacted call logs. *Id.*, at *19.

> It is reasonable to infer that the dozens of other persons whose information was redacted from this document were likewise robocalled on behalf of Allstate regardless of whether they were on the do-not-call list. Thus, the confirmation emails and spreadsheets contain identifying information regarding persons who are potential class members. As such, the documents are relevant in their unredacted form.

*Id.*, at *22-23.

Here, Defendant's Call Lists are directly relevant to the TCPA claims alleged in the CAC due to Rule 23's threshold requirements of ascertainability, commonality, and adequacy of representation – especially considering the assertion by Sirius that Plaintiffs are not adequate representatives of the putative class.

9

1. **Sirius has Placed the Adequacy of Representation Element of Class Certification at Issue and Cannot Withhold Relevant Documents Bearing on its Position**

Most importantly, the Call Lists and Call Data are undeniably relevant to determine whether Plaintiffs are adequate class representatives. Sirius presently asserts that the Call Lists are not relevant because "not one named plaintiff is an adequate class representative for any internal DNC class." *See* Barney Decl., Exhibit F, p. 3. Defendant's position illustrates precisely how the Call Lists and Call Data are relevant—this information bears on whether Plaintiffs are adequate class representatives, which will be determined at the class certification stage. Sirius has cited unspecified records which it claims to purportedly support its argument but refuses to produce the documents under the guise of irrelevancy. It cannot have it both ways.

As Plaintiffs have explained to Sirius, they intend to compare Defendant's internal DNC list with call records to show that the calls were made to phone numbers on the DNC lists. Defendant's position that Plaintiffs are inadequate class representatives has not been decided on the merits and does not justify denying Plaintiffs' request for its internal DNC list. *See Hossfeld*, 2021 U.S. Dist. LEXIS 199023, *10 (Rejecting a defendant's relevancy objection for production of its internal DNC list based on an unproven defense to liability: "Allstate's position is not well taken, as its assertion of an unproven theory does not negate Hossfeld's right to discover relevant information … Because Allstate's defense to vicarious liability under the TCPA has not been decided on the merits, it does not justify denying Hossfeld's request for its internal DNC list."). As such, the logs of Sirius' telemarketing calls and the corresponding DNC Lists used at the time the calls were placed are plainly relevant to the adequacy of representation element of Rule 23.

2. **The Call Lists and Call Data are Relevant to the Remaining Class Certification Elements.**

Even if Sirius had not directly invoked Rule 23's adequacy of representation prong, the Call Lists are still relevant to determine whether the classes are ascertainable. *See Johnson v.*

10

*Yahoo! Inc.*, 1:14-cv-2028, 2016 WL 25711, at *2 (N.D. Ill. Jan. 4, 2016) ("Plaintiffs' proposed classes—both the primary one and the two subclasses—are ascertainable because they are defined precisely, defined by objective criteria, and are not defined in terms of success on the merits. Nothing more is required.") (citing *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015)). Sirius refuses to provide basic information in its possession regarding who is in the putative classes even though Plaintiffs have objectively defined the classes within their complaint. *See* CAC, ¶¶ 81–82, 89, 91, 93. Only Sirius has information and knowledge regarding which persons bought or leased a vehicle equipped with Sirius' radio equipment and then received a telephone call from Sirius, or a third-party acting on its behalf, as a result. Plaintiffs therefore seek that information to meet their burden on class certification with regard to ascertainability.

Moreover, the Call Lists are relevant to commonality and predominance. The commonality requirement is met if at least one legal or factual question is common to every member of the class. Fed. R. Civ. P. 23(a)(2). The predominance analysis focuses on whether the legal or factual issues to be resolved on a class-wide basis are more important than those that could only be resolved on an individual basis. Fed. R. Civ. P. 23(b)(3); *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). The common question to which the Call Lists relate is whether Plaintiffs and the class members received marketing calls from or on behalf of Sirius despite registration of their phone numbers on the Federal DNC Registry or Defendant's Internal DNC Registry.

Accordingly, the DNC lists requested by Plaintiffs are relevant to the elements of class certification and must be produced by Sirius so that Plaintiffs can address the issues of class certification. Defendant's justification for its refusal to produce relevant information is meritless; Plaintiffs cannot support a motion for class certification unless Sirius produces the requested information.

11

### B. Sirius Must Produce Documents Within the Possession of Third-Party Vendors

According to Sirius, it does not directly telemarket to any consumers; rather, third-party telemarketing vendors place calls on Sirius' behalf. *See* Barney Decl., Exhibit D, p. 6. Plaintiffs requested Sirius to produce documents including records of outbound telemarketing calls made by the vendors on Sirius' behalf, documents concerning such calls (e.g., data from the calls and reports from the vendors to Sirius), and policies that relate to retaining documents for such vendors. *See* Barney Decl., Exhibit A, RFP Nos. 5, 10, 49, 56, 81, 82, and 84. Sirius raised several objections, including that the requests were supposedly unduly burdensome, premature before an order on class certification, disclosure of such information may violate confidentiality agreements, privacy concerns due to the disclosure of personal identifying information of call recipients, and because such information is within the possession of the vendors. *See* Barney Decl., Exhibit B. These objections are unfounded.

#### 1. Sirius' Boilerplate Objection of Undue Burden is Baseless

It is well-settled that boilerplate objections to a discovery request which are "not backed up with any reason or justification" are unfounded and should be stricken. *See Breuder v. Bd. of Trs.*, No. 15 CV 9323, 2021 U.S. Dist. LEXIS 56943, at *12 (N.D. Ill. Mar. 25, 2021) (citing *Hunt v. Northwest Suburban Cmty. Hosp., Inc.*, No. 03 C 50250, 2007 U.S. Dist. LEXIS 37157, 2007 WL 1512580, at *3 (N.D. Ill. May 22, 2007). Plaintiffs' RFPs are proportional to the needs of this case. Sirius has offered no evidence to meet its burden of showing that it will suffer an undue burden to sufficiently answer the requests. Thus, the Court may properly overrule Sirius' improper boilerplate objections and order Sirius to produce the requested documents.

#### 2. Plaintiffs' Requests are Timely Because the Court has not Bifurcated Discovery

This court has repeatedly rejected the assertion that the documents at issue should not be produced before the resolution of Plaintiff's motion for class certification. "[E]ven if the

12

unredacted information were relevant only to 'who may be potential class members only if a class were to be certified' as Allstate asserts, such discovery is not premature because there is no order bifurcating class discovery in this case." *Gebka*, 2021 U.S. Dist. LEXIS 41078 at *23 (citing *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, Case No. 12 C 5490, 2013 U.S. Dist. LEXIS 136819 (N.D. Ill. September 24, 2013)); *see also Hossfeld*, 2021 U.S. Dist. LEXIS 199023, at *8-9 (rejecting a defendant's argument that pre-class-certification discovery was premature because the court had not bifurcated merits and class discovery). Because the Court has not bifurcated discovery here, Plaintiffs' requests are timely and Defendant's objections on this basis should be overruled.

### 3. Sirius has Failed to Demonstrate how Privacy Concerns Outweigh Production

Sirius has not articulated how the privacy concerns of the individuals within the documents it refuses to produce outweigh the legitimate needs of Plaintiffs for this information. As noted in Plaintiffs' initial meet and confer letter, "Plaintiffs are not asking for sensitive financial information, social security numbers, or medical information; we are simply requesting names and phone numbers, information that is generally publicly available from any number of sources. Regardless, such concerns can be resolved by the protective order. . . ." *See* Barney Decl., Exhibit C, p. 2; Dkt. 18 (Agreed Confidentiality Order). In fact, such information is routinely produced and can be protected by the parties' Agreed Confidentiality Order. *See Gebka*, 2021 U.S. Dist. LEXIS 41078 at *24 (ordering a defendant to produce unredacted documents evidencing outbound telemarketing calls and that such documents are to be marked confidential under the matter's confidentiality order); *see also Cortez v. Target Corp.*, No. 1:23-cv-01435, 2023 U.S. Dist. LEXIS 199321, at *8 (N.D. Ill. Nov. 7, 2023) (ordering the production of potential class members' personal information because "Plaintiffs have shown a legitimate need for the information they

13

seek, and such privacy concerns remain speculative given the Court's previously entered confidentiality order.").

4. **Confidentiality Agreements do not Bar Plaintiffs' Requests**

Further, Sirius' reference to the existence of a private nondisclosure agreement with third parties is not a valid objection to a request for production, particularly in light of the parties' Agreed Confidentiality Order. *See Nvision Biomedical Techs., LLC v. Jalex Med*., LLC, No. 5:15-CV-284 RP, 2016 WL 8285637, at *2 (W.D. Tex. Feb. 1, 2016) (ordering production of documents that were subject to a nondisclosure agreement with third parties); *see also Tinkers & Chance v. Leapfrog Enterprises, Inc.*, No. CIV.A. 2:05-CV-349, 2006 WL 462601, at *2 (E.D. Tex. Feb. 23, 2006) (ordering "the production of all relevant documents and evidence, without regard to any private non-disclosure agreements"). If the third parties have concerns over confidential or trade secret information, Sirius is welcome to mark the documents in accordance with the protective order the parties have entered into. *See Nvision Biomedical Techs., LLC*, 2016 WL 8285637, at *3 (stating that "the existing Confidentiality and Protective Order . . . is sufficient to satisfy" any concerns over sensitive or proprietary information); *Tinkers & Chance*, 2006 WL 462601, at *2 (directing that confidential information be produced under the protective order in the case).

5. **Even if Responsive Records are in the Possession of Third-Party Vendors, Sirius has a Responsibility to Search for and Produce Those Records**

As noted by this Court in *Gebka*, discovery of the call records of vendors who called a plaintiff on behalf of a defendant may be requested from the defendant itself. 2021 U.S. Dist. LEXIS 41078, at *20 (N.D. Ill. Mar. 4, 2021) (citing, *inter alia*, *Henderson*, 2015 WL 4742346, at *7 (holding [t]he fact that documents are in the physical possession of a third party custodian does not eliminate the responsibility of a responding party to search for and produce those documents when the party has the legal right to obtain the documents on demand.").

14

## V. CONCLUSION

Plaintiffs respectfully requests that the Court enter an Order:

a. Compelling Defendant to produce the Call Lists and Call Data within fourteen (14) days; and

b. Providing such other relief as the Court deems just and proper.

Dated: January 11, 2024                        Respectfully submitted,

*/s/ Mason A. Barney*
Mason A. Barney
Kyle D. McLean
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
Email: mbarney@sirillp.com
Email: kmclean@sirillp.com

Daniel M. Hutchinson
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com

Jarrett L. Ellzey
Leigh Montgomery
Alex Kykta
ELLZEY & ASSOCIATES, PLLC
1105 Milford St,
Houston, TX 77006
Telephone: (888) 350-3931
Email: Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

15

## CERTIFICATE OF COMPLIANCE

Under Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.

/s/ *Mason A. Barney*  
Mason A. Barney