**THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated, | **Case No. 2:22-cv-02261-CSB-EIL** |
| Plaintiffs | **Judge: Hon. Colin Stirling Bruce** |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION;
MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

2992714.3

# TABLE OF CONTENTS

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION .......................................... 1

I.  INTRODUCTION. ....................................................................................... 1

II. BACKGROUND. ......................................................................................... 2

    A.  The Telephone Consumer Protection Act. ........................................... 2

    B.  Statement of Fact. ................................................................................. 4

        1.  Common Evidence Establishes that SiriusXM Placed Telemarketing Calls to Persons on the National Do Not Call Registry. .................................................................................... 4

        2.  SiriusXM Promised to Change its Telemarketing Call Practices. ............. 5

    C.  SiriusXM Did Not Make the Required Changes. .................................. 6

    D.  SiriusXM Continues to Place Telemarketing Calls to Persons on the National Do Not Call Registry. ............................................................ 6

    E.  SiriusXM Fails to Honor All Do Not Call Requests. ............................ 7

    F.  Background of Plaintiffs' Claims ......................................................... 7

III. LEGAL STANDARD ................................................................................. 8

IV. ARGUMENT. ............................................................................................. 9

    A.  The Proposed Class. .............................................................................. 9

    B.  The Class Representatives Have Standing. ........................................... 9

    C.  The Proposed Class is Ascertainable. ................................................. 10

    D.  The Requirements of Rule 23(a) Are Met. ......................................... 11

        1.  The Proposed Class is Sufficiently Numerous. ........................ 11

        2.  The Proposed Class Involves Common Issues of Law and Fact. ............ 11

        3.  Plaintiffs' Claims Are Typical of Those of the Class. ............................. 13

        4.  Plaintiffs Are Adequate. ........................................................... 13

    E.  The Rule 23(b)(3) Requirements Are Satisfied. ................................. 14

        1.  Common Issues Predominate. ................................................... 14

        2.  Any Affirmative Defense Presents Common Issues. ................ 16

            a.  SiriusXM Does Not Allege Any Affirmative Defenses. ............. 16

            b.  Any Affirmative Defenses Would Fail Based on Classwide Evidence. ...................................................................................... 17

**TABLE OF CONTENTS**
**(continued)**

**Page**

F.    A Class Action Is the Superior Method of Adjudicating the Claims of the Class Members. ................................................................................................. 18

G.    A Class Action is Manageable. .......................................................................... 19

H.    Certification Under Rule 23(c)(4) Is Appropriate. ............................................ 19

V.    APPOINTMENT OF CLASS COUNSEL. .................................................................... 20

VI.    CONCLUSION. ............................................................................................................. 20

2992714.3

# TABLE OF AUTHORITIES

**Cases**

*Agne v. Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)...........................................................................................14

*Alea London Ltd. v. Am. Home Servs., Inc.*,
    638 F.3d 768 (11th Cir. 2011) .............................................................................................2

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................................1, 8, 9, 14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)........................................................................................................8, 15

*Barr v. Am. Ass'n of Political Consultants, Inc*,
    591 U.S. 610 (2020)............................................................................................................1

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014)................................................................................ *passim*

*Butler v. Sears, Roebuck and Co.*,
    702 F.3d 359 (7th Cir. 2012) .......................................................................................14, 20

*Caldera v. Am. Med. Collection Agency*,
    320 F.R.D. 513 (C.D. Cal. 2017) ......................................................................................19

*Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*,
    307 F.R.D. 475 (N.D. Ill. 2015).........................................................................................13

*Cordoba v. DirecTV, LLC*,
    320 F.R.D. 582 (N.D. Ga. 2017)..........................................................................................1

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ...........................................................................................9

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)...........................................12

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)...............................................................................................................8

*Hinman v. M & M Rental Center*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................13, 19

*Hooker v. Sirius XM Radio, Inc.*,
    4:13-cv-00003 (E.D. Va. 2013) ..........................................................................................17

2992714.3

*In re IKO Roofing Shingle Products Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) .....................................................20

*Illinois Conf. of Teamsters & Emps. Welfare Fund v. Steve Gilbert Trucking*,
    71 F.3d 1361 (7th Cir. 1995) .....................................................16

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ...........................................1, 8, 15

*Johansen v. One Planet Ops, Inc.*,
    No. 2:16-CV-00121, 2018 WL 1558263 (S.D. Ohio Mar. 5, 2018)..........................1

*Karpilovsky v. All Web Leads, Inc.*,
    17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ...........................1

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) .....................................................13

*Kirgan v. FCA LLC*,
    No. 10-1392, 2013 WL 1500708 (C.D. Ill. Apr. 10, 2013) ...................17

*Kleen Products LLC v. Int'l Paper*,
    306 F.R.D. 585 (N.D. Ill. 2015)...............................................8, 11

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) .....................................................17

*Kohen v. Pacific Inv. Mgmt. Co., LLC*,
    571 F.3d 672 (7th Cir. 2009) ......................................................8

*Krakauer v. Dish Network L.L.C.*,
    311 F.R.D. 384 (M.D.N.C. 2015) ...................................................1

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ............................................1, 16, 18, 19

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)............................................................3

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    672 F.3d 482 (7th Cir. 2012) .....................................................20

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ......................................................8

*Patriotic Veterans, Inc. v. Zoeller*,
    845 F.3d 303 (7th Cir. 2017) ......................................................9

2992714.3

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) ..........................................................11, 20

*Reed v. Columbia St. Mary's Hosp.*,
915 F.3d 473 (7th Cir. 2019) ....................................................................17

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
281 F.R.D. 327 (E.D. Wis. 2012) ............................................................19

*Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*,
250 F. Supp. 3d 354 (D. Minn. 2017) ......................................................19

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ................................................1, 10, 12, 15

*Savanna Group, Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)................11, 12

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ......................................................8, 11, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)..................................................................................14

*United States v. Dish Network*,
75 F. Supp. 3d 942 (C.D. Ill. 2014) ........................................................17

*United States v. Dish Network L.L.C.*,
954 F.3d 970 (7th Cir. 2020) ......................................................3, 4, 16, 18

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................11, 12

*Whitten v. ARS Nat. Services, Inc.*,
No. 00-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ....................20

**Statutes**

47 U.S.C. § 227 ...........................................................................................3

47 U.S.C. § 227(a)(4)...................................................................................3

47 U.S.C. § 227(c)(1)...................................................................................3

**Court Rules**

Fed. R. Civ. P. 1 ........................................................................................19

Fed. R. Civ. P. 23(a)(1)..............................................................................11

Fed. R. Civ. P. 23(a)(2).................................................................................................11, 12

Fed. R. Civ. P. 23(c).........................................................................................................20

Fed. R. Civ. P. 23(g)(1)....................................................................................................20

2992714.3

## I.    **INTRODUCTION.**

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc*, 591 U.S. 610, 613 (2020). SiriusXM placed telemarketing calls to 10,964,559 telephone numbers registered for the National Do Not Call Registry ("DNC Registry"). These calls violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. Class certification of persons who received telemarketing calls while registered on the DNC Registry is appropriate to hold SiriusXM accountable for serial violations of the law.

"Class certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (same). This is because "the advantages of class resolution follow directly from the statute [which] creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659, 663 (4th Cir. 2019) (upholding certification of DNC Registry class post-judgment because TCPA claims are "amenable to class action resolution."). The Supreme Court holds that certification requirements are "readily met" in consumer protection cases where, as here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Class certification is therefore common and routinely granted in similar TCPA cases challenging telemarketing calls.[1]

This case epitomizes those holdings. It involves telemarketing calls made to an identifiable group of individuals—persons registered for the DNC Registry. The claim focuses entirely on SiriusXM's uniform conduct: its common and classwide "override of the National Do

---

[1] *See e.g.*, *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (certifying a nationwide TCPA DNC Registry class); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) (same); *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263, at *1 (S.D. Ohio Mar. 5, 2018) (same); *Karpilovsky v. All Web Leads, Inc.*, 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018) (certifying TCPA telemarketing class); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) (same).

Not Call Registry" to make telemarketing calls to persons registered on the DNC Registry. Thus, liability can be determined on a class-wide basis upon common proof that all Class members received such telemarketing calls. Certification would permit common questions of law and fact that affect every class member to be litigated in an economical fashion. Call records indicate the date and time of every single call at issue. Where, as here, Plaintiffs present a precisely defined, carefully circumscribed Class consisting only of people who received these calls, class certification is particularly appropriate.

The proposed Class is ascertainable; satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy; and satisfies the Rule 23(b)(3) requirements of predominance and superiority. SiriusXM's own records demonstrate that Plaintiffs, like other members of the proposed Class, received telemarketing calls while registered for the DNC Registry. Additionally, there are no individualized issues relating to any affirmative defense because SiriusXM did not alleged an affirmative defense in any answer, and has no evidence to support any "established business relationship" defense. Therefore, the core legal and factual question to be resolved in this case is straightforward and, indisputably, common to the Class as a whole: whether SiriusXM placed telemarketing calls to persons on the DNC Registry. Answering this question will determine in one stroke whether SiriusXM is liable to the Class as a whole. Because damages are statutory, the amount of SiriusXM's liability, if any, will implicate no individual issues: it is just math.

Plaintiffs submit that if class certification is "normal" in TCPA cases generally, this case presents a paradigmatic candidate for class certification. They respectfully request that the Court grant their motion.

## II.    BACKGROUND.

### A.    The Telephone Consumer Protection Act.

 "The TCPA is essentially a strict liability statute … [and] does not require any intent for liability . . . ." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted). Congress embedded the reasons for the TCPA into the statute itself with

2992714.3

explicit Congressional Findings. 105 Stat. 2394 (following 47 U.S.C. § 227). Those Findings state that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy"; "consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers"; and "Federal law is needed to control residential telemarketing practices." *Id.*, ¶¶5-7.

Accordingly, to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," the TCPA required the FCC to initiate rulemaking proceedings. 47 U.S.C. § 227(c)(1). Congress explicitly authorized the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id.* § 227(c)(3). The TCPA "prohibit[s] any person from making or transmitting a telephone solicitation to the telephone number of any [telephone] subscriber included in such database." *Id.* § 227(c)(3) & (c)(5) (prohibiting "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations"). Thus, once telephone subscribers add their numbers to the DNC Registry, telemarketers are prohibited from making unsolicited calls to their numbers. SiriusXM is liable for calls placed "by or on behalf of" the company. *Id.* § 227(c)(5). Interpreting the plain meaning of the TCPA is exclusively a judicial function. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2247 (2024).

The definition of "telephone solicitation" under the TCPA excludes "persons with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4). An "established business relationship" requires "'the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call.'" *United States v. Dish Network L.L.C.*, 954 F.3d 970, 979 (7th Cir. 2020). This Court adopted the Seventh Circuit's definition. Order, Dkt. 16 (Sept. 25, 2023) (quoting *Dish Network*, 954 F.3d at 979). As further explained below, any established business relationship defense fails, on a classwide bases and as a matter

of law, because SiriusXM waived any established business relationship and because class members never paid for SiriusXM radio service.

**B.** **Statement of Fact.**

This case addresses SiriusXM's telemarketing calls *to non-paying prospective customers* in order to sell paid satellite radio subscriptions. SiriusXM harvested telephone numbers from the records of car manufacturers and dealers that sell vehicles with a preinstalled SiriusXM satellite radio. SiriusXM hired telemarketing agencies to place telemarketing calls on its behalf using standard procedures and scripts approved by SiriusXM. SiriusXM oversaw, supervised, and approved these calling campaigns at all times. Through these practices, SiriusXM called millions of consumers.

**1.** **Common Evidence Establishes that SiriusXM Placed Telemarketing Calls to Persons on the National Do Not Call Registry.**

Prior to the *Buchanan* Settlement, ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████. ████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████. ████ ████████████████████████████████████████ ████████████████████████████████. ██████████████████████████████████████ ████████████████████████████████████████ ████████████████. ████████████████████████████████. ████████████████████████████████

██████████████—even though, by definition and as a matter of law, an established business relationship requires a consumer to *purchase* service. *See Dish Network*, 954 F.3d at 979.

2992714.3

## 2. SiriusXM Promised to Change its Telemarketing Call Practices.

SiriusXM faced a series of state enforcement actions and lawsuits challenging its telemarketing calls and its wrongful assertion of an established business relationship. ██████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████. ████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████. ██████████████████████████ ██████████████████████████████████████████ ███████████████████████ ███████████████████████████████████. █████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████. 

In 2019, SiriusXM faced a similar class action TCPA lawsuit alleging that Sirius placed telemarketing calls to persons on the DNC Registry. Ex. 8. The *Buchanan* Plaintiff noted that SiriusXM's *free trial period* did not give rise to any "established business relationship." *Id.* After class certification was fully briefed, SiriusXM agreed to pay $25 million, provide approximately $6.5 million in satellite radio service, and make practice changes. *Id.* The *Buchanan* Settlement stated SiriusXM "shall ensure that its Customer Agreement has an easily visible and clear explanation that trial subscribers have a business relationship with Sirius XM that may result in Sirius XM calling them."[2] *Id.*

---

[2] Further, the *Buchanan* Agreement required *the Customer Agreement* to provide "an explanation of how Sirius XM communicates with consumers," "notice to consumers that Sirius XM may call them," "a URL where consumers may manage their contact preferences," and "an 800 number they may call for customer service." Ex. 8.

**C.      SiriusXM Did Not Make the Required Changes.**

SiriusXM did not make the required changes to its Customer Agreement. *See* Ex. 9, Customer Agreement (not containing any "easily visible and clear explanation that trial subscribers have a business relationship with Sirius XM").[3] ███████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████.

It was not until December 14, 2023— █████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████.

**D.      SiriusXM Continues to Place Telemarketing Calls to Persons on the National Do Not Call Registry.**

████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████. ███████████████████████████████████████

██████████████████████████████████████████████

████████.

████████████████████████████████████████████████

██████████████████████████████████████████████████████. ███████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████. ████████████████████████████████████

███████████████████████████████████████████████████

─────────────────────

[3] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[REDACTED]

[REDACTED].

[REDACTED]

[REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].

**E.     SiriusXM Fails to Honor All Do Not Call Requests.**

SiriusXM has not implemented procedures to honor all do-not-call requests. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].[REDACTED]

[REDACTED]

[REDACTED].[REDACTED]

[REDACTED].

**F.     Background of Plaintiffs' Claims**

Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland each received SiriusXM's unsolicited telemarketing calls despite placing their telephone numbers on the DNC Registry. Ex. 17 (Campbell), ¶¶9-18; Ex. 18 (Bickford), ¶¶10-12; Ex. 19 (Mulholland), ¶¶7-12.

### III. __LEGAL STANDARD__

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The purpose of Rule 23 is to provide for the efficient administration of justice by allowing large numbers of claims involving the same core issues to proceed in the aggregate. Rule 23 furthers that purpose by "select[ing] the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). Consumer protection cases, which arise from a single course of conduct that affects large numbers of consumers, are particularly amenable to class treatment. *Amchem*, 521 U.S. at 625.

The Court must conduct a "rigorous analysis" to determine whether the putative class satisfies Rule 23's requirements. *Amgen*, 568 U.S. at 465-66. First, Plaintiffs must demonstrate that: (1) they have standing; and (2) the proposed class is ascertainable, *i.e.*, defined clearly and based on objective criteria. *See, e.g.*, *Kohen v. Pacific Inv. Mgmt. Co., LLC,* 571 F.3d 672, 676 (7th Cir. 2009).

Second, a proposed class must meet all of the requirements of Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Kleen Products LLC v. Int'l Paper,* 306 F.R.D. 585, 589 (N.D. Ill. 2015) (citing *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012)).

Finally, Rule 23(b)(3) "requires the court to find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

Applying these standards, courts frequently certify TCPA telemarketing classes. *See supra*, fn.1. In fact, "[c]lass certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A.,* 728 F.3d at 684. These holdings are consistent with the Supreme Court's observation that the class certification requirements are "readily met" in consumer protection cases where, as

here, common factual questions necessarily center upon the defendant's course of conduct. *See Amchem*, 521 U.S. at 625. This case should be no different.

IV.    **ARGUMENT.**

A.    **The Proposed Class.**

Plaintiffs seek certification under Rule 23(b)(3) of a Class consisting of persons who: (1) received more than one SiriusXM telephone solicitation call on their residential phone number (2) in any 12-month period telemarketing during the Class Period (3) 31 or more days after registering their telephone number with the DNC Registry, and (4) did not purchase SiriusXM's satellite radio service.[4] The proposed Class meets all requirements for certification.

B.    **The Class Representatives Have Standing.**

████████████████████████████████████████████████████████████████.

Those calls violated the TCPA because they were registered on the DNC Registry at the time they received the calls. Plaintiffs have therefore alleged: (1) an injury-in-fact (the invasion of privacy caused by the unwanted telemarketing calls); (2) stemming from SiriusXM's unlawful conduct (telemarketing calls in violation of the TCPA); and (3) that the injury may be redressed (via the TCPA's statutory damages). *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017) ("*Every call* uses some of the phone owner's time and mental energy, both of which are precious."); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("[A] phone call intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention," which constitutes injuries "sufficiently concrete and particularized for Article III standing"). Plaintiffs have standing to represent the proposed Class.

---

[4] A Pre-*Buchanan* Subclass consists of people who purchased a car prior to the *Buchanan* Approval Date. A Post-*Buchanan* Subclass consists of people who purchased a car after the *Buchanan* Approval Date. A North Carolina Subclass consists of persons in North Carolina.

## C.     The Proposed Class is Ascertainable.

"Rule 23 requires that a class be defined, and experience has led courts to require that classes be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. Ascertainability is focused only on the class definition itself. "[C]lass definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. TCPA class actions are straightforward, and class members can almost always be identified through call records. *See, e.g., Birchmeier*, 302 F.R.D. at 248 (holding that plaintiff's list of 930,000 phone numbers established a "sufficiently ascertainable" TCPA telemarketing class).

The same is true here. Plaintiffs' proposed Class consists only of individuals who meet four criteria: (1) they received two telemarking calls to a U.S. number; (2) during a twelve-month period between April 27, 2019 and December 14, 2023; (3) while registered for the DNC Registry, and (4) they were not paid customers of SiriusXM. The Class is therefore "a particular group, harmed during a particular time frame, in a particular location, in a particular way," and thus avoids the problem of a vague class definition. *See Mullins*, 795 F.3d at 660. In addition, all four of these elements are evaluated based entirely on objective criteria: an individual either received a call from SiriusXM; the calls occurred during the relevant time period or it did not. The proposed Class is ascertainable.

Moreover, the Class here is not only ascertainable; 

. These call records accurately and contemporaneously recorded the telephone number, date, and time of each outgoing telemarketing call. Such "logs showing the numbers that received each [call] are objective criteria that make the recipient clearly ascertainable." *See*, *e.g.*, *Sandusky Wellness Ctr.*, 821 F.3d at 997; *accord Birchmeier,* 302 F.R.D. at 248.

██████████████████████████████████████████████████████████
████████████████████████. Plaintiffs have satisfied ascertainability.

### D.  The Requirements of Rule 23(a) Are Met.

A proposed class must meet all of the requirements of Rule 23(a), which are "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Kleen Products*, 306 F.R.D. at 589. The proposed Class meets all four of these requirements.

### 1.  The Proposed Class is Sufficiently Numerous.

Numerosity examines whether a proposed class is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1)). In the TCPA context, "[a] class of forty generally satisfies the numerosity requirement. *See Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 WL 66181, *4 (N.D. Ill. Jan. 4, 2013). ██████████████████████ ██████████████████████████████████████████.[5] Joinder of that many persons would be impracticable and highly inefficient. Numerosity is satisfied.

### 2.  The Proposed Class Involves Common Issues of Law and Fact.

Commonality examines whether there "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Suchanek,* 764 F.3d at 755 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). Rule 23(a)(2) requires at least one common issue of fact or law "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350.

Because, by definition, calling programs are carried out on a mass basis, commonality is readily satisfied in TCPA cases like this one where class members receive the same calls. *See*

---

[5] A North Carolina Subclass represented by Plaintiff Mulholland contains 360,548 unique telephone numbers. *Id.*, ¶¶54-56.

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (collecting cases). A "common contention… capable of classwide resolution" is whether class members received a call violating the TCPA. *Sandusky Wellness Ctr.*, 821 F.3d at 998; *see also supra* n.1 (listing telemarketing TCPA certifications).

Here, Plaintiff's TCPA claim raises several fundamental questions that are common to the class, including: (a) whether SiriusXM's telemarketers placed telemarketing calls on behalf of SiriusXM; (b) whether the calls were placed to persons registered for the DNC Registry; and (c) whether SiriusXM's conduct was willful. These questions are common to the class, will be resolved for the class in one stroke, and the answers will substantially drive the resolution of this case. *Dukes*, 564 U.S. at 350. Here, SiriusXM's own records show its telemarketers placed calls on behalf of the company, and expert evidence confirms calls placed to persons registered to the DNC Registry. These are issues of fact capable of proof by evidence common to every class member. This common evidence permits a classwide merits determination. Similarly, whether SiriusXM's calls constitute "willful" or "knowing" violations of the TCPA—particularly calls made after the *Buchanan* settlement when SiriusXM indisputably had knowledge of the wrongfulness of their conduct—is a legal issue that can be determined on a classwide basis based on common evidence showing what SiriusXM knew and did.

Given these common issues, Plaintiff has articulated a "common nucleus of operative fact" that links all class members' claims together. *See Savanna Group,* 2013 WL 66181, at *8; *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls . . . made by or for one of the defendants. . . . This is a common alleged injury presenting a common question . . . ."). The proposed Class satisfies the requirements of Rule 23(a)(2).

If liability is established, damages are a matter of simple math: in light of the statutory damages provisions of the TCPA, damages can be straightforwardly calculated by multiplying the number of calls received by the statutory penalty. Each class member's damages can readily be determined on a classwide basis.

2992714.3

3.     **Plaintiffs' Claims Are Typical of Those of the Class.**

Rule 23(a)(3) requires Plaintiffs to show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago,* 307 F.R.D. 475, 480-81 (N.D. Ill. 2015). To satisfy the "typicality" requirement, Plaintiffs' TCPA claim need only arise "from the same event or practice or course of conduct that gives rise to the claims of other class members" and be "based on the same legal theory." *Id.* (quoting *Oshana,* 472 F.3d at 514). Where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M & M Rental Center,* 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998)). Courts have therefore found typicality where, as here, a defendant's practice of making the same unsolicited contact with plaintiff and the proposed class forms the basis of the class claim. *See Birchmeier,* 302 F.R.D. at 251.

Here, Plaintiffs' claims are likewise typical of the claims of all Class members because they arise from the same course of conduct and under the same legal theory. The standardized course of conduct consists of SiriusXM making telemarketing calls during the Class Period to non-paying consumers registered on the DNC Registry. The representative Plaintiffs, just like everyone in the Class, received telemarketing calls from SiriusXM calls while registered for the DNC Registry. Typicality is satisfied.

4.     **Plaintiffs Are Adequate.**

"Rule 23(a)(4) requires that the named plaintiffs and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier,* 302 F.R.D. at 252 (quoting the Rule).

Here, Plaintiffs' interests are aligned with the Class because they have been harmed by the same common misconduct—unwanted telemarketing calls. *See Agne v. Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (TCPA claim satisfies Rule 23 requirement because the class consists of persons who received such calls). Plaintiffs have no interests that are antagonistic to the Class, and there is no indication of any credibility or other problems with

any proposed class representative. *See* Ex. 17 (Campbell); Ex. 18 (Bickford); Ex. 19 (Mulholland). Plaintiffs have committed to achieving the best result for all members of the Class, and their interests are aligned precisely with those of the class.

### E.      The Rule 23(b)(3) Requirements Are Satisfied.

Plaintiffs satisfy Rule 23(b)(3) by showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Birchmeier*, 302 F.R.D. at 252, 255 (quoting the Rule). TCPA claims like this one, by their nature, involve large numbers of plaintiffs who received identical calls, a single defendant, and a common course of conduct that affected each plaintiff in the same way, thus making them uniquely suitable for classwide determination. Here, common questions predominate over individual issues and the class action device is superior to other methods of adjudication.

#### 1.      Common Issues Predominate.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). Predominance is "readily met" in certain consumer cases. *Id.* at 625. The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck and Co.,* 702 F.3d 359, 362 (7th Cir. 2012); *accord* 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"). It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, (2016) ("The predominance inquiry asks whether common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.") (citation omitted).[6]

---

[6] Thus, "when one or more of the central issues in the action are common to the class . . . , the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

"[T]he requirement of predominance is not satisfied if 'individual questions . . . overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen*, 568 U.S. at 468)*.* On the flip side, it is not the case that *every* issue must be common to *every* class member. *See Suchanek*, 764 F.3d at 759. Rather, "[a]t the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr.*, 821 F.3d at 998 (citation omitted).

In addition, as the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 568 U.S. at 459. In other words, "a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen*, 568 U.S. at 460. Whether or not this case is ultimately decided in favor of the class, its resolution will be determined by answering questions common to all class members.

TCPA claims, by their nature, involve a common course of conduct—a call campaign— that affects each class member in the same way. *See Ira Holtzman, C.P.A.,* 728 F.3d at 684 (discussing how "[c]lass certification is normal in litigation under [the TCPA]."). In this case, common issues overwhelm any individual questions. Plaintiffs' TCPA claim is based on standard SiriusXM telemarketing calls evidenced by its own call records. This common evidence will establish whether Plaintiffs and Class members received telemarketing calls while registered for the DNC Registry. Indeed, it is difficult to imagine how such evidence could possibly vary between Class members. Rather, Plaintiffs' expert can show conclusively which calls were placed to telephone numbers registered for the DNC Registry. Simply put, each such call is clearly identified in the call records produced in this action.

As such, whether SiriusXM is liable for these calls presents a single common issue that will be decided—yes or no—for all Class members in one stroke. Whether these calls violate the

TCPA is a common, critical question that should be decided once for the Class as a whole. Whether SiriusXM is liable for these calls is a binary question: it either is, or is not, liable. The answer will not—cannot—vary from class member to class member. A well-established legal standard dictates that companies may be held liable under the TCPA for call campaigns administered by their telemarketers. *See, e.g.*, *United States v. Dish Network L.L.C.*, 954 F.3d 970 (7th Cir. 2020) (affirming TCPA judgment finding company liable for telemarketing calls placed on its behalf to persons registered for the DNC Registry); *Krakauer*, 925 F.3d 643 (same). Should liability be found, damages are basic math: multiplying the number of calls received by the statutory penalty. *See id.* The predominance portion of Rule 23(b)(3) is satisfied.

### 2.     Any Affirmative Defense Presents Common Issues.

In many TCPA cases, the defendants attempt to show that class members provided "prior express written consent" or that they forged an "established business relationship" with the defendants. Some courts have found that questions raised by the defendants' alleged affirmative defenses present individualized issue that defeat the predominance requirement. The issue of prior express consent simply does not exist here, since there is no legal or factual basis for any affirmative defense: There is no legal basis because SiriusXM does not allege any affirmative defense, and no factual basis because SiriusXM failed to provide any evidence of prior express written consent or an established business relationship for any Class member. For these reasons, any affirmative defense would fail based on classwide evidence.

### a.     SiriusXM Does Not Allege Any Affirmative Defenses.

It is well established that "all affirmative defenses [must] be specifically pleaded." *Illinois Conf. of Teamsters & Emps. Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995). "[F]ailure to plead an affirmative defense in an answer constitutes waiver." *Kirgan v. FCA LLC*, No. 10-1392, 2013 WL 1500708, at *3 (C.D. Ill. Apr. 10, 2013). The Seventh Circuit recently held that it is an abuse of discretion to consider an affirmative defense not raised in an answer. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 482 (7th Cir. 2019)

(refusing to allow "the party that was at least negligent in failing to plead its defense to take unfair advantage of its opposing party").

Here, SiriusXM has not filed an answer or pled any affirmative defenses. ████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████. Thus, like *Reed*, SiriusXM did not raise any affirmative defense, any evidence regarding affirmative defenses would be entirely within SiriusXM's control, extensive discovery has occurred, and SiriusXM has no excuse for its failure to raise any affirmative defense. *See Reed*, 915 F.3d at 482. SiriusXM's decision not to allege any affirmative defense therefore constitutes waiver under *Reed*—and makes sense because SiriusXM has no defense.[7]

### b.      Any Affirmative Defenses Would Fail Also Based on Classwide Evidence.

The EBR issue is an affirmative defense for which Sirius bears the burden of proof. *United States v. Dish Network*, 75 F. Supp. 3d 942, 1008 (C.D. Ill. 2014). As the Seventh Circuit has held, "[a]n established business relationship depends on the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call." *Dish Network L.L.C.*, 954 F.3d at 979 (citations and internal quotation marks omitted). This Court has agreed. Order, Dkt. No. 16 (Sept. 25, 2023) (quoting *Dish Network*, 954 F.3d at 979). In *Dish Network*, the Seventh Circuit expressly rejected the defendant's argument that that an established

---

[7] SiriusXM's failure to raise any arbitration defense is also unsurprising. Several courts have already reviewed SiriusXM''s Customer Agreement and held it does not give rise to any contractual relationship between SiriusXM and free trial users. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ("[A]pplying well-settled principles of contract law, we conclude that no valid agreement to arbitrate exists between Knutson and Sirius XM because Knutson never assented to the Customer Agreement."); Ex. 22, *Hooker v. Sirius XM Radio, Inc.*, 4:13-cv-00003 (E.D. Va. 2013) (Dkt. No. 56 at *9-11) (holding SiriusXM's welcome kit did not create a binding contract because non-paying "trial customers are not bound by the Customer Agreement"). For the Post-*Buchanan* Subclass, SiriusXM was required to place required language into its standard "Customer Agreement", but failed to do even that on a classwide basis. *See* Ex. 9 (not containing any "easily visible and clear explanation that trial subscribers have a business relationship with Sirius XM").

business relationship defense can arise from a period of unpaid service. Rather, an established business relationship defense arises only "from the date a consumer purchases, rents, or leases the seller's goods or services." *Dish Network*, 954 F.3d at 979.

Here, there are no individualized issued related to the question of an established business relationship. ████████████████████████████████████████████████████ ████████████████. ████████████████████████████████████████ ████████████████████████. ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████. ████████████████████████████ ████████████████████████████████████. This common evidence at summary judgment or trial will demonstrate on a classwide basis that SiriusXM cannot meet its burden. For all Class members, there was no "purchase, rental, or lease" or "financial transaction" with SiriusXM because they received only free and unpaid service. *See Dish Network L.L.C.*, 954 F.3d at 979. Thus, the legal question—and answer—of whether or not SiriusXM can meet its burden to demonstrate an established business relationship is the same for all Class members.

### F.    A Class Action Is the Superior Method of Adjudicating the Claims of the Class Members.

Rule 23(b)(3) also requires the Court to consider whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); Fed. R. Civ. P. 1 (noting that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). Superiority is "easily met" in "most TCPA cases—because the main questions . . . can usually be

2992714.3

resolved in one stroke." *Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc.*, 250 F. Supp. 3d 354, 362 (D. Minn. 2017) (citations omitted). Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating TCPA claims. *See, e.g. Hinman,* 545 F. Supp. 2d at 807; *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,* 281 F.R.D. 327, 339 (E.D. Wis. 2012).

Here, the claims will be established with common proof, including standard call records. This proof does not vary from plaintiff to plaintiff. Rather, individual lawsuits (which in fact may never be brought because of their relatively small individual value) would only result in a large number of duplicative trials, presenting identical evidence in support of identical claims, increasing overall litigation costs and the risk of inconsistent rulings—counter to the efficiency goal of Rule 23. A class action is therefore the superior—indeed, the only practical—method of resolving these claims.

### G. A Class Action is Manageable.

"[T]he Supreme Court has specifically contemplated plaintiffs bringing TCPA cases as class actions." *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017). Indeed, certified TCPA class actions have gone to trial and jury verdicts have been rendered, with no significant manageability problems. *See*, *e.g.*, *Krakauer*, 925 F.3d at 659, 663 (4th Cir. 2019) (holding post-trial that the TCPA "creates a simple scheme for determining if a violation occurred, whether a defense is available, and what damages ought to be."). Classwide summary judgment or trial is therefore the best method to adjudicate this case fairly and efficiently.

### H. Certification Under Rule 23(c)(4) Is Appropriate.

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). The Seventh Circuit observed: "It is not hard to frame liability issues suited to class-wide resolution." *In re IKO Roofing Shingle Products Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (citing Fed. R. Civ. P. 23(c), *Butler,* 727 F.3d at 800, and *Pella Corp.,* 606 F.3d at 393-94 (per curiam)). "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the

class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012).

Plaintiffs' request for Rule 23(c)(4) certification—to seek classwide declaratory relief finding SiriusXM liable—is precisely the type of issue best suited for classwide determination.

## V.  APPOINTMENT OF CLASS COUNSEL.

Plaintiffs request that their counsel be appointed as Class Counsel for this action. Fed. R. Civ. P. 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and instructs the Court to consider counsel's work, experience, knowledge, and resources.

Plaintiffs' counsel are experienced class action practitioners, fully versed in the intricacies of class actions in general and TCPA class actions in particular. Hutchinson Decl. ¶¶31-54; Ex. 23 (Barney) ¶¶3-10; Ex. 24 (Ellzey) ¶¶8-26. They resolved dozens of similar TCPA cases and obtained some of the largest cash settlements in the history of the TCPA. *Id.* For these reasons, a sister court previously appointed Plaintiffs' counsel as Class Counsel in prior litigation against SiriusXM. *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) ("The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again.") Accordingly, Plaintiffs ask that their counsel be appointed co-lead class counsel on behalf of any class that is certified.

## VI.  CONCLUSION.

For all of the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed Class.

2992714.3

Dated: November 18, 2024

Respectfully submitted,

By: */s/ Daniel M. Hutchinson*

Daniel M. Hutchinson
Jahi L. Liburd
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com

Mason A. Barney
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 532-1091
Email: mbarney@sirillp.com

Jarrett L. Ellzey
ELLZEY & ASSOCIATES, PLLC
1105 Milford St,
Houston, TX 77006
Telephone: (888) 350-3931
Email: Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

*Counsel for Plaintiffs and the Proposed Class*

2992714.3

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.

*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson

2992714.3