E-FILED
Friday, 03 October, 2025  05:00:08 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIRIUS XM RADIO, INC.,<br><br>Defendant. | Case No. 2:22-cv-2261-CSB-EIL |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

III.   SETTLEMENT TERMS ..................................................................................... 3

    A.    Settlement Class ....................................................................................... 3

    B.    Notice ....................................................................................................... 4

    C.    Settlement Benefits .................................................................................. 4

    D.    Release ..................................................................................................... 6

    E.    Exclusions and Objections ....................................................................... 6

    F.    Class Counsel's Application for Fees, Costs, and Expenses ................... 7

    G.    Final Approval Hearing ........................................................................... 7

IV.    ANALYSIS ......................................................................................................... 7

    A.    Standard ................................................................................................... 7

    B.    The Settlement is Fair, Reasonable, and Adequate ................................. 9

        1.    The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims ................................................... 9

            i.     The Settlement Mitigates Risks, Expenses, and Delays ............... 9

            ii.    The Settlement Proposes a Fair and Straightforward Claims Process ......................................................... 10

            iii.   Plaintiffs Intend to Request Reasonable Service Awards ........... 11

            iv.    Counsel Will Seek Reasonable Attorneys' Fees and Costs ........ 12

            v.     No other agreements require disclosure under Rule 23(e)(3) ...... 13

        2.    Plaintiffs and Class Counsel Zealously Represent the Class. .................. 13

        3.    The Settlement Resulted From Informed, Arm's-Length Negotiations. ........................................................ 14

        4.    The Proposed Settlement Treats All Class Members Equitably Relative to One Another. ............................................ 15

    C.    Class Certification is Appropriate .......................................................... 15

        1.    Numerosity .............................................................................. 16

        2.    Commonality ........................................................................... 16

        3.    Typicality ................................................................................ 17

**TABLE OF CONTENTS**
**(continued)**

**Page**

4.   Adequacy ................................................. 17

   i.   Plaintiffs Are Adequate Representatives ..................................... 17

   ii.   Class Counsel is Adequate ............................................. 18

5.   Rule 23(b)(3) Requirements ................................................. 18

   i.   Common Questions of Law or Fact Predominate........................ 19

   ii.   Class Treatment is Superior .......................................... 20

D.   Appointment of Class Counsel ............................................. 20

V.   THE PROPOSED NOTICE PROCEDURE SHOULD BE APPROVED ..................... 21

VI.   THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING ............ 23

VII.   CONCLUSION & PRAYER ......................................................... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................15, 19, 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)................................................................ *passim*

*Bartlett v. City of Chicago*,
    2017 WL 11885188 (N.D. Ill. Jan. 31, 2017).........................................................12

*Briggs v. PNC Financial Services Group*,
    No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016).....................11

*Buchanan v. Sirius XM Radio Inc*.,
    No. 17-cv-728 (N. D. Tex.).......................................................................6, 14

*Cabiness v. Educ. Fin. Sols., LLC*,
    No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817 (N.D. Cal. Mar. 26,
    2019) ...............................................................................................21

*Conner v. Fox Rehab. Servs., P.C.*,
    Nos. 23-1550, 23-1684, 2025 U.S. App. LEXIS 1578 (3d Cir. Jan. 24, 2025).........................9

*Craftwood Lumber Co. v. Interline Brands, Inc*.,
    11-cv-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ....................................................11

*G.M. Sign, Inc. v. Finish Thompson, Inc*.,
    No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009).................................................16

*Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill*.,
    988 F. Supp. 1130 (N.D. Ill. 1997) ...............................................................15

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) .....................................................................19

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ......................................................................7

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018)....................................................................12

3338355.2

**TABLE OF AUTHORITIES**
(continued)

Page

*Mangone v. First USA Bank*,
     206 F.R.D. 222 (S.D. Ill. 2001) ...........................................................................14

*Meredith Corp. v. SESAC, LLC*,
     87 F. Supp. 3d 650 (S.D.N.Y. 2015)....................................................................15

*Mohamed v. Off Lease Only, Inc.*,
     No. 15-cv-23352-Civ-COOKE/TORRES, 2018 U.S. Dist. LEXIS 5600 (S.D.
     Fla. Jan. 12, 2018).................................................................................................22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
     339 U.S. 306 (1950)...............................................................................................21

*Murtoff v. My Eye Dr. LLC*,
     No. 1:21-CV-02607, 2024 U.S. Dist. LEXIS 172280 (N.D. Ill. Sep. 24, 2024) ....................10

*Pella Corp. v. Saltzman*,
     606 F.3d 391 (7th Cir. 2010) ................................................................................18

*Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*,
     482 F.3d 372 (5th Cir. 2007) ................................................................................18

*Reid v. I.C. Sys.*,
     No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663 (D. Ariz. July
     27, 2018) .................................................................................................................21

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
     821 F.3d 992 (8th Cir. 2016) ................................................................................16

*In re Serzone Products Liab. Litig.*,
     231 F.R.D. 221 (S.D. W. Va. 2005)................................................................19, 20

*Sorsby v. TruGreen Ltd. Partnership*,
     No. 20-cv-2601, 2023 U.S. Dist. LEXIS 3345 (N.D. Ill. Jan. 9, 2023)..................10

*T.K. v. Bytedance Tech. Co.*,
     2022 WL 888943 (N.D. Ill. Mar. 25, 2022).....................................................12, 13

*In re TikTok, Inc., Consumer Priv. Litig.*,
     565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................................14, 15

*Whitten v. ARS Nat. Services, Inc.*,
     No. 00-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)..................................18

3338355.2

**TABLE OF AUTHORITIES**
(continued)

Page

*Wolfe v. TCC Wireless, LLC*,
    2018 WL 11215318 (N.D. Ill. Mar. 12, 2018)...........................................................................13

*Wright v. Nationstar Mortgage LLC*,
    2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...........................................................11, 16, 17

**Statutes**

28 U.S.C. § 1715(b) ................................................................................................................7

47 U.S.C. § 227(c) .................................................................................................................2

TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.* ...............................................1

**Court Rules**

Fed. R. Civ. P. 23(a)(2)........................................................................................................16

Fed. R. Civ. P. 23(a)(4)........................................................................................................17

Fed. R. Civ. P. 23(a)(l)........................................................................................................16

Fed. R. Civ. P. 23(e)(2)(A) ...............................................................................................8, 13

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................................8

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................8, 9, 13

Fed. R. Civ. P. 23(e)(2)(C)(iv)..............................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................................8, 15

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 21.312........................................................20

**Regulations**

47 C.F.R. § 64.1200(d)(3)......................................................................................................2

47 C.F.R § 64.1200(f) ...........................................................................................................6

3338355.2

## I.    <u>INTRODUCTION</u>

Nearly three years ago, Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland ("Plaintiffs")[1] filed this class action lawsuit against Defendant Sirius XM Radio Inc.[2] ("Defendant" or "SiriusXM" and collectively with Plaintiffs, the "Parties"), alleging that, since 2020, the company had made millions of illegal telemarketing calls in violation of the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. § 227, *et seq*.  Now, the Parties are pleased to report a Settlement Agreement requiring SiriusXM to pay $28,000,000 into a non-reversionary common fund, which will be used to send cash payments to settlement class members. In addition, SiriusXM must implement business practice changes to rectify the issues raised by Plaintiffs. The Settlement is fair, reasonable, and adequate.  Plaintiffs therefore move this Court for an Order preliminarily approving the settlement, conditionally certifying a Settlement Class, and authorizing notice to be sent to the class members.[3]

## II.    <u>BACKGROUND</u>

On November 29, 2022, Plaintiffs filed their Original Class Action Complaint ("Complaint") (ECF No. 1), alleging that SiriusXM violated the TCPA and related state statutory laws by making illegal telemarketing calls to individuals registered on the National Do-Not-Call Registry or SiriusXM's internal do-not-call list.  Plaintiffs alleged that SiriusXM placed

---

[1] Plaintiff Keith Sadauskas voluntarily dismissed his claims against SiriusXM (ECF No. 19).

[2] On September 6, 2024, defendant Sirius XM Radio Inc., a Delaware corporation, was converted into Sirius XM Radio LLC, a Delaware limited liability company, under Delaware law.  To avoid any misunderstanding regarding the scope of this action, both entities are referred to collectively in the settlement agreement as SiriusXM.

[3] The Parties' Class Action Settlement Agreement and Release is attached hereto as Exhibit 1 ("Settlement Agreement" or "SA"). The Declarations of Steven Weisbrot and Jarrett L. Ellzey are attached hereto as Exhibits 2 and 3, respectively. A Proposed Order is attached as Exhibit 4. Capitalized terms not defined herein have the meanings assigned to them in the Settlement Agreement.

improper telemarketing calls to Plaintiffs and other class members without the prior express written consent or permission in violation of the TCPA, 47 U.S.C. § 227(c), and related state statutory laws . *See* Complaint ¶¶ 105–110. Plaintiffs also allege that SiriusXM made telemarketing calls to Plaintiffs and certain class members after those people were listed on SiriusXM's Internal Do-Not-Call Registry in violation of 47 C.F.R. § 64.1200(d)(3). *See* Complaint ¶¶ 111–115.

At all times, SiriusXM denied any liability, maintained that a litigation class would not have been certified, believed that its calling practices were lawful and proper, and asserted multiple defenses, including "established business relationship" ("EBR"), prior consent, and reasonable procedures. *See* Answer and Affirmative Defenses of Defendant Sirius XM Radio LLC (ECF No. 91).

As the Court well knows, the parties engaged in extensive and hotly contested discovery and litigation. At the time of settlement, the Court had eleven motions pending before it, including Plaintiffs' Motion to Certify Class, and additional expert reports, declarations, and exhibits from the Parties collectively totaling over 4,000 pages. *See* Order (ECF No. 120) (holding eleven motions in abeyance).

Relying on the extensive evidence they had collected, the Parties participated in two full-day mediation sessions before mediator Randall W. Wulff, on September 19, 2024, and October 10, 2024. See, Exhibit 2, Declaration of Jarrett L. Ellzey ("Ellzey Decl.") ¶ 11. Despite considerable efforts, these mediations were unsuccessful. Ellzey Decl. ¶ 11. However, while returning to litigation in October 2024, the Parties continued to discuss resolution and participated in an all-day mediation session on July 15, 2025, before retired Northern District of Illinois Magistrate Judge Morton Denlow of JAMS. Ellzey Decl. ¶ 12. At the conclusion of the

third mediation session, the Parties entered into a Memorandum of Understanding. Ellzey Decl. ¶ 12.

The lengthy settlement discussions were conducted at arm's length and involved vigorous negotiations. Ellzey Decl. ¶¶ 11–13.  Following years of litigation, depositions, the production of documents, including call data, and document analysis, Plaintiffs and their Counsel believe the settlement, is fair, reasonable, and adequate, and in the best interests of the Class. Ellzey Decl. ¶ 14.

## III.   SETTLEMENT TERMS

### A.     SETTLEMENT CLASS

The Settlement Class consists of all persons in the United States:  (1) who received more than one telephone solicitation call in a 12-month period between April 27, 2019 and October 31, 2025 on their landline, wireless, cell or mobile telephone made by or on behalf of SiriusXM, (2) where such calls were received more than 31 days after registering with the National Do-Not-Call Registry, and (3) the person was not a self-paying SiriusXM subscriber at the time of the first call or before the start of the second call. SA § 2.22.

The Settlement Class also includes all persons in the United States: (1) who received more than one telephone solicitation call in a 12-month period between April 27, 2019 and October 31, 2025 on their landline, wireless, cell or mobile telephone made by or on behalf of SiriusXM, and (2) where such calls were received after the person asked to register the telephone number on SiriusXM's internal Do-Not-Call list. *Id.*

SiriusXM's employees, officers, directors, attorneys appearing in this action, and the judge assigned to this action, as well as their immediate family and staff, are exempted from the Settlement Class. *Id.*

### B.    NOTICE

The parties recommend that the Court appoint Angeion Group ("Angeion") to serve as the settlement administrator to manage the notice and claims process. SA § 2.21. Plaintiffs' counsel and Angeion have created a detailed notice plan that satisfies the requirements of due process and the federal rules. *Id.* § 10.

The Parties intend to work together to identify each member of the Settlement Class. *Id.* § 10.1.  Thereafter, the notice plan calls for notice by email to the extent email addresses are available, and where unavailable then by direct mail. *Id.* § 10.2. If any notice is undeliverable, Angeion will re-mail the notice, either to the email address or to the forwarding address provided by the Postal Service. *Id.* § 10.4.

Angeion will also establish a website (www.SXMTCPASettlement.com) for purposes of Class Members (i) reviewing important documents (e.g., this motion, the Settlement Agreement, the long form notice, etc.), (ii) confirming and/or updating their contact information, including an email address, to be used in connection with notifications, or (iii) submitting a claim for a cash distribution from the Escrow Account. *Id.* §§ 6.1, 6.2. In addition, Angeion will establish a toll-free number for answering questions from Class Members. *Id.* § 12.

### C.    SETTLEMENT BENEFITS

In exchange for a release (*see infra* Section III.D.), Plaintiffs and Settlement Class Members will be entitled to a pro rata distribution of a twenty-eight million dollar ($28,000,000.00) non-reversionary settlement fund, subject to a maximum individual cap of fifteen hundred dollars ($1,500.00), after deducting costs related to required notices, any administrative costs, Class Counsel's  attorneys' fees, any incentive awards, and any and all other costs and expenses related to this Settlement. SA §§ 3, 18.1. To receive a pro rata payment

4

from the Settlement Fund, Class Members must sign a form on the Website or submit a paper

form. *Id.* §§ 6.1, 6.3. Any amount remaining after distribution will, subject to Court approval, be

paid to the National Consumer Law Center as a cy pres award, not to be used in furtherance of

any litigation. *Id.* § 18.3    SiriusXM shall fund the Settlement on the later of:  (i) January 15,

2026, or (ii) ten (10) days following the Court's entry of the Preliminary Approval Order, after

which time the funds will accumulate interest in an escrow account until distributed to

Settlement Class Members, which interest will become part of the corpus used to pay Settlement

Class Members. *Id.* § 3.  SiriusXM's sole payment obligation under the Settlement is payment

of the twenty-eight million ($28,000,000.00) settlement fund in accordance with the foregoing

schedule.

SiriusXM must also implement certain business practices in connection with its outbound

telemarketing activities. *Id.* § 4.1. These are: (a) including in SiriusXM's welcome kit an

explanation of how SiriusXM communicates with consumers, notice that SiriusXM may call

them, a URL to manage contact preferences, and an 800 number for customer service; (b)

distributing up-to-date business compliance rules to its outbound telemarketing vendors; (c)

using reasonably available technologies to review on a regular basis audio recordings of

telemarketing calls placed by its vendors, that were not dispositioned as reflecting a Do-Not-Call

request; and (d) continuing to implement a two-way acceptance screen on touchscreen In-

Vehicle Infotainment devices that include SiriusXM radios with enabled 360L technology. *Id.*

SiriusXM agreed to additional specific practices with respect to individuals who purchase

or lease vehicles that include SiriusXM radios with enabled 360L technology and who had

registered on either the federal or state Do-Not-Call lists as outlined in Section 4.4 of the

Settlement Agreement. These include SiriusXM's agreement not to make outbound telephone

3338355.2

solicitations to them unless they accept certain terms and conditions of service or transact business with, or contact, SiriusXM through any means. Id. § 4.4(a), (b). SiriusXM will audit its agents for compliance with these provisions. *Id.* § 4.4(c). These business practice changes represent a further benefit to class members resulting from the Settlement Agreement.

The changed business practices to which SiriusXM agreed in the *Buchanan* Settlement (*see Buchanan v. Sirius XM Radio Inc*., No. 17-cv-728 (N. D. Tex.), at Dkt. 105-1), coupled with the additional changed business practices set forth in Section 4 of the instant Settlement Agreement, should satisfy the requirements of an established business relationship, as set forth in 47 C.F.R § 64.1200(f). *Id.* § 4.3.

D.    <u>**RELEASE**</u>

In exchange for these benefits, the Settlement Class will release any and all claims, known or unknown, against the Released Parties that either were asserted in this action or relate to any calls made in violation of any federal or state do-not-call statute or common law claim. *See* SA § 5.

E.    <u>**EXCLUSIONS AND OBJECTIONS**</u>

All class members who timely opt out of the settlement are excepted from the release. *See* SA § 11.  Requests to be excluded must be received no later than thirty (30) days prior to the final approval hearing.  *See id.* § 11.5.

Any class member who does not opt out of the class may object to the Settlement by mailing a written objection to the Settlement Administrator, Class Counsel, and SiriusXM's counsel by no later than thirty (30) days prior to the Final Approval Hearing.   SA § 13.3.  To be valid, each objection must satisfy the requirements set forth in Section 13.2 of the Settlement

3338355.2

Agreement. The parties will have the opportunity to file a response to any objections by no later than fourteen (14) days prior to the final approval hearing.

### F.    CLASS COUNSEL'S APPLICATION FOR FEES, COSTS, AND EXPENSES

Class Counsel shall apply to the Court for an award of attorneys' fees and costs, to be paid from the Settlement Fund. *See* SA § 16.  Plaintiffs intend to request a fee of one-third of the total value of the Settlement Fund. Ellzey Decl. ¶ 20.  This proposed amount will be displayed in all forms of class notice and Plaintiffs will post their motion for attorneys' fees and costs, and service awards for the Named Plaintiffs on the Settlement Website immediately after filing.

### G.    FINAL APPROVAL HEARING

The Parties recommend that the Court schedule the Final Approval Hearing at least one-hundred and thirty (130) days after the filing of this motion.  SA § 14.3 (agreeing to recommend the Final Approval Hearing occur at least 120 days "after the CAFA Notice is served"); 28 U.S.C. § 1715(b) (requiring CAFA notice be sent no later than 10 days after the preliminary approval motion is filed).

## IV.    ANALYSIS

### A.    STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. Specifically, Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B). Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

Rule 23(e)(2) lists the factors federal courts consider in determining whether proposed class action settlement is "fair, reasonable, and adequate." The first factor discussed below is

7

whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).     Next, the Court should satisfy itself that the settlement was reached in an appropriately adversarial manner by asking if "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  Thereafter, the Court should assess whether the settlement is fair to all class by examining whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  Finally, in light of the foregoing, the Court must evaluate whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  Rule 23(e)(2) accordingly states that a court may approve a proposed class action settlement only after "finding that it is fair, reasonable, and adequate after considering whether":

<blockquote>

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3) and

(D)     the proposal treats class members equitably relative to each other.

</blockquote>

Fed. R. Civ. P. 23(e)(2). As the Advisory Committee's note explains, subsections (A) and (B) focus on the "procedural" fairness of a settlement and (C) and (D) focus on the "substantive"

fairness of the settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments.

**B.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

Here, the Court should grant preliminary approval because it "will likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate" and certify the Settlement Class for purposes of entering judgment after notice and a final approval hearing. *See* Fed. R. Civ. P. 23(e).

**1.    THE SETTLEMENT PROVIDES SIGNIFICANT BENEFITS IN EXCHANGE FOR THE COMPROMISE OF STRONG CLAIMS.**

The Settlement provides substantial relief to the Class—a non-reversionary common fund of $28 million and practice changes designed to address the conduct at the heart of this litigation— and thereby satisfies all the requirements of Fed. R. Civ. P. 23(e)(2)(C). The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of SiriusXM's available defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement. *Id.*

*i.    The Settlement Mitigates Risks, Expenses, and Delays*

The Settlement secures a cash payment of $28 million and practice changes, even in the face of the uncertainties of litigation. Compromise in exchange for certain and timely benefits is an unquestionably reasonable outcome. Settlement is appropriate where plaintiffs face significant hurdles to success. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("*AT&T*").

Victory in this case was far from certain. SiriusXM has raised numerous defenses, including EBR, prior consent, and reasonable procedures. *See Conner v. Fox Rehab. Servs., P.C.,* Nos. 23-1550, 23-1684, 2025 U.S. App. LEXIS 1578, at *27 (3d Cir. Jan. 24, 2025)

3338355.2

(affirming denial of class certification in TCPA matter because questions of whether the class members consented to receive faxes would have required thousands of mini-trials).  SiriusXM sought dismissal of Plaintiffs' claims (ECF No. 6), disputed discovery issues and opposed Plaintiffs' request for class certification.  ECF No. 78. If the Court denied class certification, the case would end from a class standpoint, and the Class Members would receive nothing. *See e.g., Murtoff v. My Eye Dr. LLC*, No. 1:21-CV-02607, 2024 U.S. Dist. LEXIS 172280, at *22 (N.D. Ill. Sep. 24, 2024) (denying class certification because establishing whether the class member had a business relationship with the healthcare providers would have required individual examination of patient records); *Sorsby v. TruGreen Ltd. Partnership*, No. 20-cv-2601, 2023 U.S. Dist. LEXIS 3345, at *16 (N.D. Ill. Jan. 9, 2023) (striking class allegations because certification would require individualized analysis of call transcripts to determine if the customer had terminated the EBR).  Even if a class were certified and upheld on appeal, the Class would face the risk, expense, and delay of trial and a potentially lengthy appellate process. Because of these costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing litigation.

### ii.    The Settlement Proposes a Fair and Straightforward Claims Process

The Settlement framework provides *pro rata* monetary compensation to the Class Members through a straightforward claims process designed to be convenient and cost effective. *See* SA § 6; *see also* Ellzey Decl. ¶ 26.  As discussed above, the Settlement Agreement calls for the Class Members to receive notice through a number of different methods, ensuring the best practicable notice under the circumstances, this will include via either email, direct mail, or via a social media campaign.  Thereafter, every class member will have more than adequate time to file for a claim, opt-out of the settlement, or object to the settlement.  The claim forms will be

easily available via the Website or in paper form. *See* Weisbrot Decl., ¶¶ 22, 32. Angeion will review claims for completeness and eligibility, making final decisions to disallow claims using a review process approved by both parties. *Id.*, ¶ 37; SA § 6.5.

### iii.    *Plaintiffs Intend to Request Reasonable Service Awards*

Service awards are appropriate to compensate Plaintiffs for their time and as an inducement to individuals to serve as named plaintiffs. *Wright v. Nationstar Mortgage LLC,* 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016). In recognition of the services provided by Plaintiffs on behalf of the class, the Settlement Agreement permits Plaintiffs to seek a reasonable Service Award. SA § 3. Plaintiffs intend to request awards of $10,000.00 per Plaintiff, for a maximum of $30,000.00 total. Ellzey Decl. ¶ 17. The Service Award will compensate them for their efforts, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Class Counsel, producing documents, attending full day depositions, addressing follow up discovery requests, and answering Class Counsel's many questions. Ellzey Decl. ¶ 16. The proposed service awards are therefore modest relative to the size of the Settlement Fund (in total just 0.1% of the full Settlement Fund) and are justified by Plaintiffs' extensive efforts over the past three years. Particularly when compared to other comparable incentive awards, Plaintiffs' request is fair and reasonable under these circumstances. *See Briggs v. PNC Financial Services Group,* No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *5 (N.D. Ill. Nov. 29, 2016) ($12,500 service award for each named plaintiff); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-cv-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (awarding a $25,000 service fee for a single plaintiff).

####    iv.    *Counsel Will Seek Reasonable Attorneys' Fees and Costs*

Plaintiffs' counsel undertook this action on contingency, and advanced thousands of dollars in costs, including expert fees.  Therefore, Class Counsel intends to seek an award of their fees for work performed on behalf of Plaintiffs and the Class totaling not more than one-third of the total value of the Settlement Fund, and reimbursement for their out-of-pocket expert, mediation, and other costs not to exceed $300,000. Ellzey Decl. ¶¶ 19, 20. This amount will be paid out of the Settlement Fund and after payment of any class administration and notice costs and expenses. SA §§ 16.1, 16.3; Ellzey Decl. ¶ 19. The parties discussed attorneys' fees and costs separately after the settlement was negotiated on behalf of the class, and they did not agree that counsel would receive any specific percentage. *Id.* § 16.2; Ellzey Decl. ¶ 18. The reasonableness of the requested fee may be considered in light of the fund obtained on behalf of the Class.

A percentage-of-the-fund method of evaluating the fee award is appropriate here. "Courts award attorneys' fees as a percentage of the total fund made available to the Class when counsel's efforts result in the creation of a common fund, and therefore, is entitled to a reasonable attorney's fee from the fund as a whole." *Bartlett v. City of Chicago*, 2017 WL 11885188, at *4 (N.D. Ill. Jan. 31, 2017). "The percentage method is easy to calculate, does not involve the court in fee audits, and does not create incentives to waste time." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 199 (N.D. Ill. 2018) (quoting Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements*, 1 J. EMPIRICAL LEGAL STUDIES 27, 31–32 (Mar. 2004)); s*ee also T.K. v. Bytedance Tech. Co.,* 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) (determining attorneys' fees using the percentage method and noting that the "percentage method is employed by the vast majority of courts in the Seventh Circuit.").

12

Moreover, the percentage that proposed Class Counsel may request—up to one-third of the Settlement Fund—is reasonable. In evaluating the reasonableness of a request for attorney's fees, Seventh Circuit courts reference the "*net* value of a settlement as a reference for awarding fees, not counting administrative costs and incentive awards." *Leung,* 326 F.R.D. at 200. "Courts routinely hold that one-third of a common fund is an appropriate attorneys' fee award in class action settlements[.]" *Wolfe v. TCC Wireless, LLC*, 2018 WL 11215318, at *3 (N.D. Ill. Mar. 12, 2018) (collecting cases). Thus the anticipated percentage, as well as the methodology by which it is calculated, aligns with practice in the Seventh Circuit.

Further, the anticipated fee request is reasonable in light of the result obtained by Class Counsel, the complexity of the issues raised in this action, and the duration of the litigation. Ellzey Decl. ¶¶ 18, 19. More specifically, Class Counsel engaged in hard-fought, contentious, and high-quality litigation over three years, and resolved the case only after three mediation sessions before two separate mediators. Ellzey Decl. ¶ 11, 12. Ultimately, Counsel obtained $28,000,000 for the Class—an excellent result for the class by any measure.

### v. *No other agreements require disclosure under Rule 23(e)(3)*

The Parties have no other agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); see Fed. R. Civ. P. 23(e)(2)(C)(iv). Accordingly, all the Rule 23(e)(2)(C) sub-factors support Settlement.

### 2. PLAINTIFFS AND CLASS COUNSEL ZEALOUSLY REPRESENT THE CLASS.

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for years. *See* Fed. R. Civ. P. 23(e)(2)(A); *see also* Advisory Committee's note to 2018 amendment (addressing "the nature and amount of discovery" undertaken in the case). "The

3338355.2

adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation." *Bytedance*, 2022 WL 888943, at *4 ("Plaintiffs present unrefuted evidence of their counsel's expertise in litigating consumer class actions, many of which involve privacy rights"); *AT&T*, 270 F.R.D. at 344 (stating that "[class] counsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement[, and] have experience pursuing consumer-class-action cases").

As their accompanying resumés show, Class Counsel is highly experienced in prosecuting class actions, and they are uniquely qualified in that they previously prosecuted *Buchanan v. Sirius XM Radio Inc*., No. 17-cv-728 (N. D. Tex.), filed in 2017, in the District Court of the Northern District of Texas, which was a prior TCPA case against SiriusXM.  That experience was essential here, as Class Counsel leveraged both their general experience in complex class actions—and their specific experience litigating against SiriusXM—at every stage of this litigation.  To prosecute the Class claims, Class Counsel engaged in thorough offensive and defensive discovery, and extensive motions practice. Ellzey Decl. ¶ 15.  This case settled only after Class Counsel vigorously prosecuted this matter to the edge of class certification.

### 3.    THE SETTLEMENT RESULTED FROM INFORMED, ARM'S-LENGTH NEGOTIATIONS.

A "settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:50 (6th ed. June 2025 update). The proposed Settlement Agreement here arises out of lengthy, well informed, and non-collusive negotiations facilitated by two nationally recognized mediators, Randall Wulff, and retired Magistrate Judge Morton Denlow. Ellzey Decl. ¶¶ 11, 12. The mediation took place over three separate sessions,

14

3338355.2

and settlement negotiations continued even after formal mediation concluded. Ellzey Decl. ¶¶ 11, 12. A settlement process facilitated by a neutral mediator is a reliable indicator that the negotiated settlement is reasonable. *See In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1088 (N.D. Ill. 2021). Mediator assistance was an integral part of the negotiations here. In addition, the parties spent years conducting extensive discovery, thereby allowing them to fairly assess the case. *Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150, n.6 (N.D. Ill. 1997) ("The settlement must be the result of arm's length negotiations, and plaintiffs' counsel must be experienced and have engaged in adequate discovery necessary to represent the class effectively").

This procedurally fair process for developing the Settlement Agreement bears all the hallmarks of arms-length negotiation informed by thorough discovery, which weighs strongly in favor of granting preliminary approval.

### 4. THE PROPOSED SETTLEMENT TREATS ALL CLASS MEMBERS EQUITABLY RELATIVE TO ONE ANOTHER.

The proposed Settlement fairly and reasonably allocates benefits among Class Members without any unwarranted preferential treatment of certain segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). In fact, all participating Settlement Class members will receive the same *pro rata* share of the Settlement Fund. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (pro rata plan of allocation "ha[d] an obvious rational basis" and "the benefit of simplicity"). Because all Settlement Class Members are treated exactly the same, the proposed Settlement satisfies this standard as well.

### C. CLASS CERTIFICATION IS APPROPRIATE

The certification requirements of Rule 23 apply even when certification is solely for settlement. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 597 (1997). At this stage, the

15

Court's inquiry focuses on Rule 23(a) and (b)(3). *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d at 1084. As fully briefed in Plaintiffs' Motion for Class Certification (ECF No. 41), this case is appropriate for certification.

### 1.    NUMEROSITY

Because the Settlement Class here consisted of millions of people at the time Plaintiffs filed for class certification (*see* ECF No. 41, at 11)—and will be subject to confirmatory discovery to determine the precise number of class members through October 31, 2025—joinder of them all is impracticable. Ellzey Decl. ¶ 23; *see* Fed. R. Civ. P. 23(a)(l); *Wright*, 2016 WL 4505169 (recognizing that "40 members generally suffice"). In addition, the members of the class will be ascertained in confirmatory discovery from SiriusXM's call records. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016) (noting that such "logs showing the numbers that received each [call] are objective criteria that make the recipient clearly ascertainable"); Ellzey Decl. ¶ 22. Accordingly, the numerosity requirement is satisfied.

### 2.    COMMONALITY

To establish commonality must show that "questions of law or fact [are] common to the class." Fed. R. Civ. P. 23(a)(2).  A "common nucleus of operative fact" will typically be sufficient to meet this standard. *AT&T*, 270 F.R.D. at 341. Because, by definition, calling programs are carried out on a mass basis, a proposed TCPA class typically contains common issues of law and fact. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (collecting cases); *See also Wright*, 2016 WL 4505169, at *5 (finding commonality factor met for settlement approval purposes in TCPA case). Determination of these common issues can resolve the material allegations of TCPA liability for the Settlement Class in one stroke. The commonality requirement is, thus, satisfied here.

16

### 3.    TYPICALITY

Likewise, Plaintiffs' claims are coextensive with those of the absent class members, such that the action satisfies the Rule 23(a)(3) typicality requirement. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Wright*, 2016 WL 4505169, at *6.   Here, Plaintiffs' were subjected to the same SiriusXM calling practices, suffered from the same injuries, and will benefit from the relief provided by the Settlement in the same way as the absent Settlement Class members.   Thus, Plaintiffs' claims are typical of the class as a whole.

### 4.    ADEQUACY

Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy of representation requires two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *AT&T*, 270 F.R.D. at 343 (internal quotation marks omitted). In this case, Plaintiffs and the Class Counsel clearly satisfy both prongs of the "adequacy" test.

#### i.    *Plaintiffs Are Adequate Representatives*

A "representative plaintiff need not immerse himself in the case," but must have enough commitment that the representative is not a "fictive concept." *AT&T*, 270 F.R.D. at 343. In addition, the representative plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. Here, as shown, Plaintiffs are members of the proposed Class and have suffered the identical injury suffered by each class member. As made clear by their sworn declarations, Plaintiffs have no conflicting interests with class members

17

either. *See* ECF No. 42-17, 42-18, 42-19. In fact, by already filing, devoting hours to participating in discovery, and vigorously pursuing this case, Plaintiffs have demonstrated a desire and ability to protect Class members' interests.  *See id.*

### ii.    *Class Counsel is Adequate*

Plaintiffs' counsel, who are from three geographically diverse firms, regularly (and successfully) engaged in major class action litigation, and they possess extensive experience in consumer class action lawsuits, including numerous TCPA actions. *See* Ellzey Decl. ¶¶ 27–49; Barney Decl. (ECF No. 42-23) ¶¶ 1-10; Hutchinson Decl. (ECF No. 42) ¶¶ 31-54. Other courts have found each representative firm adequate as class counsel in other class action lawsuits. *See* Ellzey Decl. ¶¶ 44-46. "The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again." *Whitten v. ARS Nat. Services*, *Inc.*, No. 00-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). Likewise, Plaintiffs' Counsel has already devoted hundreds of hours and tens of thousands of dollars to this litigation, all on behalf of the absent class members, showing their dedication to this action.  Ellzey Decl. ¶¶ 27–49; Barney Decl. (ECF No. 42-23) ¶¶ 1-10; Hutchinson Decl. (ECF No. 42) ¶¶ 31-54.

### 5.    RULE 23(B)(3) REQUIREMENTS

In addition to satisfying the Rule 23(a) requirements, for settlement purposes the proposed Class must satisfy the additional requirements in Rule 23(b).  *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*, 482 F.3d 372, 382-383 (5th Cir. 2007).  Rule 23(b)(3), which pertains to a class seeking monetary relief is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class

18

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are satisfied here.

> ### i.    *Common Questions of Law or Fact Predominate*

To satisfy 23(b)(3)'s requirement of predominance, Plaintiffs must show that "the central questions in the litigation are the same for all class members." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Plaintiffs satisfy this requirement because questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Predominance is a concept focused on "the legal or factual questions that qualify each class member's case as a genuine controversy" that "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *AT&T*, 270 F.R.D. at 345.

TCPA claims, and related state statutory claims, by their nature, involve large numbers of plaintiffs who received similar telemarketing calls using standard scripts, all from a single defendant, and each person is harmed in much the same way. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (discussing how "[c]lass certification is normal in litigation under [the TCPA]"). These are the exactly the type of cases that "the Advisory Committee sought to cover[,] in which a class action would achieve economies of time, effort, and expenses, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. The facts in the instant matter closely follows the standard TCPA pattern, where all class members were called, more than 31 days after registering on the National Do-Not-Call Registry and/or requesting to be added to SiriusXM's Internal Do-Not-Call Registry, where the SiriusXM agents

were told to use a script when talking to the call recipients, and all the class members were equally disrupted by the telemarketing calls.  *See* Ellzey Decl.

### ii.     Class Treatment is Superior

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Serzone Products Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W. Va. 2005) (quoting *Amchem*, 521 U.S. at 615). Settling this case as a class action will achieve significant economies of time, effort and expense for the Class and the Court. *See Serzone*, 231 F.R.D. at 240. By contrast, litigating the claims in individual suits would consume many more judicial resources. *Id.*  As such, superiority is met here.

For all of the reasons detailed above, the Court should certify the Settlement Class.

### D.     APPOINTMENT OF CLASS COUNSEL

Rule 23(g) authorizes this Court to appoint class counsel to represent the Settlement Class. *See* Fed. R. Civ. P. 23(g). Plaintiffs, on behalf of the putative class, seeks the appointment of Jarrett Ellzey of Ellzey & Associates, PLLC, Daniel Hutchinson or Lieff Cabraser Heimann & Bernstein, LLP, and Mason Barney of Siri & Glimstad LLP, as Class Counsel.  As already discussed, here and in Plaintiffs' counsel's respective declarations in support of Plaintiffs' motion for class certification (*see* ECF No. 42, 42-23, 42-24), Class Counsel have undertaken an enormous amount of work, effort, and expense in this litigation and demonstrated their willingness to devote whatever resources were necessary to see it through to a successful outcome. *See* Ellzey Decl. ¶¶ 33–34.  Using their substantial experience in class action litigation, Class Counsel guided this matter to a very appropriate settlement.  As such, Class Counsel have

already more than demonstrated their ability to represent the interests of the Settlement Class. *See* supra Part IV.C.(4)(ii). As such, they should be appointed as Settlement Class Counsel under Rule 23(g)(3) and confirmed under 23(g)(1) upon final approval.

## V.    THE PROPOSED NOTICE PROCEDURE SHOULD BE APPROVED

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also* Weisbrot Decl. ¶¶ 13-14. Rule 23 permits notice by "U.S. Mail, electronic mail, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B). Here the proposed notice program will utilize all of these options to provide the best notice practicable. Weisbrot Decl. ¶¶ 15-31.

The Parties created this proposed notice program, including both the content and the distribution plan, with Angeion, an experienced firm specializing in comprehensive noticed settlement management in complex class action litigation. Weisbrot Decl. ¶¶ 9-12.  Pursuant to the settlement agreement, the parties will provide Angeion a class member list with the available relevant pieces of contact information for each class member (e.g., phone numbers, email addresses, and physical addresses).  Each email notice will contain a link to the case-specific website, SXMTCPASettlement.com, where online claims filing will be available.  *See* Weisbrot Decl. ¶¶ 32-34. For all Class Members that SiriusXM does not have email addresses for, and for those whose initial notice emails bounce, Angeion will send a double-sided postcard notice via

21

First-Class Mail, after performing usual and customary actions to ensure the accuracy of the address. Weisbrot Decl. ¶¶ 22-23.  Numerous courts around the country have approved similar notice programs that rely primarily on email notice.  *See, e.g., Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *7 (N.D. Cal. Mar. 26, 2019) (noting that the court previously approved a notice plan in a TCPA class action where notice would be sent by email to "email addresses for the … class members"); *Reid v. I.C. Sys*., No. CV-12-02661-PHX-ROS, 2018 U.S. Dist. LEXIS 125663, at *9 n.2 (D. Ariz. July 27, 2018) (approving a notice plan in a TCPA class action that included "the establishment of a website and toll-free number, and the sending of targeted emails."); *Mohamed v. Off Lease Only, Inc*., No. 15-cv-23352-Civ-COOKE/TORRES, 2018 U.S. Dist. LEXIS 5600, at *3 (S.D. Fla. Jan. 12, 2018) (approving TCPA action notice plan where notice would be sent via email for all those class members with email addresses, and physical mailings would only be used for those class members without email addresses or whose emails bounced).

The Notices, which are attached to the Settlement Agreement, are written in plain English (with Spanish translation) and provide sufficient information for the reader to understand that it is a class action notice, that they are a member of the class, what their options are, and how to exercise those options, along with the important dates relating to the settlement approval process. Weisbrot Decl. ¶¶ 15-37.  The notice plan provides for a toll-free phone number used to assist class members in answering questions they may have about the settlement and the process. Weisbrot Decl. ¶ 34.

The form and content of the Notices, together with the manner of dissemination set forth above is reasonably calculated to reach all Class Members. Weisbrot Decl. It is the "best notice practicable" under the circumstances and more than satisfies the requirements of Due Process

and Rule 23. Weisbrot Decl. ¶¶ 13-37. Therefore, the Court should approve the Notice Program and the form and content of the Notices attached.

## VI.    **THE COURT SHOULD SCHEDULE THE FINAL APPROVAL HEARING**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement and argue in support of Final Approval, and any Class Member who objects will also have the opportunity to argue against the settlement. Pursuant to Section 14.4 of the Settlement Agreement, Plaintiffs and Class Counsel request the Court schedule the Final Approval Hearing for a date the week of March 31, 2026, if convenient for the Court. Plaintiffs and Class Counsel are submitting a proposed Preliminary Approval Order containing a suggested agreed upon schedule, subject to the Court's approval, leading to the Final Approval hearing.

## VII.    **CONCLUSION & PRAYER**

For the reasons set forth above, the proposed Settlement, reached between experienced counsel after receipt and evaluation of substantial discovery, is within the range of reasonableness and readily meets the standards for preliminary approval. Accordingly, Plaintiffs respectfully request this Honorable Court to enter an order substantially in the form attached as Exhibit 4, which:

(i)     preliminarily approves the Settlement and provisionally certifies the Settlement Class;

(ii)    appoints Angeion Group as the Settlement Administrator;

(iii)   approves the Notice Program and directs that Notice be distributed to the Settlement Class Members in accordance with that Program;

(iv)    approves the Claim Form and directs the Settlement Administrator to administer the Notice Program and Settlement in accordance with the provisions of the Settlement Agreement;

3338355.2

23

(v)      appoints Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland as Class Representatives;

(vi)     appoints Jarrett Ellzey of Ellzey & Associates, PLLC, Daniel Hutchinson of Lieff Cabraser Heimann & Bernstein, LLP, and Mason Barney of Siri & Glimstad LLP, as Class Counsel; and

(vii)    schedules a Final Approval Hearing to consider the entry of the Final Approval Order and Judgment and request for Attorneys' Fees, Expenses and Service Awards, to be held approximately 130 days after CAFA notice is distributed.

Along with the foregoing Plaintiffs ask the Court to award all such other relief as it deems just and proper.

3338355.2

Dated: October 3, 2025              Respectfully submitted,

*/s/ Daniel M. Hutchinson*

Daniel M. Hutchinson
Jahi L. Liburd
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com
Email: jliburd@lchb.com

Mason A. Barney
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 532-1091
Email: mbarney@sirillp.com

Jarrett L. Ellzey
ELLZEY & ASSOCIATES, PLLC
4200 Montrose Blvd., Ste.
Houston, TX 77006
Telephone: (888) 350-3931
Email: Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Daniel M. Hutchinson, certify that on October 3, 2025, I caused the foregoing to be filed with the Clerk of the Court and served upon all parties of record via the CM/ECF system. Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.


*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson

3338355.2

## **CERTIFICATE OF CONFERENCE**

I certify that counsel for Plaintiffs and the Proposed Class conferred extensively with counsel for Defendant throughout the process of drafting this motion and all corresponding materials, as well as the settlement agreement upon which this settlement is based.  Defendant is unopposed to the relief sought herein.


*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson

3338355.2