**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 2:22-cv-2261-CSB-EIL |
| v. | |
| SIRIUS XM RADIO INC., | |
| Defendant. | |

**DECLARATION OF COURT-APPOINTED CLASS COUNSEL IN SUPPORT OF
PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND
INCENTIVE AWARDS**

Mason A. Barney, Carl R. Draper, Jarrett L. Ellzey, Daniel M. Hutchinson, declare and state as follows:

1.      We are Court-appointed Class Counsel in the above-captioned case. We respectfully submit this declaration in support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Incentive Awards.

2.      I, Mason A. Barney, am a partner in the law firm of Siri & Glimstad LLP ("S&G"), co-counsel of record for Plaintiffs and the Class in this matter.  I have been one of the attorneys primarily responsible for the prosecution of Plaintiffs' claims on behalf of the Class. I am admitted to practice before this Court and am a member in good standing of the bar of the State of New York and the bars of numerous federal district and appellate courts.  My relevant experience and firm resume were previously submitted to the Court in connection with class certification at Dkt. 42-23.  I have personal knowledge of the facts stated in this declaration and,

1

if called as a witness, I could and would testify competently to them.

    3.    I, Carl R. Draper, am a partner in of the law firm of Feldman Wasser ("FW"), co-counsel of record for Plaintiffs and the Class in this matter.  I have assisted the prosecution of Plaintiffs' claims on behalf of the Class. I am an attorney licensed to practice law in the State of Illinois since May 1, 1981, and am licensed in the United States District Court for the Central and Southern Districts of Illinois, as well as the Seventh Circuit Court of Appeals.  My relevant experience and firm resume were previously submitted to the Court in connection with preliminary settlement approval at Dkt. 124-1.  I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

    4.    I, Jarrett L. Ellzey, am a partner in the law firms of Ellzey & Associates, PLLC, and Ellzey Kherkher Sanford Montgomery, LLP ("EKSM"), co-counsel of record for Plaintiffs and the Class in this matter.  I have been one of the attorneys primarily responsible for the prosecution of Plaintiffs' claims on behalf of the Class. I am admitted to practice before this Court and am a member in good standing of the bar of the State of Texas and the bars of numerous federal district and appellate courts.  My relevant experience was previously submitted to the Court in connection with class certification at Dkt. 42-24.  I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

    5.    I, Daniel M. Hutchinson, am a partner in of the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), co-counsel of record for Plaintiffs and the Class in this matter.  I have been one of the attorneys primarily responsible for the prosecution of Plaintiffs' claims on behalf of the Class. I am admitted to practice before this Court and am a member in good standing of the bar of the State of California; the United States District Court for the

Central, Northern, and Southern Districts of California; the United States District Court for the

Central and Northern Districts of Illinois;  the United States District Court for the Eastern

District of Wisconsin; the United States Court of International Trade; and the U.S. Courts of

Appeals for the First, Second, Fourth, Seventh, Ninth, and Eleventh Circuits.  My relevant

experience and firm resume were previously submitted to the Court in connection with class

certification at Dkts. 42 & 42-25.  I have personal knowledge of the facts stated in this

declaration and, if called as a witness, I could and would testify competently to them.

## <u>INTRODUCTION</u>

6.      The Settlement achieved by Class Counsel provides tremendous benefits for the

Settlement Class.

7.      The Settlement required Sirius XM to pay $28,000,000 into a non-reversionary

common fund, which will be used to send *pro rata* cash payments to settlement class members.

The Settlement Fund has already been paid into an escrow account, which will continue to

accrue interest during the approval process and through the date of distribution.

8.      The Settlement provides non-monetary benefits.  Sirius XM must implement

comprehensive business practice changes to rectify the issues raised by Plaintiffs.

9.      The Settlement also provides closure by resolving—after years of sharply-

contested proceedings involving discovery disputes, scores of contested motions, and class

certification proceedings—an important case affecting millions of consumers. The Settlement

Agreement, like the underlying litigation, was hard fought. The Settlement is eminently fair,

adequate, and reasonable.

10.     This Declaration provides an overview of the work performed by Class Counsel

to investigate and understand the claims and defenses in this case, to evaluate them, to prosecute

them in the face of vigorous opposition from Sirius XM, and to ultimately resolve them by

3430671.1

obtaining a common Settlement Fund and non-monetary relief for the Settlement Class.

11.    The Declaration also describes the essential work performed by Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland in achieving the Settlement results obtained here.

12.    In light of the $28,000,000 non-reversionary Settlement Fund and other non-monetary relief, we respectfully submit that the Settlement Agreement merits this Court's approval; that Class Counsel should receive a percentage-of-the-fund attorneys' fee award, and reimbursement of their out-of-pocket costs in prosecuting this action; and that Plaintiffs should receive service awards for their essential work on behalf of the Class.

## OVERVIEW OF CLASS COUNSEL'S WORK PERFORMED IN THIS ACTION

13.    This litigation has been difficult and contentious.  Class Counsel has engaged in a comprehensive litigation strategy to pursue class action claims against Defendant under the Telephone Consumer Protection Act ("TCPA").

14.    Class Counsel's Pre-filing Investigation.  Starting in June 2022, S&G began to receive consumer complaints about ongoing TCPA violations by Sirius XM.  That same month, S&G approached LCHB and EKSM regarding potential TCPA claims against Sirius XM.

15.    Based on our extensive experience litigating and settling similar complex TCPA class actions—both together and separately in TCPA actions that collectively obtained more the $450 million for class members[1]—we believed that LCHB, S&G, and EKSM could collectively provide necessary expertise and resources to benefit Plaintiffs and the potential class.

_____

[1] A fuller history of Class Counsel's track record litigating TCPA and other complex class actions is set forth in their respective declarations and firm resumes at Dkts. 42, 42-23, 42-24, 42-25, & 124-1.

3430671.1

16.     Together, we thoroughly researched Sirius XM's practices and the potential claims of dozens of potential plaintiffs and class members who had contacted Class Counsel. Among other things, we conducted and independent investigation and researched all relevant TCPA case law and regulations.

17.     Over the course of our three-month investigation, we interviewed potential plaintiffs and class members to understand and confirm the facts that supported their potential claims.  We also obtained and reviewed 454 consumer complaints submitted to the Federal Trade Commission ("FTC") complaining about Sirius XM's telemarketing calls.  *See* Dkt. 1, ¶ 2, 44-45.  Our three-month investigation confirmed that Sirius XM's calling practices were widespread and that consumers never received customer agreements containing required disclosures.

18.     We also performed extensive legal research regarding the TCPA and FCC regulations interpreting the TCPA.  This information was critical to our understanding of the nature of the problem, the scope of potential damages and remedies, and the potential risks and benefits of litigation.

19.     Prior to initiating this action, we reached out to counsel for Sirius XM on September 8, 2022.  With that correspondence, we included a completed 27-page draft of Plaintiffs' class action complaint.  *See* Dkt. 9-2.

20.     On September 20, 2022, Sirius XM's counsel acknowledged receipt of our correspondence and the draft class action complaint, and requested Plaintiffs' telephone numbers so that Sirius XM could investigate their allegations.  We provided the telephone numbers on the same day. *Id*.

21.     We followed up again, requesting a response, but Sirius XM never responded. *Id*.

22.     In late September 2022, we reached out to FW about joining us as co-counsel.

After discussing and considering the matter over the course of the next two months, FW joined this matter as additional Plaintiffs' counsel on November 14, 2022.

23.    <u>Plaintiffs' Class Action Complaint, and Sirius XM's Motion to Strike Class Allegations and Motion to Dismiss</u>.  On November 29, 2022, Plaintiffs filed their Class Action Complaint in this Court, which contained substantially the same allegations that Plaintiffs voluntarily provided to Sirius XM on September 8, 2022.  *Compare* Dkt. 1 *with* Dkt. 9-2. Specifically, the Class Action Complaint alleged that Sirius XM violated the TCPA by placing telemarketing calls to persons who have listed their telephone numbers on the National Do-Not-Call Registry (TCPA Count I), and by failing to record and honor requests from individuals who ask Sirius XM to stop calling them (TCPA Count II). CAC, ¶¶ 1-144. The Class Action Complaint also alleges that Sirius XM's unsolicited telemarketing calls violate the Illinois Telephone Solicitations Act (Count III), the North Carolina Telemarketing Law (Count IV and V), and the Washington Do Not Call Statute (Count VI).

24.    Sirius XM responded aggressively with a Motion to Strike Class Allegations, and Motion to Dismiss.  Sirius XM thereby requested that the Court (1) strike Plaintiffs' national class allegations, (2) find that Class Counsel were inadequate, and (3) dismiss Plaintiff Campbell's subclass claim under Illinois law.  Dkts. 6 & 7.

25.    Class Counsel briefed and submitted a thorough opposition.  Dkt. 9.

26.    The Court (1) denied Sirius XM's motion to strike class allegations, (2) denied Sirius XM's request to find that Class Counsel were inadequate, (3) dismissed Plaintiff Campbell's subclass claim under Illinois law, and (4) referred this matter to the magistrate judge for further proceedings.  Dkt. 16.

27.    <u>The Class Discovery</u>.  Discovery in this case has been extensive by any measure.

6

The Parties produce data and documents, litigated discovery disputes, retained experts to analyze call data, and took and defended depositions.  That discovery was governed by extensive, negotiated protocols—including an Agreed Confidentiality Order that the Court reviewed and ordered—which among other things, controlled production formats, metadata, claw-back procedures, and the mechanics of call data productions.  *See* Dkt. 18.  Class Counsel also met and conferred with Sirius XM extensively on all facets of discovery. In sum, the Parties exerted significant effort in discovery, emblematic of the deeply contested nature of this case.

28.    On July 19, 2023, Class Counsel initiated class discovery by serving a comprehensive set of 85 document requests.  Dkt. 20-2, at 4-34.

29.    Over the next six months, Class Counsel engaged in lengthy and extended meet and confers with Sirius XM.  The parties participated in Zoom teleconferences and exchanged detailed letters setting forth their respective positions with supporting case law. *See, e.g.*, Dkt. 20-2, at 35-125.  Sirius XM ultimately declined to produce documents and data that Class Counsel maintained were relevant and material to Plaintiffs' claims.

30.    On January 11, 2024, Class Counsel therefore filed Plaintiffs' Motion to Compel Defendant to Produce Relevant Discovery. Dkt. 20.  After a full month of additional meet and confers, Sirius XM ultimately relented and agreed to produce its outbound telemarketing call logs and internal do-not-call list.  Dkt. 24 (Consent Order).

31.    Sirius XM made its call data production on February 28, 2024, and supplemented that production with additional fields of call data on May 10, 2024. Class Counsel served a second set of document requests on February 15, 2024, Plaintiffs' First Set of Interrogatories on March 18, 2024, and Plaintiffs' Second Set of Interrogatories on May 16, 2024.  Class Counsel fought to receive comprehensive responses to all discovery requests.

3430671.1

32.     All discovery was hard-fought and hotly contested.  Even seemingly routine matters such as the production of privilege logs were contentious.  On January 31, 2024, Sirius XM produced detailed privilege logs detailing relevant and responsive documents and information that it withheld based on the work-product doctrine.  Class Counsel disputed Sirius XM's privilege contentions in highly contested meet and confers, which ultimately resulted in Sirius XM producing each of the documents on its privilege logs.

33.     The resulting document and data production from Sirius XM was massive.  In addition to producing approximately 18,721 pages of documents, Sirius XM produced more than 20 terabytes of call data, call logs, and other electronic records.  Class Counsel undertook the task of reviewing and analyzing the extensive document and data production.

34.     Class Counsel retained a testifying expert and two consulting experts to analyze Sirius XM's call data production.  For months, Class Counsel worked hand-in-hand with the experts on a regular basis to analyze and understand Sirius XM's call data.

35.     On March 5, 2024, Class Counsel took the deposition of Jakop Eskinazi, Defendant's senior director of compliance and outbound strategy. On March 28, 2024, Class Counsel issued deposition notices for eight employees of Defendant listed in Defendant's Rule 26(a) Initial Disclosures.  Class Counsel defended the deposition of Plaintiffs' expert witness on January 24, 2025.

36.     Defendant's Rule 26(a) initial disclosures identified 26 companies that provide outbound calling, recordkeeping, mailing, and compliance services for Defendant. Defendant produced Master Services Agreements, certain contracts, and/or Quarterly Compliance Certificates for approximately 20 of these companies, but maintained that other documents and correspondence with these companies is not within Defendant's possession, custody, or control.

8

3430671.1

On May 9, 2024, Class Counsel therefore served subpoenas on these 26 companies.  Class

Counsel engaged in ongoing meet and confers with these third parties to obtain relevant

documents and testimony.

37.    On July 26, 2023, Class Counsel also served freedom-of-information requests on

relevant federal and state authorities, including the FTC, the New York State Department of

State, the New York Office of the Attorney General, and the Wyoming Attorney General.

38.    For their part, Plaintiffs also submitted to extensive discovery.  On July 26, 2023,

Sirius XM propounded 78 document requests and 12 contention interrogatories on each Plaintiff.

Sirius XM served requests for admission on Plaintiffs Bickford, Campbell, and Sadauskas.

Plaintiffs Bickford, Campbell, and Mulholland responded fully to each of Sirius XM's document

requests, contention interrogatories, and requests for admission, and produced all relevant and

responsive documents in their possession, custody, or control.

39.    Plaintiffs Bickford, Campbell, and Mulholland also each submitted to full-day

depositions.  Sirius XM took the depositions of Plaintiffs Julie Campbell, Kerrie Mulholland, and

Diana Bickford on January 6, 8, and 10, 2025.  Like the litigation itself, the depositions were

contentious, and included both on-the-record and off-the-record disputes between the named

plaintiffs and defense counsel.

40.    Class Certification Proceedings.  As the case approached the class certification

stage, the vast chasm between the Parties' respective positions was readily apparent.  Even the

final class certification discovery briefing schedule was vigorously contested.  *See* Dkts. 35-38.

41.    After carefully analyzing the full record, Class Counsel submitted class

certification briefing and supporting evidence—including an expert report totaling 222 pages,

with exhibits.  *See* Dkts. 39, 40, 41, 42, 42-1 through 42-25, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52,

53, 54, 55, 56, 57, 58, & 59.

42.    Sirius XM proposed class certification with a robust filing of its own, which included approximately 3,866 pages of supporting exhibits.  Dkts. 77, 78, 78-1 through 78-7, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, & 89.

43.    By agreement of the Parties and due to the complex issues addressed at class certification, Class Counsel also submitted a reply brief and supporting evidence.  Dkts. 94, 95, 96, 97, 98, 99, 100-1 through 100-4, & 118.

44.    Even after all this briefing, Sirius XM sought leave to file a surreply opposing class certification and lodged its proposed surreply in the Court record.  Dkts. 105 & 105-1. Plaintiffs opposed that motion.  Dkt. 106.

45.    The parties also contested the legal and factual bases for class certification through ancillary motion practice.   The parties fully briefed a series of motions, including (1) Sirius XM's Motion to Raise Defenses and File Answer, Dkts. 62, 63, 64, 64-1, 70, 71, & 75 and related Motion for Leave to File Reply In Support of Motion to Raise Defenses and File Answer, Dkts. 72 & 73; (2) Plaintiffs' Motion to Strike & to Sanction Defendant Sirius XM Radio, Inc. for Disclosing Plaintiffs' Confidential Information, Dkts. 65 & 66; (3) Sirius XM's Objection to Magistrate Judge's Order, Dkts. 92 & 93; (4) Plaintiffs' Motion to Strike Undisclosed Declarations, Dkts. 101, 108, 116, & 117; and (5) Plaintiffs' Motion to Exclude Defendant's Transcripts of Recorded Calls, Dkts. 102, 109, 110, 110-1 through 110-11, 111, 116, & 117.

46.    Thus, there was large volume of contested proceedings before this Court.  Indeed, at the time of settlement, the Court had eleven motions pending before it, including Plaintiffs' Motion to Certify Class, and additional expert reports, declarations, and exhibits from the Parties *collectively totaling over 5,000 pages*. *See* Order, Dkt. 120 (holding eleven motions in

abeyance).

47.     <u>Mediation</u>.  After completing classwide discovery sufficient to understand fully the parties claims, defenses, and potential damages, the parties agreed to engage in private mediation.  Dkt. 33.

48.     On June 6, 2024, the Court stayed this case sua sponte while the Parties engaged in private mediation.  During the stay, Class Counsel devoted themselves fully to potential settlement by engaging in regular meet and confers and preparing mediation statements and analyses, with the support of Plaintiffs' experts.  The Parties' mediation briefing detailed the then-current procedural history and factual status of the case, as well as the liability, damages, and risk exposures in the case, as supported by detailed legal and factual analysis.

49.     The Parties completed all-day mediation sessions on September 19, 2024 and October 10, 2024 before Randall W. Wulff, an experienced and well-regarded mediator.  The Parties spent a significant amount of time negotiating the form and timing of any practice changes for any settlement.  These discussions were highly contested, with each side vigorously advocating for its respective position. Despite considerable efforts by the Parties, the mediation sessions did not result in any settlement.

50.     On October 22, 2024, the Court lifted the mediation stay and the Parties returned to active litigation.

51.     The parties next mediation sessions did not occur until the following year, with an all-day mediation session on July 15, 2025 before retired Magistrate Judge Morton Denlow, who previously served for 16 ½ years as a Magistrate Judge for the United States District Court for the Northern District of Illinois.

52.     As with the prior mediation sessions, the Parties submitted detailed briefs and met

11

and conferred substantially.

53.     At all times and on all issues, the settlement discussions were highly adversarial, non-collusive, and conducted at arm's length, and involved vigorous negotiations on all issues. The settlement negotiations were also prolonged and hard-fought; the parties exchanged a series of counterproposals on key aspects of the Settlement. The negotiation process nearly broke down several times as Class Counsel continually advocated for a larger fund for the Class, while Defendant wanted a smaller fund. The case settled only after Plaintiffs and Defendant accepted a mediator's proposal. At the conclusion of this session, the Parties entered into a Memorandum of Understanding relating to the Settlement Agreement.

54.     After the mediation and acceptance of the mediator's proposal, Class Counsel spent time considerable time negotiating the final settlement terms; negotiating, drafting, and revising the Settlement Agreement and exhibits; meeting and conferring with Defendant regarding settlement terms.

55.     The Settlement Agreement is the product of vigorous litigation, informed analysis of the strengths and weaknesses of the case, and a hard-fought, arm's-length negotiating process overseen by an experienced neutral. The settlement achieves an extraordinary monetary payment for the certified Class and significant non-monetary relief, while eliminating all risks inherent in further litigation.

56.     Class Counsel also spent time considerable time soliciting competitive bids from settlement administrators regarding the notice plan; meeting and conferring with settlement administrators regarding the notice plan; revising the Motion for Preliminary Approval; drafting the proposed orders regarding preliminary approval, and all of the forms of class notice; and drafting a declaration in support of preliminary approval. Class Counsel has also worked to

12

oversee settlement administration, including working with the Settlement Administrator to oversee notice and to review the official settlement website.

57.     In particular, Class Counsel have worked closely with the Settlement Administrator to ensure successful implementation of the Court-approved notice program.  Class Counsel have supervised this process closely to ensure that notice of the Settlement Agreement was successfully accomplished and to promote maximum outreach to potential Class Members.

58.     The Settlement Administrator has emailed and/or mailed the Court-approved class notice to potential Class Members.  The class notice informed potential Class Members of the amount of fees and costs requested by Class Counsel and the proposed service awards for the class representatives.

59.     The Settlement Administrator re-mailed notice to potential Class Members who provided updated contact information to Class Counsel or the Settlement Administrator, or whose address information was retrieved through public record database searches.

60.     Class Counsel also fielded inquiries from, and advised, potential Class Members who contacted Class Counsel directly about the Settlement Agreement.  Class Counsel have resolved each of their inquiries.

61.     As of today, no Class Members have filed objections challenging the fairness, reasonableness, or adequacy of the Settlement Agreement, or the requested attorneys' fees and costs and service awards.

62.     Class Counsel anticipates further work overseeing settlement administration, including responding to potential Class Member inquiries and answering any questions they have about the Settlement.

63.     <u>The Risky and Contingent Nature of this Action</u>. This matter has required Class

Counsel to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of our time, along with the time of our partners and associate attorneys, paralegals and case clerks, litigation support staff, research staff, and other support staff at our respective firms.

64.     Such time could otherwise have been spent on other fee-generating work. Because Class Counsel undertook representation of this matter on a contingency-fee basis, Class Counsel shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

65.     If not devoted to litigating this action, from which any remuneration to Class Counsel is wholly contingent on a successful outcome, the time that Class Counsel's attorneys and staff spent working on this case could and would have been spent pursuing other potentially fee generating matters.

66.     Litigation is inherently unpredictable and therefore risky. Despite the strengths of this case, it is our opinion that Plaintiffs would face certain risks in litigating this action on a classwide basis. While we disagree about the merits of Sirius XM's potential defenses, we recognize that Sirius XM has raised difficult proof issues and legal questions. Accordingly, there is a risk the Court may deny class certification. Further, we recognize that any of Sirius XM's defenses, if decided its favor, could reduce or eliminate any award to the Class.

67.     The risk in TCPA class actions is unfortunately very real. For example, in the decade prior to filing this lawsuit LCHB has lost a number of TCPA class actions without any recovery for the proposed class or any fees for their work on behalf of the proposed class. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (compelling claims to arbitration on an individual basis); *Moore v. Chase Bank USA, N.A.*, Case No. 2:12-cv-10316-

PA-E (C.D. Cal. Jan. 9, 2013) (dismissing case); *Delgado v. US Bankcorp*, Case No. 2:12-cv-

10313-SJO-AJW (C.D. Cal. Jan. 17, 2013) (dismissing case); *Brown v. DIRECTV, LLC*, 2013

U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an

individual basis); *Evans v. Aetna Inc.*, Case No. 2:13-cv-01039-LA (E.D. Wisc. Nov. 20, 2013)

(dismissing case); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 530 (E.D. Wis. 2014)

(denying class certification after significant expert work and discovery); *Levin v. National Rifle

Assoc. of Am.*, Case No. 1:14-cv-24163-JEM (S.D. Fla. Feb. 5, 2015) (dismissing case); *Charvat

v. The Allstate Corp.*, Case No. 1:13-cv-07104 (N.D. Ill. Feb. 20, 2015) (terminating case);

*Ineman v. Kohl's Corp.*, Case No. Case 3:14-cv-00398-wmc (W.D. Wisc. Mar. 26, 2015)

(compelling claims to arbitration on an individual basis); *Aghdasi v. Mercury Insurance Group,

Inc.*, Case No. 2:15-cv-04030-R-AGR (C.D. Cal. Mar. 16, 2016) (dismissing case after denial of

class certification); *Wolf v. Lyft, Inc.*, Case No. 4:15-cv-01441-JSW (N.D. Cal. Mar. 28, 2016)

(dismissing case); *Jefferson v. General Motors Fin. Co., Inc.*, Case No. 2:16-cv-02349-WHW-

CLW (D.N.J. June 28, 2016) (dismissing case); *Rubenstein v. Loandepot.com, LLC*, Case No.

5:16-cv-5588-LHK (N.D. Cal. Sept. 5, 2017) (dismissing case after significant discovery);

*Pritchard v. Comenity Bank*, Case No. 2:15-cv-05994-KM-MAH (D.N.J. Sept. 8, 2017)

(dismissing case after significant discovery); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d

674, 690 (D. Md. 2017) (denying class certification after significant expert work and discovery);

*Harris v. American Express Co.*, Case No. 1:17-cv-00732 (S.D.N.Y. Dec. 6, 2017) (dismissing

case after significant discovery); *Lamberis v. Quotewizard.com, LLC*, Case No. 1:17-cv-05678

(N.D. Ill. Apr. 10, 2018) (dismissing case after significant discovery); *Barrera v. Guaranteed

Rate, Inc.*, Case No. 1:17-cv-05668 (N.D. Ill. Apr. 11, 2018) (dismissing case and ordering the

plaintiff to pay deposition costs); *Wieseler-Myers v. Sunrise Communications, Inc.*, Case No.:

6:17-CV-03346-BCW (W.D. Mo. Jun. 1, 2018) (dismissing case); *Sokol v. Fortegra Fin. Corp.*, Case No. 3:18-cv-262 (M.D. Fla. Feb. 12, 2019) (dismissing case after significant discovery); *Postle v. Allstate Ins. Co.*, Case No. 1:17-cv-7179 (N.D. Ill. Aug. 5, 2019) (dismissing case after significant discovery); *Loughman v. Career Education Corp.*, Case No. 1:20-cv-00200 (N.D. Ill. March 6, 2020) (dismissing case following discovery of arbitration clause); *Tiefenthaler v. Amerisave Mortgage Corp.*, Case No. 1:19-cv-02862-AT (N.D. Ga. Apr. 28, 2020) (dismissing case after significant discovery); *Robinson v. Insurance Care Direct, Inc.*, Case No. 3:20-cv-01033-VC (N.D. Cal. Aug. 7, 2020) (dismissing case); and *Tiefenthaler v. Progressive Direct Ins. Co.*, Case No. 1:19-cv-11632 (D. Mass. Sept. 3, 2020) (dismissing case after significant discovery); *Burk v. Direct Energy, LP*, No. 19-CV-663, 2021 WL 4267146 (S.D. Tex. Sept. 20, 2021) (denying class certification after significant expert work and discovery).

68.     Therefore, despite Class Counsel's devotion to this case and our confidence in the TCPA claims alleged against Defendant, there have been many factors beyond our control that posed significant risks.

69.     If not devoted to litigating this action, from which any remuneration to Class Counsel is wholly contingent on a successful outcome, the time that Class Counsel's attorneys and staff spent working on this case could and would have been spent pursuing other potentially fee generating matters.

70.     <u>Conclusion</u>.  In sum, Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for years. Class Counsel engaged in significant motion practice and massive offensive discovery efforts to prosecute the Class claims, and have otherwise extensively litigated this case.

71.     Class Counsel obtained relief for a large class of individuals and ensured that

16

changes were made to Sirius XM's practices intended to prevent any future violations of the TCPA.

72.     The relief obtained is a result of Class Counsel's litigation efforts in the face of a vigorous defense and case-dispositive risks.

73.     For our work on behalf of the Class, Class Counsel seek an award of 33-1/3% of the total value of the Settlement Fund.

### CLASS COUNSEL'S COSTS

74.     LCHB maintains all books and records regarding costs expended on each case in the ordinary course of business, which books and records are prepared from credit card reports, expense vouchers, and check records.  Class Counsel have reviewed the records of costs expended in this matter.

75.     Class Counsel has incurred $167,882.03 in out-of-pocket expenses.  These costs consisted of expert fees, mediation fees, travel costs to depositions and mediations, court reporters and deposition costs, maintenance of a document management platform to review Defendant's document and data productions, court filing fees, research fees, postage, telephone costs, and copies.

76.     Class Counsel incurred each of these expenses on a contingent basis, without any guarantee of payment.

77.     These costs reflect both the length and complexity of this case. By far, the largest costs were for expert and mediation fees, which comprise well over half of the total costs.  The expert-related costs reflect the fact that Plaintiffs' testifying expert submitted a lengthy expert report, was deposed, filed a supplemental report, and otherwise performed extensive expert analysis in support of Plaintiffs' motion for class certification, mediation, and settlement. Plaintiffs' testifying and consulting experts were tasked with millions of rows of call data and

3430671.1

summarizing their analysis in a straightforward fashion. The expenses also reflect the parties'
three mediations, the costs of depositions, and travel to and from depositions and mediations
through the case.

78.     Class Counsel's request does not include any addition for interest or the time
value of money.

79.     All Court-approved reimbursement of expenses will be paid from the common
Settlement Fund.  Through the Court-approved notice process, Class Members were informed
that Class Counsel would request reimbursement for these costs and expenses in an amount up to
$300,000.  To date, no Class Member has objected to that request.

80.     Although Class Counsel also expect to incur additional expenses preparing for the
final approval hearing and continuing to oversee successful implementation of the settlement,
Class Counsel do not seek reimbursement for those costs.

81.     The following is a breakdown by law firm of the expenses for which EKSM,
LCHB, and S&G seeks reimbursement in this matter:  $24,847.51 for EKSM; $102,472.35 for
LCHB; $25,854.08 for S&G; and $14,708.09 in additional expert costs due at final approval.

82.     Upon request by the Court, Class Counsel can submit receipts documenting all of
the above expenses *in camera*.

## THE CLASS REPRESENTATIVES' SERVICE FOR THE CLASS

83.     Plaintiffs Campbell, Bickford, and Mulholland have served as Court-appointed
Class Representatives and worked closely with Class Counsel throughout the litigation.

84.     For their time and efforts, which have resulted in the $28,000,000 Settlement
Fund, Class Counsel are requesting that each plaintiff receive a service award of $10,000.

85.     Each of the Plaintiffs spent years receiving unwanted telemarketing calls from
Sirius XM, but Sirius XM never honored their requests that Sirius XM stop calling them. Dkt. 1,

3430671.1

¶¶ 3, 46-80.  For example, Plaintiff Julie Campbell ("Ms. Campbell") purchased a Lincoln MKZ in Peoria, Illinois, in or around February 2017. *Id.*, ¶ 46. The Lincoln came with a Sirius XM Radio pre-installed, an option that she did not request and was not able to refuse. *Id.*, ¶ 47. Without Ms. Campbell's consent, Sirius XM obtained her contact information from the dealership where she purchased the Lincoln. *Id.*, ¶ 48. Sirius XM proceeded to bombard her with dozens of unsolicited telemarketing calls. *Id.*, ¶ 49. Ms. Campbell could not turn her ringer off because her son was undergoing kidney dialysis and she was awaiting a call from his doctor about a transplant. *Id.*, ¶¶ 50, 52. Sirius XM repeatedly ignored her requests to stop calling. *Id.*, ¶ 51.

86.     Plaintiffs Bickford and Mulholland likewise received unsolicited telemarketing calls without their prior express written consent. *Id.*, ¶¶ 63-80.

87.     The named plaintiffs faced aggressive and difficult discovery requests from Sirius XM.  *See supra* ¶¶ 38-39.  Thus, Plaintiffs were actively engaged— producing numerous documents, assisting with mediation, and regularly communicating with counsel up to and including evaluating and approving the proposed Settlement. All three Plaintiffs traveled for their depositions, which each lasted most of the day.

88.     Before initiating this case, each of the Plaintiffs entered into detailed Attorney Representation Agreements setting forth their rights and responsibilities as named plaintiffs and class representatives in this lawsuit.  Among other things, Plaintiffs agreed to a negotiated contingent percentage of recovery for Class Counsel in the event Class Counsel obtained a recovery for Plaintiffs and the Class.  The one-third attorneys' fee award requested by Class Counsel is consistent with the Plaintiffs' *ex ante* Attorney Representation Agreements, and is consistent with the Seventh Circuit's market rate for attorneys' fees in consumer privacy actions.

3430671.1

Thus, Plaintiffs have contracted and agreed that the market rate of one-third of the Settlement Fund is appropriate to compensate Class Counsel for the results obtained through this hard-fought litigation.

89.     In initiating this case, the Plaintiffs expressed a desire to represent a class of others who were subject to practices of Sirius XM alleged in this case and did not simply want to recover for themselves. Due to the Plaintiffs' record-keeping, responsiveness and dedication to representing others, Class Counsel determined they would be great class representatives. Their continued support in this case, including maintaining contact with our office, following the progress of the litigation, assisting in the Action's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions, confirmed that our assessment of their ability to serve was correct.

90.     Each of the Plaintiffs could have given up and avoided the work of litigating on behalf of Class.  In fact, in response to Sirius XM's discovery requests, one of the original named plaintiffs, Mr. Keith Sadauskas decided to give up and dismiss this claims entirely on January 10, 2024.  *See* Dkt. 19 (Notice of Voluntary Dismissal of Without Prejudice of Keith Sadauskus Only).

91.     It was only because Plaintiffs persisted that Class Counsel were able to achieve the Settlement obtained here.

* * * * *

92.     I, Mason A. Barney, declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in New York, New York on February 25,

20

2026.

93.     I, Carl R. Draper, declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Springfield, Illinois on February 25, 2026.

94.     I, Jarrett L. Ellzey, declare under penalty of perjury under the laws of the United States and the State of Texas that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Houston, Texas on February 25, 2026.

95.     I, Daniel M. Hutchinson, declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in San Francisco, California on February 25, 2026.

                                    Respectfully submitted,

                                    **LIEFF CABRASER HEIMANN &
                                    BERNSTEIN**

                                    By: */s/ Daniel Hutchinson*
                                    Daniel Hutchinson
                                    275 Battery Street, 29th Floor
                                    San Francisco, California 94111-3339
                                    Telephone: (415) 956-1000
                                    Facsimile: (415) 956-1008
                                    Email: dhutchinson@lchb.com

                                    **ELLZEY & ASSOCIATES, PLLC**

                                    By: */s/ Jarrett Ellzey*
                                    Jarrett Ellzey
                                    1105 Milford St,
                                    Houston, TX 77006
                                    Telephone: (888) 350-3931
                                    Email: Jarrett@ellzeylaw.com

                                    **SIRI & GLIMSTAD LLP**

                                    By: */s/ Mason Barney*
                                    Mason Barney

21

SIRI & GLIMSTAD LLP
745 Fifth Ave, Ste 500
New York, NY 10051
Telephone: (212) 532-1091
Email: mbarney@sirillp.com

**FELDMAN WASSER DRAPER & COX**

By: */s/ Carl R. Draper*
Carl R. Draper
1307 South 7th Street
Springfield, IL 62703
Telephone:  (217) 544-3403
Email:  cdraper@feldman-wasser.com

*Class Counsel for Plaintiffs and the Settlement Class*

22