E-FILED
Friday, 27 March, 2026  10:33:52 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> SIRIUS XM RADIO, INC., <br><br> Defendant. <br><br>———————————— <br><br> NIGEL COHEN, <br><br> Objector | Case No. 2:22-cv-02261-CSB-EIL <br><br> Hon. Colin Stirling Bruce |

**DECLARATION OF ADAM SCHULMAN**

I, Adam Schulman, declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      My business address is Hamilton Lincoln Law Institute ("HLLI"), 1629 K Street NW, Suite 300, Washington, DC 20006. My telephone number is (610) 457-0856. My email address is adam.schulman@hlli.org. I am admitted to the bars of the District of Columbia and the Commonwealth of Pennsylvania, as well as various federal courts including the Central District of Illinois.

3.      I am a senior attorney at HLLI and its Center for Class Action Fairness ("CCAF"). My firm represents Nigel Cohen in objecting to the proposed settlement and accompanying fee request.

4.      The specific grounds of my client's objections are identified in his contemporaneously filed Objection to Proposed Settlement and his contemporaneously filed Objection to Request for Attorneys' Fees.

**Risk and Labor**

5.      One aspect of my client's objection is that class counsel's attorneys' fee request cannot be justified by the litigation risk or labor expended of counsel.

6.      The lack of risk and amount of work necessary is confirmed by class counsel's successful prosecution of equivalent TCPA claims against Sirius XM not long ago in *Buchanan v. Sirius XM Radio, Inc.*, No. 17-cv-00728 (N.D. Tex.). That litigation resulted in a $25 million common fund settlement, from which class counsel sought and received approximately 26% as a Rule 23(h) fees and costs award. *See Buchanan*, Dkts. 105-1, 126, 129.

7.      Class counsel have declined to submit any billing or lodestar information, full or summary, along with their request for attorneys' fees in this litigation. The absence of this information has handicapped my client in crafting his objection.

8.      Specifically, we suspect that much of class counsel's work is duplicative, redundant, or overlapping with work done in the *Buchanan* litigation. We also suspect that there is duplication of

effort between the four firms acting as class counsel. Such time would not be compensable and thus, if so, an accurate lodestar crosscheck would show that plaintiffs' $9.33m fee request amounts to a windfall for counsel.

9.     HLLI has created a two-column chart identifying and comparing the identical and near-identical duplication of work product between the complaint and class certification motion in *Buchanan* and the complaint and class certification motion here in *Campbell*. A true and correct copy of this chart is attached as Exhibit 1.

10.     This comparison finds that fifty-one of the complaint's paragraphs are verbatim or near-verbatim copies of paragraphs of the *Buchanan* complaint. It finds that eleven paragraphs of the class certification motion are verbatim or near-verbatim copies of paragraphs of the *Buchanan* class certification motion.

### Meet and Confer

11.     On March 23, 2026, my HLLI colleague Naomi King and I had a video conference with class counsel Daniel Hutchinson regarding my client's forthcoming objections.

12.     While we were unable to fully resolve any objections, Mr. Hutchinson did inform us that the Plaintiffs are using Citibank as the Escrow Agent to hold the qualified settlement fund, and that Citibank was selected independently (of the administrator Angeion) by class counsel with defendant's consent. Mr. Hutchinson further stated that he believed Citibank was disclosed in papers to the Court.

13.     After review of the docket, HLLI has been unable to confirm that Citibank was disclosed, although an exhibit to Mr. Hutchinson's declaration in support of class certification suggests that Citibank was used as the Escrow Agent in the *Buchanan* litigation. *See* Ex. 8 to Hutchinson Declaration in Support of Motion for Class Certification, Dkt. 42-8 at 59 (*Buchanan* Proposed Order Approving Issuance of Notice) ("The contents of the Settlement Fund held by Citibank [is this correct?] (which the Court approves as the Escrow Agent) shall be deemed and considered to be in custodia legis of the Court…"). If it is correct that Citibank is acting as Escrow Agent here, and has been approved by the Court, and has been selected independently of Angeion, then Cohen would

withdraw the contingent objection in section V of his Settlement Objection.

## Background

14.    It is the unfortunate experience of CCAF that, when we bring objections to fee requests, class attorneys engage in abusive and false *ad hominem* attacks against us. *See generally In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 201 n.17 (3d Cir. 2005) (remarking on class counsel's "incentive to punish successful objectors.")  Such attacks are irrelevant to the substance of the objection, and are indicative of class counsel's unwillingness to engage us on the merits.

15.    Although we hope that Class Counsel will comport themselves professionally in responding to objections in this case, we are concerned by the Settlement's requirement that all objectors and their counsel list all cases in which they have filed an objection in the past five years. Settlement ¶ 13.2. Courts nationwide have variously condemned this demand as "designed to discourage objections," "too onerous," "unnecessary," and "needlessly frustrat[ing] and discourag[ing] objections to the settlement, with no countervailing benefits to the Court or the class." *See respectively Lackawanna v. Tivity Health Support*, 2019 WL 7195309, 2019 U.S. Dist. LEXIS 148756, at *14 (W.D.N.Y. Aug. 29, 2019); *Walters v. Target Corp.*, 2019 WL 6467705, 2019 U.S. Dist. LEXIS 207489, at *23 (S.D. Cal. Dec. 2, 2019); *Allicks v. Omni Specialty Packaging*, 2020 WL 5648132, 2020 U.S. Dist. LEXIS 173964, *19 (W.D. Mo. Sept. 22, 2020); *Ark. Fed. Credit Union v. Hudson's Bay Co.*, 2021 WL 8445929, 2021 U.S. Dist. LEXIS 136943, *8 (S.D.N.Y. Jul. 22, 2021); *see also Trabakoolas v. Watts Water Tech., Inc.*, 2014 WL 12814348, at *2 (N.D. Cal. Feb. 14, 2014) (excising a similar proposed requirement). The Court ought not enforce it in this case, and we object to it as unfairly burdensome and irrelevant. Nevertheless, as to not prejudice our client's objection, I provide this information below, in Paragraph 28.

16.    To protect the record, we submit this declaration. The Seventh Circuit and district courts of this Circuit are already familiar with CCAF's "track record" of "success." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 572, 572 & n.11 (7th Cir. 2022) (citing cases); *see also Shah v. Zimmer Biomet Holdings*, 2020 WL 5627171, 2020 U.S. Dist. LEXIS 171925 (N.D. Ind. Sept. 18, 2020) (lauding CCAF even though it did not appear in the case).

SCHULMAN DECLARATION

17.      "[T]he merits of an objection are relevant, not amateurism or experience." *Pearson v. Target Corp.*, 968 F.3d 827, 831 n.1 (7th Cir. 2020). If the Court is inclined to rule solely on the merits and disregard irrelevant *ad hominem* attacks, it need not review the rest of the declaration, which simply provides factual background about the history of CCAF.

### Center for Class Action Fairness

18.      CCAF, founded in 2009, eventually became a 501(c)(3) non-profit public-interest law firm based out of Washington, DC. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit. In January 2019, CCAF became part of the Hamilton Lincoln Law Institute, a new non-profit public-interest law founded in 2018 by Ted Frank and Melissa Holyoak, whom President Biden later nominated to be a commissioner at the Federal Trade Commission.

19.      CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. CCAF represents class members *pro bono* where class counsel employs unfair procedures to benefit themselves at the expense of the class. *See, e.g., In re Stericycle Sec. Litig.*, 35 F.4th 555, 572, 572 n.11 (7th Cir. 2022) (citing cases); *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (CCAF's client's objections are "detailed, and substantive").

20.      Since its inception, CCAF has recouped over $200 million for class members by driving settling parties to reach an improved bargain or by reducing outsized fee awards. *E.g., In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508 (N.D. Cal. 2020) (reducing fees by more than $15 million and proportionally increasing shareholder recovery); *see also In re EasySaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2020 U.S. Dist. LEXIS 77483, 2020 WL 2097616 (S.D. Cal. May 1, 2020) (reducing fees by 40%); Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017) (more than $100 million at time); *cf. Ark. Teacher Ret Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022) (resulting decision from *Boston Globe* exposé, upholding sanctions

against Lieff Cabraser). CCAF has received national acclaim for its work. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 ("the leading critic of abusive class action settlements"); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL). Academics have recognized CCAF for developing "the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018).

21.    CCAF has been successful, winning reversal or remand in over thirty federal appeals decided to date in courts of appeals and the Supreme Court; we've won at least one federal appeal a year for the last fifteen years, often creating new law in the process. *E.g., Frank v. Gaos*, 586 U.S. 485 (2019); *In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568 (7th Cir. 2025); *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112 (2d Cir. 2025); *Alcarez v. Akorn, Inc.*, 99 F.4th 368 (7th Cir. 2024); *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Practices & Prods. Liab. Litig.*, 2024 WL 3065907 (11th Cir. Jun. 20, 2024) (*per curiam*); *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023); *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022); *In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021); *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Berni v. Barilla S.P.A*, 964 F.3d 141 (2d Cir. 2020); *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020); *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019) (unpublished); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir.

SCHULMAN DECLARATION

2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them. Our appeals and certiorari petitions are often supported by amicus briefs from state attorneys general.

22.     We frequently represent law professors in court (as in this case), and have also been appointed amicus in district court and appellate court proceedings where there was no adversary presentation. *E.g., Arkansas Teacher Ret. Sys. v. State St. Corp.*, 25 F.3d 55 (1st Cir. 2022) (affirming district court with CCAF defending against an *ex parte* appeal of class counsel); *McKnight v. Uber Techs.*, No. 14-05615-JST, Dkt. 256 (N.D. Cal. Mar. 21, 2022) (requesting CCAF's amicus participation regarding a novel issue of class action procedure).

### Pre-empting *Ad Hominem* Attacks

23.     In my experience, class counsel sometimes respond to CCAF objections by making a variety of false *ad hominem* attacks. The vast majority of district court judges do not fall for such transparently cynical and abusive tactics. To anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below. Again, if the Court is inclined to disregard any *ad hominem* attacks, it can avoid these collateral disputes entirely.

24.     HLLI pays its attorneys on a salary basis that does not vary with the result in any case. HLLI and CCAF attorneys do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

25.     Class counsel occasionally try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to smear CCAF are inapposite. *See* D. Brooks

Smith, *Class Action and Aggregate Litigation: A Comparative International Analysis,* 124 PENN ST. L. REV. 303, 321-30 (2020) (distinguishing between professional objectors and objecting public interest groups); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, CCAF is funded entirely through charitable donations and court-awarded attorneys' fees. The difference between a for-profit "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements or excessive fee requests it sees.

26.     CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it successfully initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

27.     While one district court called CCAF's legal director a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to him non-pejoratively as a "professional objector" in an opinion agreeing with his objection and reversing a settlement approval and class certification.

28.     The Settlement's requirement that objectors and their counsel disclose all cases in

which they have "filed or in any way participated in" objections in the last five years raises concern that Class Counsel will engage in the same sort of unprofessional *ad hominem* attacks in this case. While maintaining my client's objection to this demand, I aver that CCAF has represented clients or HLLI attorneys in the following objections to proposed class action settlements in the past five years (since March 27, 2021). This list does not include class-action settlement cases where we were appointed or sought *amicus* status on behalf of class interests without representing an objecting class member; cases where we sought to be appointed guardian *ad litem* on behalf of the class; cases where we sought to intervene on behalf of a shareholder after parties dismissed a class-action complaint for a payout to the attorneys without a class-action settlement; cases we continued to pursue after 2021 in which we had filed an objection before March 27, 2021; or cases where someone else brought an unsuccessful objection and we agreed to represent the objector on appeal. The list includes one case (*Chester Vanguard Funds*) in which I provided an expert declaration to an objector for use in support of his, ultimately successful, objection. However, it might not exhaustively include all cases where an objector consulted with CCAF but we did not agree to formal representation or make any formal appearance on behalf of the objector. Note that some cases involve multiple objections to multiple iterations of the settlement. In the interests of disclosure, I am identifying all objections where HLLI and CCAF attorneys have appeared as counsel or *pro se* even if those attorneys have not yet worked or will not work on this objection: *In re Apple, Inc. Device Performance Litigation*, No. 18-md-2827-EJD (N.D. Cal.); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, No. 12-MD-2358 (D. Del.); *Mckinney-Drobnis v. Massage Envy Franchising, LLC*, No. 16-cv-6450-MMC (N.D. Cal.); *In re ConAgra Foods*, Inc., No. 11-cv-05379-CJC (C.D. Cal.); *Jones v. Monsanto Co.*, No. 19-cv-0102-BP (W.D. Mo.); *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-MKM (E.D. Mich.); *Fruitstone v. Spartan Race, Inc.*, No. 1:20-cv-20836 (S.D. Fla.); *Williams v. Reckitt Benckiser LLC*, No. 20-cv-23564 (S.D. Fla.); *In re Wawa Inc., Data Security Litigation*, No. 19-cv-6019 (E.D. Pa.); *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.); *Hesse v. Godiva Chocolatier, Inc.*, No. 19-cv-00927-AJN (S.D.N.Y.); *In re Novo Nordisk Securities Litigation*, No. 17-cv-00209-ZNQ-LHG (D.N.J.); *In re Johnson & Johnson Sunscreen Marketing, Sales Practices and Products Liability Litigation*, No. 21-cv-3015-AHS (S.D. Fla.); *In re Morgan Stanley Data Security*

*Litigation*, No. 20-cv-5914-PAE (S.D.N.Y.); *Kurtz v. Kimberly-Clark Corp.*, No. 14-cv-1142 (E.D.N.Y.); *In re All-Clad Metalcrafters LLC, Cookware Marketing and Sales Practices Litigation*, No. 21-mc-491-NR (W.D. Pa.); *In re JUUL Labs Inc. Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913-WHO (N.D. Cal.); *In re Altria Group, Inc. Derivative Litigation*, No. 3:20-cv-772 (DJN) (E.D. Va.); *Sharpe v. A&W Concentrate Co.*, No. 19-cv-00768-BMC (E.D.N.Y.); *Lundy v. Meta Platforms, Inc.*, No. 3:18-cv-6793-JD (N.D. Cal.); *In re Advocate Aurora Health Pixel Litigation*, No. 22-cv-1253-JPS (E.D. Wis.); *MacClelland v. Cellco Partnership,* No. 21-cv-08592-EMC (N.D. Cal.); *In re Google Location History Litigation*, No. 18-cv-5062-EJD (N.D. Cal.); *Smith v. Assurance IQ, LLC*, No. 2023-CH-09225 (Cir. Ct. Cook Cty. Ill.); *Stark v. Patreon Inc.*, No. 3:22-cv-03131 (N.D. Cal.); *In re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.); *In re Vanguard Chester Funds Litig.*, No. 22-cv-955 (E.D. Pa.); *Lopez v. Apple, Inc.*, No. 19-cv-04577-JSW (N.D. Cal.); *Corrente v. The Charles Schwab Corp.*, No. 22-cv-470 (E.D. Tex.).

29.    CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make difficult decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair. This is especially true now that HLLI has expanded into successful litigation over other issues that our attorneys care about. We have successfully litigated regulatory and First-Amendment cases. *E.g., Leroy v. Livingston Manor Cent. Sch. Dist.*, 158 F.4th 414 (2d Cir. 2025) (reversing summary judgment against student alleging First Amendment claims for suspension arising from out of school snapchat); *Kohls v. Bonta*, 797 F. Supp. 3d 1177 (E.D. Cal. 2025) (granting summary judgment to permanently enjoin the State's ban on AI-generated political speech as a violation of the First Amendment); *Kansas v. Kennedy*, 787 F. Supp. 3d 906 (N.D. Iowa 2025) (enjoining HHS's minimum staffing standards for long term care facilities on summary judgment as a violation of the APA); *Stock v. Gray*, 773 F. Supp. 3d 733, 738

SCHULMAN DECLARATION

(W.D. Mo. 2025) (granting summary judgment and enjoining Missouri's viewpoint-based restriction on pharmacist speech as violating the First Amendment); *CEI v. FCC*, 970 F.3d 372 (D.C. Cir. 2020). We also frequently file amicus briefs in the Supreme Court on constitutional issues. There is thus substantial opportunity cost with every class-action objection we file.

30.     While we are often accused of being "ideological objectors," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that we oppose all class actions and are seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. CCAF's founder, Ted Frank, has been writing and speaking about class actions publicly for over a decade, including in testimony before state and federal legislative subcommittees, and has never asked for an end to the class-action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That we oppose class-action abuse no more means that we oppose class actions than someone who opposes food poisoning opposes food. On many occasions, successful objections brought by CCAF resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. Frank been a class representative in a federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.). And HLLI is sole putative class counsel in three class actions pending in federal court.

31.     On October 1, 2015, after consultation with its board of directors and its donors, CCAF merged with the much larger Competitive Enterprise Institute ("CEI"). Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, CCAF negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. CCAF attorneys made several filings in several cases opposed by CEI donors.

32.     CEI was willing to merge with CCAF because it claimed to support CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it

SCHULMAN DECLARATION

is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor CCAF's clients agree with all of those positions, and they should not be ascribed to me, my clients, or this objection.

33.    While at CEI, CCAF was supported by preexisting donors and revenues, and brought in more money to CEI than CEI budgeted to CCAF. The fact that a particular corporation or foundation had been giving money to CEI before CCAF became part of CEI had no effect on our litigation decisions; we frequently successfully litigated against CEI donors, including Google.

34.    CCAF has since left CEI, and is now part of the Hamilton Lincoln Law Institute, which receives no corporate funding.

35.    Some class counsels have accused us of improper motivation because CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibility of a fee award never factors into the CCAF's decision to accept a representation or object to an unfair class-action settlement or fee request.

36.    CCAF's history in requesting attorneys' fees reflects this approach. Despite having made dozens of successful objections and having won over $200 million on behalf of class members, CCAF has not requested attorneys' fees in most of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount be returned to the class settlement fund. In *Petrobras*, despite winning tens of millions of dollars for the class, we requested less than $200,000 in fees. *See In re Petrobras Secs. Litig.*, 786 Fed. Appx. 274, 277 (2d Cir. 2019). In *Wells Fargo*, our good-faith objection on behalf of a shareholder aided the court in increasing benefit to shareholders by $15 million, and we requested only $250,000 (and received under $100,000) in fees through a court approval process—

SCHULMAN DECLARATION

even though a fellow objector in the same case negotiated and received a payment of $1.75 million from Wells Fargo directly for settling his objections. *See In re Wells Fargo & Co, Shareholder Derivative Litig.*, 523 F. Supp. 3d 1108, 1117-19 (N.D. Cal. 2021).

37.    Moreover, under federal non-profit law, attorney fees cannot be used to support more than 50% of our program expenses. None of our attorneys' salaries are tied to fee awards in any case, and all of our attorneys have salaries that are a fraction of what they could make in private practice.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on March 26, in Alexandria, Virginia

_____

Adam Schulman

Dated: March 27, 2026    /s/ Adam E. Schulman
Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorney for Objector Nigel Cohen*

SCHULMAN DECLARATION

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Declaration via the ECF system for the Central District of Illinois, thus effecting service on all attorneys registered for electronic filing.


Dated: March 27, 2026

/s/ Adam E. Schulman