E-FILED
Friday, 27 March, 2026  10:33:52 AM
Clerk, U.S. District Court, ILCD

# EXHIBIT 1

**Sirius XM TCPA: Buchanan / Campbell Duplication**

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 1. …Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement. | 1. …Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do-Not-Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement. |
| 3. This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See* 28 U.S.C. §1331 and *Mims v. Arrow Fin. Serv., LLC*, 565 U.S. , 132 S. Ct. 740, 181 L. Ed.2d 881 (2012). | 5. This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See* 28 U.S.C. §1331; 28 U.S.C. §1367; *Mims v. Arrow Fin. Serv., LLC,* 565 U.S. 368 (2012). |
| 5. Venue is also proper in this Court under 28 U.S.C. §1391(b) as Defendant regularly does business in the district and division, is subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, "resides" in the district. | 7. Venue is also proper in this Court under 28 U.S.C. §1391(b) as Defendant regularly does business in the district and division, is subject to this Court's personal jurisdiction with respect to this civil action in the district and, as such, "resides" in the district. |
| 7. Defendant Sirius XM is a Delaware corporation with its principal place of business located at 1221 Avenue of the Americas, New York, NY 10020. | 12. Defendant Sirius XM is a Delaware corporation with its principal place of business located at 1500 Eckington Pl NE, Washington, DC 20002. |
| 8. At all times pertinent, Defendant was, and is, in the business of providing radio programming for a fee. | 13. At all times pertinent, Defendant was, and is, in the business of providing satellite radio programming for a fee. |
| 9. Defendant transacts business throughout the United States, including in Texas and specifically in this district and division. | 14. Defendant transacts business throughout the United States, including in Illinois and specifically in this district and division. |
| 10. In addition to transacting business in Texas, Defendant contracts to supply services or goods in Texas, including in this district and division. | 15. In addition to transacting business in Illinois, Defendant contracts to supply services or goods in Illinois, including in this district and division. |
| 11. Defendant regularly does, or solicits, business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of Texas, including in this district and division. | 16. Defendant regularly does, or solicits, business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered in the State of Illinois, including in this district and division. |
| 12. In addition, through its acts in calling, or causing to be called, Plaintiff's Do-Not-Call Registry Residential Land Line, Defendant caused tortious injury in the nature of an invasion of Plaintiff's privacy rights in this State, either by its acts in this State or, alternatively, by acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed, or services rendered in this State. | 17. In addition, through its acts in calling, or causing to be called, Plaintiffs' Do-Not-Call Registered phones, Defendant caused tortious injury in the nature of an invasion of Plaintiffs' privacy rights in this State, either by its acts in this State or, alternatively, by acts outside this State while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed, or services rendered in this State. |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 15. At all times pertinent, Defendant was, and is, engaged in interstate commerce, and Defendant used, and is using, instrumentalities of interstate commerce, including telephone lines and the mail, in the course of its activities set forth herein. | 20. At all times pertinent, Defendant was, and is, engaged in interstate commerce, and Defendant used, and is using, instrumentalities of interstate commerce, including telephone lines and the mail, in the course of its activities set forth herein. |
| 16. The TCPA was enacted more than twenty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy. | 21. The TCPA was enacted in 1991, more than thirty years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy. |
| 17. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do- Not-Call Registry. 47 C.F.R. § 64.1200(c) (2). According to the Federal Trade Commission, the Registry, which was established in 2003, currently has over 223 million active registrations. | 22. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c) (2). According to the Federal Trade Commission ("FTC"), the Registry, which was established in 2003, currently has over 244 million active registrations. |
| 18. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.* | 23. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.* |
| 19. Because a telephone subscriber listed on the National Do-Not-Call Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the National Do-Not-Call Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id.* § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id.* | 24. Because a telephone subscriber listed on the National Do-Not-Call Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the National Do-Not-Call Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id.* §64.1200(c)(2)(ii) & 64.1200(f)(8) (defining prior express written consent as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."). The written agreement must include the telephone number to which the calls may be placed. *Id.* |
| 20. A person whose number is on the National Do-Not-Call Registry and has received more than one telephone solicitation within any twelve-month period by, or on behalf of, the same entity in violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. §227(c)(5). | 25. A person whose number is on the National Do-Not-Call Registry and has received more than one telephone solicitation within any twelve-month period by, or on behalf of, the same entity in violation of the TCPA, can sue the violator for $500 per violation, a figure that may be trebled for willful or knowing violations. 47 U.S.C. §227(c)(5). |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 21. Telemarketers who wish to avoid calling numbers listed on the National Do-Not-Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls. | 26. Telemarketers who wish to avoid calling numbers listed on the National Do-Not-Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls. |
| 22. To avoid violating the TCPA by calling registered numbers, telemarketers *inter-alia* must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv). | 27. To avoid violating the TCPA by calling registered numbers, telemarketers *inter alia* must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv). |
| 23. Regulations implementing the TCPA also require entities to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's Internal Do- Not-Call Registry within a reasonable time, not to exceed thirty days from the date of the request. *Id.* at § (d)(3). | 29. <u>Internal Do Not Call Registries.</u> Regulations implementing the TCPA also require entities to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once an entity receives a request from a residential telephone subscriber not to receive calls, the number must be placed on the entity's Internal Do- Not-Call Registry within a reasonable time, not to exceed thirty days from the date of the request. *Id.* at § (d)(3). |
| 25. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added)… | 28. "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). |
| 26. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). | 33. Seller Liability for TCPA Violations. The TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995). |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 27. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005). | 34. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005). |
| 28. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013). | 35. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles <br><br> of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and <br><br> (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013). |
| 29. On or about May 2, 2016, Plaintiff purchased a 2011 Honda Odyssey Van (hereinafter the "Odyssey") for his wife, Deborah Lynn Buchanan, from Bob Tedford Chevrolet Co. (hereinafter the "Dealer") located in Farmersville, Texas. | 46. In or about February 2017, Plaintiff Julie Campbell ("Ms. Campbell") purchased a Lincoln MKZ in Peoria, Illinois. <br><br> 64. In or about June 2021, Ms. Bickford bought a 2018 Kia Sorrento from a dealership in Waterville, Maine. <br><br> 71. In 2011, Plaintiff Kerrie Mulholland ("Ms. Mulholland") purchased a new Hyundai Elantra Touring. |
| 30. Unbeknownst to Plaintiff and his Wife, the Odyssey came with an unconfigured Sirius XM Radio installation. | 72. The Hyundai Elantra Touring came with an unconfigured Sirius XM Radio installation, a service that she did not request and was not able to refuse. |
| 31. Upon information and belief, contact information for Plaintiff and his Wife, including his Residential Land Line (XXX) XXX-7761(hereinafter "Plaintiff's Residential Land Line") is a number that had been listed on the National Do-Not-Call Registry since 2008, and was furnished by or through the Dealer to Defendant… | 48. Upon information and belief, without Ms. Campbell's consent, Sirius XM obtained contact information for Ms. Campbell from the dealership where she purchased the Lincoln, including her cellular phone number (XXX) XXX-5279, which was registered to Ms. Campbell and was used as a primary residential line for her household. <br><br> 58. Upon information and belief, without Mr. Sadauskas' permission, Sirius XM obtained from the car dealer where he purchased the Tahoe contact information for Mr. Sadauskas, including his cellular phone number ending in 1277. <br><br> 66. Upon information and belief, without Ms. Bickford's permission, Sirius XM obtained contact information for Ms. Bickford, including her phone number ending in 8744 from the car dealer where she purchased the Sorrento. <br><br> 73. Upon information and belief, without Ms. Mulholland's permission, Sirius XM obtained contact |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| | information for Ms. Mulholland, including her cellular phone number (XXX)XXX-3130, which she uses as her primary residential line, from the car dealer where she purchased the Elantra. |
| 36. On July 24, 2016, Plaintiff transmitted to Defendant a letter requesting Defendant immediately cease and desist making such unauthorized telemarketing calls to Plaintiff's Residential Land Line (hereinafter the "July 24th Letter"). Further, the July 24th Letter requested that Plaintiff's Residential Land Line number be placed on Defendant's Internal Do-Not-Call Registry… | 51. … Therefore, shortly after the first telemarketing calls from Sirius XM to her phone number ending in 5279, Ms. Campbell asked the company to stop calling her. Nevertheless, Ms. Campbell continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 5279 including beyond the 30-day period following her requests not to be contacted by Sirius XM. |
| | 61. In or about August 2019, Mr. Sadauskas asked Sirius XM to stop calling his phone number ending in 1277 and requested that Sirius XM add his number to the Sirius XM Internal Do-Not-Call Registry. Nevertheless, Mr. Sadauskas continued to receive unauthorized marketing calls from Sirius XM to his phone number ending in 1277 including beyond the 30-day period following his request not to be contacted again by Sirius XM. |
| | 69. During one of the marketing phone calls she received from Sirius XM, Ms. Bickford asked Sirius XM to stop calling her and requested that the company add her to its Internal Do-Not-Call Registry. Nevertheless, Ms. Bickford continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 8744 including beyond the 30-day period following her request not to be contacted again. |
| | 79. In or about 2012, during one of the marketing phone calls she received from Sirius XM, Ms. Mulholland asked Sirius XM to stop calling her and requested that the company add her to its Internal Do-Not-Call Registry. Nevertheless, Ms. Mulholland continued to receive unauthorized marketing calls from Sirius XM to her phone number ending in 3130 including beyond the 30-day period following her request not to be contacted again. |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 39. Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as: **NATIONAL DO-NOT-CALL REGISTRY CLASS:** All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received more than one telephone solicitation call in a 12-month period on their Residential Land Line telemarketing Sirius XM's satellite radio service more than 31 days after registering their telephone number with the National Do-Not-Call Registry and who did not have a prior established business relationship with Defendant and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action. | 81. Plaintiff Sadauskas and Plaintiff Mulholland bring Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as the **Pre-Buchanan National Do-Not-Call Registry Class**: All natural persons in the United States who purchased a car prior to the *Buchanan* Approval Date, received more than one telephone solicitation call in a 12-month period on their residential phone number telemarketing Sirius XM's satellite radio service after the *Buchanan* Approval Date and more than 31 days after registering their telephone number with the National Do-Not-Call Registry, and did not purchase Sirius XM's satellite radio service. 82. Plaintiff Bickford brings the same claim on behalf of the **Post-Buchanan National Do-Not-Call Registry Class**: All natural persons in the United States who purchased a car after the *Buchanan* Approval Date, received more than one telephone solicitation call in a 12-month period on their residential phone number telemarketing Sirius XM's satellite radio service the *Buchanan* Approval Date and more than 31 days after registering their telephone number with the National Do-Not-Call Registry, and did not purchase Sirius XM's satellite radio service. 83. Excluded from these class definitions are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action. |
| 41. Plaintiff brings Count II of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as: **INTERNAL DO-NOT-CALL REGISTRY CLASS** All natural persons in the United States who, from October 16, 2013 to the commencement of this litigation, received one or more telephone solicitation calls on their Residential Land Line telemarketing Sirius XM's satellite radio service after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry and did not provide Defendant prior express written consent to receive such calls. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action. | **INTERNAL DO-NOT-CALL REGISTRY CLASS**: 85. Plaintiffs bring Count II of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as: All natural persons in the United States who received one or more telephone solicitation calls on their residential phone number telemarketing Sirius XM's satellite radio service after the *Buchanan* Approval Date and after registering their telephone number with Defendant's Company-Specific Do-Not-Call Registry, and did not purchase Sirius XM's satellite radio service. 86. Excluded from this class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action. |
| 42. Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery. | 95. Plaintiffs reserve the right to modify the class definitions as they obtain relevant information, including marketing call records, through discovery. |
| 43. The proposed classes can be identified through telephone records and databases used in transmitting the telemarketing calls. | 96. The proposed classes can be identified through telephone records and databases used in transmitting the marketing calls. |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 44. The number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable. | 97. The number of Class Members is believed to be in the millions, rendering the classes so numerous that individual joinder of all class members is impracticable. |
| 45. Plaintiff is a member of both proposed classes. | 98. Plaintiffs are members of some or all the proposed classes. |
| 46. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:<br>a. Did Defendant place, or have placed, telemarketing calls to Plaintiff and the Putative Class Members?<br>b. Whether the Defendant had Prior Express Written Consent to make, or have made on its behalf, each of the calls to Plaintiff's and the Putative Class Members' Residential Land Lines?<br>c. Whether Defendant's conduct violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?<br>d. Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?<br>e. Whether Defendant's conduct violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?<br>f. Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]? | 99. There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:<br>a. Did Defendant place, or have placed, marketing calls to Plaintiffs and the Class Members?<br>b. Whether Defendant's conduct violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?<br>c. Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) [National Do-Not-Call Registry]?<br>d. Whether Defendant's conduct violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?<br>e. Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) [Internal Do-Not-Call Registry]?<br>f. Whether Defendant willfully or knowingly violated the Illinois Telephone Solicitations Act, 815 ILCS 413 *et seq.*?<br>g. Whether Defendant willfully or knowingly violated the North Carolina Telemarketing Law, NC Code § 75-100 *et seq.*?<br>h. Whether Defendant willfully or knowingly violated the Washington Do Not Call Statute, RCW 80.36.390 *et seq.*? |
| 47. Typicality. *Fed. R. Civ. P. 23(a)(3)*. Plaintiff's claims are typical of the claims of the two (2) proposed Putative Classes' Members. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the two (2) proposed Putative Classes. | 100. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the proposed Classes' Members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the proposed Classes. |
| 48. Adequacy. *Fed. R. Civ. P. 23(a)(4)*. Plaintiff is an adequate representative of the two (2) proposed Putative Classes because his interests coincide with, and are not antagonistic to, the interest of the Members of each proposed Putative Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of Members of the two (2) proposed Putative Classes. | 101. **Adequacy**. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the proposed Classes because their interests coincide with, and are not antagonistic to, the interest of the Members of each proposed Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of Members of the proposed Classes. |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 49. Superiority. *Fed. R. Civ. P. 23(b)(3).* Questions of law and fact common to the two (2) proposed Putative Classes' Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the two (2) Putative Classes' Members. | 102. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to proposed Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and/or knowledge, not upon the effect of Defendant's conduct on the Classes' Members. |
| The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the two (2) proposed Putative Classes' Members individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the two (2) proposed Putative Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. | 103. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the proposed Classes individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the members of the proposed Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. |
| 50. Class certification is appropriate because Defendant has acted on grounds generally applicable to the two (2) proposed Putative Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the two (2) proposed Putative Class Members. *Fed. R. Civ. P. 23(b)(2).* | 104. Class certification is appropriate because Defendant has negligently and/or willfully or knowingly acted on grounds generally applicable to the proposed Classes, making appropriate equitable injunctive relief with respect to Plaintiffs and the proposed Class Members. Fed. R. Civ. P. 23(b)(2). |
| **Count I**<br>**Violation of 47 U.S.C. 227(c)**<br>**Telemarketing in violation of the TCPA's National Do-Not-Call provisions** | **Count I**<br>**Violation of 47 U.S.C. § 227(c)**<br>**Telemarketing in violation of the TCPA's National Do-Not-Call provisions** |
| 52. In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the National Do-Not-Call Registry Putative Class, received telemarketing calls promoting the sale of Sirius XM Satellite Radio on Residential Land Lines listed on the National Do-Not-Call Registry. | 106. In violation of 47 U.S.C. § 227(c), Defendants knowingly and willfully placed calls to Plaintiffs Sadauskas and Mulholland and all Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class, telemarketing the sale of Sirius XM Satellite Radio to residential phone numbers listed on the National Do-Not-Call Registry. |

| Complaint | |
| --- | --- |
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 53. Plaintiff and National Do-Not-Call Registry Putative Class Members received more than one such call in a twelve month period. | 107. Plaintiffs Sadauskas and Mulholland and Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class received more than one such call in a twelve month period. |
| 54. By virtue of the foregoing, Defendant violated 47 U.S.C. §227(c) as to Plaintiff and the Class and the National Do-Not-Call Registry Putative Class by initiating, on more than one occasion, a telephone solicitation call to the Residential Land Lines of Plaintiff and the Members of the National Do-Not-Call Registry Putative Class without the prior express written consent or permission of Plaintiff or the Members of the National Do-Not-Call Registry Putative Class, and without there being an established business relationship with the Plaintiff orthe Members of the National Do-Not-Call Registry Putative Class. | 108. By virtue of the foregoing, Defendant negligently and/or knowingly and willfully violated 47 U.S.C. §227(c) as to Plaintiffs Sadauskas and Mulholland and the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class by initiating, on more than one occasion, a telephone solicitation call to the residential phone numbers of Plaintiffs Sadauskas and Mulholland and the Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class without the prior express written consent or permission of Plaintiffs or the Members of the Classes, and without there being an established business relationship with the Plaintiffs or the Members of the Classes. |
| 55. Pursuant to 47 U.S.C. §227(c)(5), Plaintiff and each National Do-Not-Call Registry Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each National Do-Not-Call Registry Putative Class Member. | 109. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiffs Sadauskas and Mulholland and the Members of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class are entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiffs Sadauskas and Mulholland and each Member of the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class. |
| 56. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and National Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future. | 110. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiffs Sadauskas and Mulholland, on behalf of themselves and the Pre-Buchanan National Do-Not-Call Registry Class, and Plaintiff Bickford and the Post-Buchanan National Do-Not-Call Registry Class, also seek injunctive relief prohibiting Defendant's violations of the TCPA in the future. |
| **Count II**<br>**Violation of 47 C.F.R. § 64.1200(d)(3)**<br>**Failure to honor company-specific Do-Not-Call requests** | **Count II**<br>**Violation of 47 U.S.C. § 64.1200(d)(3)**<br>**Failure to honor company-specific Do-Not-Call requests** |

| Complaint | |
|---|---|
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| 58. In violation of 47 C.F.R. § 64.1200(d)(3), Defendant continued to make telemarketing calls to Plaintiff and the Internal Do-Not-Call Registry Putative Class after they were listed on the Defendant's Internal Do-Not- Call Registry. | 112. In violation of 47 C.F.R. § 64.1200(d)(3), Defendant knowingly and willfully continued to make telemarketing calls to Plaintiffs and the Internal Do-Not- Call Registry Class after they were listed on the Defendant's Internal Do-Not- Call Registry. |
| 59. Plaintiff and the Internal Do-Not-Call Registry Putative Class received more than one such call in a twelve month period. | 113. Plaintiffs and the Internal Do-Not-Call Registry Class received more than one suchcall in a twelve-month period. |
| 60. Pursuant to 47 U.S.C. §227(c)(5), Plaintiff and each Internal Do-Not-Call Registry Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Internal Do-Not-Call Registry Putative Class Member. | 114. Pursuant to 47 U.S.C. §227(c)(5), Plaintiffs and each Internal Do-Not-Call Registry Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiffs and each Internal Do-Not-Call Registry Class Member. |
| 61. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and the Internal Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future. | 115. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiffs, on behalf of themselves and the Internal Do-Not-Call Registry Class, also seek injunctive relief prohibiting Defendant's violations of the TCPA in the future. |
| 64. Every paragraph in this Complaint is hereby incorporated into every other paragraph. | 144. Every paragraph in this Complaint is hereby incorporated into every other paragraph. |

| Complaint | |
| --- | --- |
| **Buchanan (Dkt. 1)** | **Campbell (Dkt. 1)** |
| **PRAYER FOR RELIEF**<br>WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:<br>a. Certifying the proposed National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent both the National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class.<br>b. As to the National Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. §227(c)(5), trebled as may be appropriate;<br>c. As to the Internal Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;<br>d. As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to Residential Land Lines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party or at a time when no established business relationship exists between Defendant and the called party;<br>e. As to the Internal Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to Residential Land Lines that are on the Internal Do-Not-Call Registry without first obtaining the prior express written consent of the called party;<br>f. Pre-judgment interest from the date of filing this suit;<br>g. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;<br>h. All costs of this proceeding; and<br>i. All general, special and equitable relief to which Plaintiff and the respective Members of the National Do-Not-Call Registry Class and the Internal Do-Not-Call Registry Class are entitled by law | **PRAYER FOR RELIEF**<br>WHEREFORE, Plaintiffs, on behalf of themselves and as representatives of all other persons similarly situated, pray for judgment against Defendant, awarding relief as follows:<br>a. Certifying the proposed National Do-Not-Call Registry Class and Internal Do-Not-Call Registry Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the National Do-Not-Call Registry Class, Internal Do-Not-Call Registry Class, IDNC Illinois Sub Class, DNC North Carolina Sub Class, IDNC North Carolina Sub Class, and IDNC Washington Sub Class;<br>b. As to the National Do-Not-Call Registry Class, statutory damages of $500 perviolation as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;<br>c. As to the Internal Do-Not-Call Registry Class, statutory damages of $500 perviolation as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;<br>d. As to the IDNC Illinois Sub Class, DNC North Carolina Sub Class, IDNC North Carolina Sub Class, and IDNC Washington Sub Class, statutory damages as provided by law;<br>e. As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to residential phone numbers that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party or at a time when no established business relationship exists between Defendant and the called party;<br>f. As to the Internal Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on its behalf, any additional non-emergency calls to residential phone numbers that are on the Internal Do-Not-Call Registry without first obtaining the prior express written consent of the called party;<br>g. Pre-judgment interest from the date of filing this suit;<br>h. Reasonable attorneys' fees;<br>i. All costs of this proceeding; and<br>j. All general, special and equitable relief to which Plaintiffs and the respective Members of the National Do-Not-Call Registry Class and the Internal Do-Not-Call Registry Class are entitled by law. |
| <u>**Complaint Count**</u>**: 51 identical or substantially similar paragraphs** | |

| Class Certification Motion ||
|---|---|
| **Buchanan (Dkt. 60)** | **Campbell (Dkt. 41)** |
| As detailed below, the proposed classes are ascertainable; satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy; and satisfy the Rule 23(b)(3) requirements of predominance and superiority. | The proposed Class is ascertainable; satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy; and satisfies the Rule 23(b)(3) requirements of predominance and superiority |
| "The threshold for establishing commonality is not high since 'for purposes of Rule 23(a)(2) even a single common question will do.'" *In re Chinese-Manufactured Drywall Products Liab. Litig.*, MDL 2047, 2014 WL 4809520, at *11 (E.D. La. Sept. 26, 2014) (quoting *Dukes*, 131 S. Ct. at 2556). | "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Suchanek*, 764 F.3d at 755 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). |
| Sirius's liability to the DNC Class and IDNC Class members hinges on two key common questions: 1. Did Sirius (or its agents) place two or more calls to individuals' landline numbers without their express written consent, within a year, while those landlines were registered on the National Do-Not-Call Registry? 2. Did Sirius (or its agents) place any calls to any consumer after he or she requested Sirius place her number on its Internal Do-Not-Call Registry? | Here, Plaintiff's TCPA claim raises several fundamental questions that are common to the class, including: (a) whether SiriusXM's telemarketers placed telemarketing calls on behalf of SiriusXM; (b) whether the calls were placed to persons registered for the DNC Registry; and (c) whether SiriusXM's conduct was willful |
| Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). | Rule 23(a)(3) requires Plaintiffs to show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); |
| All of the class members claims arise out of the same legal theories, as typicality requires. | Here, Plaintiffs' claims are likewise typical of the claims of all Class members because they arise from the same course of conduct and under the same legal theory |
| Courts have found typicality where, as here, a defendant's practice of making the same unsolicited contact with plaintiff and the proposed class forms the basis of the class claim. | Courts have therefore found typicality where, as here, a defendant's practice of making the same unsolicited contact with plaintiff and the proposed class forms the basis of the class claim. |
| The "adequacy" prong of Rule 23 requires "the representative parties…fairly and adequately protect the interests of the class." | "Rule 23(a)(4) requires that the named plaintiffs and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier*, 302 F.R.D. at 252 (quoting the Rule). |
| The touchstone for predominance analysis is efficiency. | The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359, 362 (7th Cir. 2012); *accord* 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"). |
| In addition, as the Supreme Court has held, while Rule 23(b)(3) requires that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 133 S. Ct. at 1191. | In addition, as the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 568 U.S. at 459. |
| "[A] Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* Regardless of whether this case is ultimately decided in | In other words, "a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen*, 568 U.S. at 460. Whether |

| Class Certification Motion ||
| Buchanan (Dkt. 60) | Campbell (Dkt. 41) |
|---|---|
| favor of the class, the issue at class certification is whether its resolution will be determined by answering questions common to all class members. | or not this case is ultimately decided in favor of the class, its resolution will be determined by answering questions common to all class members. |
| TCPA claims, by their nature, involve large numbers of plaintiffs who received telemarketing calls using standard scripts, a single defendant, and a common course of conduct that affected each plaintiff in the same way. *See Ira Holtzman, C.P.A.,* 728 F.3d at 684 (discussing how "[c]lass certification is normal in litigation under [the TCPA]."). | TCPA claims, by their nature, involve a common course of conduct—a call campaign—that affects each class member in the same way. *See Ira Holtzman, C.P.A.,* 728 F.3d at 684 (discussing how "[c]lass certification is normal in litigation under [the TCPA]."). |
| **Class Cert Count: [11] similar paragraphs** | **Total Count: 62** |