## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

JULIE CAMPBELL, DIANA BICKFORD
and KERRIE MULHOLLAND, on behalf of
themselves and all others similarly situated,

               Plaintiffs,

   v.

SIRIUS XM RADIO, INC.,

               Defendant.

Case No. 2:22-cv-2261-CSB-EIL

**PLAINTIFFS' RESPONSE TO OBJECTION TO SETTLEMENT**

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ......................................................................................... 1

II.   THE SETTLEMENT AGREEMENT AND CLASS COUNSEL'S
      DECLARATION DIRECTLY ADDRESS OBJECTOR'S SPECULATION .................. 2

III.  LEGAL STANDARD ...................................................................................... 4

IV.   ARGUMENT .................................................................................................. 5

      A.    The Settlement Satisfies Fed. R. Civ. P. 23(e)(2) .................................. 5

      B.    Residual *Cy Pres* Relief Is Permissible Under Seventh Circuit Law, and
            NCLC Is an Appropriate Recipient ......................................................... 7

            1.    Class Counsel Have No Relationship with NCLC. ................................ 7

            2.    Seventh Circuit Law Permits Residual *Cy Pres* Where Direct Class
                  Distribution Has Already Been Prioritized ............................................. 11

            3.    NCLC Has the Requisite Nexus to the Class's Interests ......................... 13

            4.    There Is no *Per Se* Disqualification Based on an Alleged
                  Institutional Affiliation .................................................................. 14

      C.    The Notice Adequately Described the Settlement's Economic Structure ........... 14

            1.    Notice of the Potential *Cy Pres* Distribution Was Adequate .................. 15

            2.    Notice of the Settlement Allocation Was Adequate ............................... 16

      D.    The Notice Was Not Defective Because It Did Not Itemize Which
            Business-Practice Changes Predated the Settlement .......................................... 17

      E.    The Challenged Objection Procedures Did Not Materially Burden Class
            Members' Rights and Caused No Prejudice ....................................................... 17

            1.    Mail Service on Counsel Is Appropriate ............................................... 18

            2.    The Prior-Objection Disclosure Requirement Is Warranted .................... 18

            3.    There Was No Prejudice .................................................................... 19

      F.    Escrow Administration Is Addressed Through the Settlement Agreement
            and a Confirmatory Declaration .......................................................................... 19

V.    CONCLUSION ............................................................................................... 20

**TABLE OF AUTHORITIES**

**PAGE**

**Cases**

*Alcala v. Meyer Logistics, Inc.*,
　　No. 17-cv-7211 PSG, 2019 WL 4452961 (C.D. Cal. June 17, 2019).........................................8

*Allicks v. Omni Specialty Packaging, LLC*,
　　No. 4:19-cv-1038-DGK, 2024 WL 218127 (W.D. Mo. Jan. 19, 2024)...................................8

*Almada v. Kriger Law Firm*,
　　No. 19-cv-2109-MMP, 2025 WL 1311347 (S.D. Cal. May 6, 2025)........................................8

*In re Baby Prods. Antitrust Litig.*,
　　708 F.3d 163 (3d Cir. 2013)...........................................................................................13

*Birchmeier v. Caribbean Cruise Line, Inc.*,
　　896 F.3d 792 (7th Cir. 2018) ...........................................................................11, 15, 16

*Buchanan v. Sirius XM Radio, Inc.*,
　　No. 3:17-cv-00728 (N.D. Tex. Mar. 3, 2022)......................................................................8

*Duncan v. JPMorgan Chase Bank, N.A*,
　　No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 24, 2016),
　　*report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL
　　4411551 (W.D. Tex. June 17, 2016) (finding that the NCLC was an
　　appropriate *cy pres* recipient in a consumer class action)...........................................13

*Durham v. Cont'l Cent. Credit, Inc.*,
　　No. 07-cv-1763-BTM(WMc), 2011 WL 2173769 (S.D. Cal. June 2, 2011)............................9

*Eubank v. Pella Corp.*,
　　753 F.3d 718 (7th Cir. 2014) ...........................................................................................10

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
　　No. 3:18-md-02843-VC (N.D. Cal. Mar. 29, 2023), Dkt. 1130 .............................................18

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
　　934 F.3d 316 (3d Cir. 2019)......................................................................................10, 12

*Hughes v. Kore of Ind. Enter., Inc.*,
　　731 F.3d 672 (7th Cir. 2013) .....................................................................................11, 13

*Ira Holtzman, C.P.A. v. Turza*,
　　728 F.3d 682 (7th Cir. 2013) ...........................................................................................12

# TABLE OF AUTHORITIES
## (continued)

**PAGE**

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ................................................................................................15

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................................................10

*Koeller v. Numrich Gun Parts Corp.*,
    No. 1:22-cv-675 (N.D.N.Y. Dec. 20, 2023), Dkt. 38 ...........................................................18

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018) ...........................................................................2, 9, 11, 13

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) .................................................................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .........................................................................................................14, 17

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ...................................................................................5, 6, 11, 12

*Pearson v. Target Corp.*,
    968 F.3d 827 (7th Cir. 2020) .................................................................................................19

*Rawa v. Monsanto Co.*,
    No. 4:17-cv-01252 AGF, 2018 WL 2389040 (E.D. Mo. May 25, 2018) .................................9

*Reid v. I.C. Sys.*,
    No. 12-cv-02661-PHX-ROS, 2021 WL 4710779 (D. Ariz. Sept. 2, 2021) .............................8

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .................................................................................................17

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) .......................................................................................7, 10, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...........................20

*Wachala v. Astellas US LLC*,
    No. 1:20-cv-03882 (N.D. Ill. June 29, 2023), Dkt. 231 .......................................................18

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ...................................................................................................5

**TABLE OF AUTHORITIES**
**(continued)**

**PAGE**

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 ......................................................... *passim*

**Court Rules**

Fed. R. Civ. P. 5(b)(2)(C) ...................................................................................................18

Fed. R. Civ. P. 23 .....................................................................................................14, 15, 16

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................17

Fed. R. Civ. P. 23(e) ...........................................................................................................2

Fed. R. Civ. P. 23(e)(2)................................................................................................4, 5, 6

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................6

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................6

Fed. R. Civ. P. 23(e)(5)......................................................................................................19

**Treatises**

ALI, Principles of the Law of Aggregate Litigation § 3.07 cmt. b.................................10

**Other Authorities**

*Claim Form,* SXM TCPA Settlement,
   www.sxmtcpasettlement.com/docs/Claim_Form.pdf (last visited Apr. 10,
   2026) ..............................................................................................................................16

*Elizabeth J. Cabraser,* Lieff Cabraser Heimann & Bernstein,
   https://www.lieffcabraser.com/attorneys/elizabeth-j-cabraser/ (last visited Apr.
   10, 2026) ........................................................................................................................8

*Jones Day: Values*, Jones Day, https://www.jonesday.com/en/values (last visited
   Apr. 10, 2026).................................................................................................................14

*SXM TCPA Settlement: Contact*, SXM TCPA Settlement,
   https://www.sxmtcpasettlement.com/contact-us (last visited Apr. 10, 2026) ...........3

**TABLE OF AUTHORITIES**
**(continued)**

**PAGE**

*SXM TCPA Settlement: Important Documents,* SXM TCPA SETTLEMENT,
     https://www.sxmtcpasettlement.com/important-documents (last visited Apr.
     10, 2026) ....................................................................................................................3

## I.     INTRODUCTION

Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland ("Plaintiffs") respectfully submit this response to the Objection to Proposed Settlement filed by Adam E. Schulman of the Center for Class Action Fairness ("CCAF" or "Objector").

After years of hard-fought litigation, the parties reached a settlement establishing a $28 million non-reversionary common fund for the benefit of a class of consumers who received telephone calls from Sirius XM Radio Inc. ("Sirius XM" or "Defendant") despite their registration for the National Do Not Call List and in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "Settlement").  The Settlement provides substantial, direct monetary relief to Class Members. Every Class Member who filed a timely and valid claim will receive a *pro rata* cash payment from the Settlement Fund. Class Action Settlement Agreement & Release, Dkt. 121-1 ("Settlement Agreement") § 18.1(b).  If any residual funds remain, Class Members will receive a second cash payment. *Id.*  If any residual funds remain after the second cash payment, those funds will be distributed "subject to Court approval" to the National Consumer Law Center ("NCLC"), a nationally recognized consumer-protection organization whose mission bears a direct and substantial nexus to the interests of the Class.  *Id.* § 18.3. The Settlement Agreement further provides that no funds distributed to the NCLC may be used for litigation.  *Id.*  These procedures comport with best practices and Seventh Circuit authority by requiring Settlement Funds to go directly to Class Members and permitting a small *cy pres* award only if it is not administratively feasible to direct residual funds to Class Members.

Objector's purported "conflict of interest" with NCLC does not exist. The volunteer activities of one attorney (who had no role in or knowledge of the Settlement Agreement, the settlement terms, or the selection of a proposed *cy pres* recipient in this case) present no conflict.

Indeed, any connection to NCLC from volunteering is "innocuous" and no basis for objection. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 206 (N.D. Ill. 2018) (rejecting CCAF objection based on the class counsel's volunteer activities with NCLC and holding that "the selection of NCLC as *cy pres* recipient is reasonable, and will tend to further the goals of the TCPA"). Moreover, because any *cy pres* recipient (if any *cy pres* distribution is even necessary) is subject to Court approval, the Court would remain free to approve or reject NCLC as the recipient should Class Counsel request a *cy pres* distribution.

Sadly, Objector's filing is the latest in a long line of serial objections by CCAF. CCAF and its counsel are well-known as professional objectors. Their settlement objections largely ask this Court to impose categorical rules that do not exist in Seventh Circuit law.

As demonstrated below, each of Objector's arguments fails on the merits. The Court should determine whether the Settlement is fair, reasonable, and adequate and whether the requested attorneys' fee reflects a reasonable market-based award in light of the recovery achieved, the risks of the litigation, and the quality of representation. Fed. R. Civ. P. 23(e). Under that standard, the Court should overrule the objections in their entirety and grant final approval.

## II.    THE SETTLEMENT AGREEMENT AND CLASS COUNSEL'S DECLARATION DIRECTLY ADDRESS OBJECTOR'S SPECULATION

Much of Objector's objection either ignores the comprehensive settlement notice plan or relies on speculation.

The Court-approved notice plan had several components. First, Class Members received individual notice and a claim form by U.S. mail and/or email summarizing the key settlement terms. *See* Settlement Agreement, Exs. E1, E2, & E3. By design, that notice used plain language and employed a less-is-more approach to ensure that Class Members read every word

and did not discard the notice.  Second, class notices directed Class Members to visit the Settlement Website, call the Settlement's toll-free number, or scan the Settlement QR code.  *See id*.  Each method allowed each Class Member to access full and complete information about the Settlement.  The Settlement Website contained the full text of the long-form settlement notice (in English and Spanish) and the Settlement Agreement.  *See SXM TCPA Settlement: Important Documents,* SXM TCPA SETTLEMENT, https://www.sxmtcpasettlement.com/important-documents (last visited Apr. 10, 2026).  The notice plan therefore gave all Class Members free access to every settlement provision contained in the Settlement Agreement.

Thus, Objector's assertion that the notice "omits" information is false.  The information that Objector claims is missing—the *pro rata* allocation plan, the lengthy list of required practice changes, the potential *cy pres* residual distribution, Class Counsel's fee application and supporting declaration—was all included in the notice plan.  Objector's assertion that the Settlement Website essentially "doesn't count" is particularly disingenuous because CCAF admits that its client "submitted a claim through the settlement website," Dkt. 138 at 2, as did approximately 366,880 Class Members.  Declaration of Rebecca L. Taylor of Angeion Group, LLC Re: Parties' Response to Objection ("Taylor Decl.") ¶5.  Class Members clearly accessed and read the Settlement Website—and Objector knows this.  To the extent any Class Member wanted additional information, they could—and did—contact the Settlement Administrator or Class Counsel. *See SXM TCPA Settlement: Contact*, SXM TCPA SETTLEMENT, https://www.sxmtcpasettlement.com/contact-us (last visited Apr. 10, 2026). Class Members accordingly contacted the Settlement Administrator (as well as Class Counsel) with questions regarding the Settlement. Taylor Decl. ¶4.   The Settlement Administrator received 1,754,213

Settlement Website sessions, 3,535,782 page views, and 7,423 calls, totaling approximately 30,562 minutes. *Id.*

As such, the notice program clearly set forth all Settlement terms, and, in particular, the Settlement's monetary and non-monetary relief. These notice procedures were effective. All Class Members will benefit from Defendant's practice changes and approximately 400,880 Class Members have filed claims by email or mail to receive their *pro rata* share of the Settlement Fund. *See* Taylor Decl. ¶4.

Despite these clear benefits to Class Members from an excellent Settlement, Objector speculates that Class Counsel did not act in the Class's best interests in negotiating certain Settlement provisions. Objector's speculation is not well-taken. It assumes the worst of Class Counsel who, at all times, have endeavored to act solely in the best interests of Plaintiffs and Class Members. Plaintiffs therefore respond below with the facts, not with abstractions. The Parties and counsel of record in this case have no connection to the potential *cy pres* recipient. *See* Declaration of Daniel M. Hutchinson ("Hutchinson Decl.") ¶13. No one from, or affiliated with, the potential *cy pres* recipient played any role in this case or the Settlement Agreement. *Id.* The Settlement Administrator played no role in the selection of the Escrow Agent. *Id.* ¶7.

## III.    LEGAL STANDARD

As will be further described in Plaintiffs' forthcoming motion for final approval of the Settlement, under Rule 23(e)(2) a district court may approve a class settlement only upon finding that it "is fair, reasonable, and adequate" after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided to the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

4

The district court serves as "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (citation omitted). But the Court's role as fiduciary is to determine whether the proposal before the Court is fair, reasonable, and adequate, not to reject a settlement because a different settlement structure might theoretically have been possible. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635-37 (7th Cir. 2011).

## IV.    ARGUMENT

### A.    The Settlement Satisfies Fed. R. Civ. P. 23(e)(2)

The question before the Court is not whether an objector can hypothesize a different notice format, a different residual *cy pres* recipient, or additional explanatory disclosures. The question is whether the proposed Settlement, considered as a whole, is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2). This Settlement readily meets that standard.

First, the Settlement provides substantial direct monetary relief through a non-reversionary common fund of $28 million gross and approximately $26.65 million net (after payment of a capped amount of no more than $1,350,000 in settlement notice and administration costs). That structure matters. This is not a coupon settlement, not a claims-made arrangement under which Defendant retains unpaid amounts, and not a *cy-pres*-only resolution. Net settlement funds are directed first to Class Members through direct cash payments, followed by a second cash distribution if any unclaimed funds remain, with a potential *cy pres* component operating only residually if any funds still remain after the claims process and the two rounds of case distributions are complete. Settlement Agreement §§ 18.1(b) & 18.3. In other words, the *cy pres* component applies only when the residual funds are insufficient to allow a third-round distribution to the Class. Under the Settlement's plain terms, this amount will likely be a "de minimis amount" when compared to the gross benefit to the Class. *See id.* § 18.1(b).

5

Second, the Settlement Agreement was negotiated at arm's length by Class Counsel and counsel for Defendant after extensive litigation and with the assistance of two well respected mediators. Fed. R. Civ. P. 23(e)(2)(B) asks whether the proposal is the product of arm's-length bargaining, not whether an objector can imagine additional provisions that might have been negotiated.

Third, the adequacy-of-relief inquiry under Fed. R. Civ. P. 23(e)(2)(C) confirms approval is warranted. The rule directs the Court to consider, among other things, the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any requested fee award; and any agreements made in connection with the proposal. Here, the Settlement avoids substantial merits and certification risks, creates a straightforward claims process, and preserves all funds for class benefit rather than reversion.

Finally, the Seventh Circuit has repeatedly instructed district courts to scrutinize class settlements realistically, with close attention to whether the class receives a genuine benefit. That concern is fully satisfied here because the Settlement's core value is direct cash relief to the Class from a fixed non-reversionary fund. *See Pearson*, 772 F.3d 778. Unlike the settlements criticized in those cases, this agreement does not divert the principal value of the Settlement away from the Class.

For all of these reasons, Objector's criticisms do not establish a failure of Fed. R. Civ. P. 23(e)(2). At most, they identify discrete subjects for which the Settlement Agreement and Class Counsel provide clear answers. All four factors of Rule 23(e)(2) weigh decisively in favor of final approval.

6

**B.** **Residual *Cy Pres* Relief Is Permissible Under Seventh Circuit Law, and NCLC Is an Appropriate Recipient**

The Objector's principal merits challenge concerns the Settlement's residual *cy pres* provision. That challenge fails for four independent reasons: (1) the attorney who volunteers for NCLC is not class counsel and played no role in this case or the consideration of the *cy pres* recipient; (2) Seventh Circuit law permits residual *cy pres* where further direct distribution is not feasible or would provide no meaningful additional benefit; (3) NCLC's mission bears a direct relationship to the consumer-protection interests underlying this TCPA case; and (4) the alleged affiliation issue does not create a *per se* disqualification and can be fully addressed through disclosure and record confirmation.

To the extent the Court believes additional transparency is warranted, that concern is fully addressed through disclosure and record supplementation rather than disqualification. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 716 (7th Cir. 2015). Nothing in the record suggests self-dealing, and the structure of the Settlement (direct payments to the Class first, with *cy pres* only as a residual mechanism) confirms that the Class remains the primary beneficiary of the recovery.

**1.** **Class Counsel Have No Relationship with NCLC.**

The factual premise of Objector's *cy pres* objection is incorrect because Class Counsel have no direct relationship of any kind with NCLC.  Hutchinson Decl. ¶13.

Elizabeth Cabraser is not Class Counsel.  She is not counsel of record and has never worked on this case. *Id.* ¶14.  Class Counsel never discussed this case or NCLC with Elizabeth Cabraser. *Id.* ¶¶14, 20.  Elizabeth Cabraser played no role in the selection of NCLC as a potential *cy pres* recipient in this case. *Id.* ¶15.  In fact, before Objector filed its objection, Elizabeth Cabraser was not aware of the Settlement Agreement, the Settlement's terms, or that

7

NCLC had been proposed as a potential *cy pres* recipient in this case.  *Id.* ¶20.[1]  Nor were Class Counsel aware of Elizabeth Cabraser's volunteer association with NCLC at the time the parties agreed to propose NCLC.  *Id.*  ¶18.

If this were not enough to show that Elizabeth Cabraser had no connection to the selection of NCLC as a potential *cy pres* recipient in this case, there is also strong circumstantial evidence because Sirius XM agreed to the selection of NCLC as a potential *cy pres* recipient in the *Buchanan* case in 2022, years before Elizabeth Cabraser joined the NCLC board in 2024.[2]  *See Buchanan v. Sirius XM Radio, Inc.*, No. 3:17-cv-00728 (N.D. Tex. Mar. 3, 2022), at Dkt. 132.  Because the court approved NCLC as a *cy pres* recipient in *Buchanan*, the parties believed that it would be an appropriate potential recipient of residual funds here.

Likewise, because NCLC has long been a common recipient of *cy pres* funds in consumer class actions, there is nothing unusual about its selection here.  *E.g., Almada v. Kriger Law Firm*, No. 19-cv-2109-MMP, 2025 WL 1311347, at *4 (S.D. Cal. May 6, 2025) (awarding *cy pres* to NCLC and collecting cases that also awarded *cy pres* to NCLC); *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-cv-1038-DGK, 2024 WL 218127, at *2 (W.D. Mo. Jan. 19, 2024) (awarding *cy pres* to NCLC because it is "a national organization providing legal services to vulnerable consumers"); *Reid v. I.C. Sys.*, No. 12-cv-02661-PHX-ROS, 2021 WL 4710779, at *3 (D. Ariz. Sept. 2, 2021) (approving NCLC as *cy pres* recipient in TCPA action); *Alcala v. Meyer Logistics, Inc.*, No. 17-cv-7211 PSG (AGRx), 2019 WL 4452961, at *10 (C.D. Cal. June

---

[1] Class Counsel have submitted a declaration attesting to these facts and Ms. Cabraser has expressed her willingness to submit a declaration as well.

[2] *See Elizabeth J. Cabraser,* LIEFF CABRASER HEIMANN & BERNSTEIN, https://www.lieffcabraser.com/attorneys/elizabeth-j-cabraser/ (last visited Apr. 10, 2026) (listing Elizabeth Cabraser's Professional Associations).  Ms. Cabraser was an NCLC member and volunteer for many years before her Board appointment.

17, 2019) (awarding *cy pres* to NCLC); *Rawa v. Monsanto Co.*, No. 4:17-cv-01252 AGF, 2018 WL 2389040, at *11-12 (E.D. Mo. May 25, 2018) (same); *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-cv-1763-BTM(WMc), 2011 WL 2173769, at *2 (S.D. Cal. June 2, 2011) (same).

Notably absent from Objector's brief is any mention of *Leung v. XPO Logistics, Inc.* This is a decision from the Northern District of Illinois, in a TCPA class action, involving the same proposed *cy pres* recipient, NCLC. The class counsel in *Leung* "formerly worked with some of the lawyers involved in NCLC's 'Partners Council' and has spoken at some of NCLC's conferences." *Leung*, 326 F.R.D. at 206 (footnote omitted). CCAF raised the same argument it advances here: that class counsel's volunteer connections to NCLC rendered it an inappropriate *cy pres* designee. *Id.* at 205-06. The court rejected that argument, finding those connections "innocuous" and holding that "[i]t is also not surprising that plaintiffs' lawyers working in the field of consumer protection would have connections to nonprofits doing similar work." *Id.* at 206. The court further found that "[n]othing about these connections suggests that [c]lass [c]ounsel is trying to 'curry favor' by designating NCLC as a *cy pres* recipient[,]" and approved NCLC as a recipient whose selection "is reasonable, and will tend to further the goals of the TCPA." *Id.*

The connections at issue in *Leung*—where lead class counsel had spoken at NCLC conferences and worked with attorneys involved in NCLC's Partners Council—were more concrete and direct than the objection alleged here (where the attorney who volunteered for NCLC is not counsel of record and played no role in this case). CCAF, as a sophisticated objector with an institutional track record of litigating *cy pres* issues, cannot credibly claim unawareness of its prior objection and this on-point authority applying Seventh Circuit law. Its silence on *Leung* is telling.

The case law Objector does cite is just as unhelpful to its arguments. It relies on a Third Circuit case stating that a "significant prior affiliation" is one that "would raise substantial questions . . . whether the selection of the recipient was made on the merits." *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 331 (3d Cir. 2019) (quoting Am. Law Inst., *Principles of the Law of Aggregate Litigation* § 3.07 cmt. b. (2010)). This is not a standard the Seventh Circuit has recognized, but it is also not one that Objector has shown is met here.

The conflicts in Objector's cited cases are of a categorically different character. In *Google*, the affiliations at issue included Google's *direct financial relationships* with the recipient organizations and Google's contractual right to veto proposed recipients. *Id.* at 330-31. In *Knapp*, the only case involving NCLC, the court found disqualifying a relationship where "class counsel's firm is co-counsel with NCLC in another matter," and on that narrow basis alone directed the parties to nominate a different designee. *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 835 (N.D. Cal. 2017). The active, ongoing, direct professional relationship in *Knapp* between the case-handling firm and the recipient is nothing like a volunteer board seat held by a partner with no role in this litigation. *In re Southwest Airlines Voucher Litigation* and *Eubank v. Pella Corp.* are not *cy pres* cases, and concern the adequacy of class representatives who are involved in direct financial or familial relationships with lead class counsel in the very case being litigated. *See In re Sw. Airlines*, 799 F.3d at 704 (concerning a "financial and professional relationship between lead class counsel and one of the lead plaintiffs"); *Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014) (explaining that "it was improper for the lead class counsel to be the son-in-law of the lead class representative").

None of these cases involved a non-case partner's honorary, volunteer board position, let alone one held without the knowledge of actual case counsel and without any role in the

10

selection of the *cy pres* recipient. Elizabeth Cabraser is not counsel of record, played no role in this litigation, and was unaware that NCLC had been proposed as a *cy pres* recipient until Objector filed its objection. Class Counsel, in turn, were unaware of her volunteer association with NCLC at the time the parties agreed to propose it. The Settlement further provides that no *cy pres* funds may be used for litigation of any kind. Objector has not identified how any "significant prior affiliation" exists under these facts. It has merely argued that a disqualifying standard should exist—a standard unrecognized in this Circuit—and then pointed to cases where the relationships at issue bore no resemblance to what is alleged here. As in *Leung*, the Objector's baseless objection should be overruled. *See Leung*, 326 F.R.D. at 206.

### 2. Seventh Circuit Law Permits Residual *Cy Pres* Where Direct Class Distribution Has Already Been Prioritized

The Seventh Circuit expressly permits *cy pres* awards under the exact circumstances here—subject to Court approval and after direct distribution of settlement funds to class members. *See Pearson*, 772 F.3dat 784 (*cy pres* is limited to money that cannot feasibly be awarded to class members); *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 794 (7th Cir. 2018) (holding class notice adequate where it advised that a *cy pres* recipient might be selected after a second round of payments). Likewise, in *Hughes*, the Seventh Circuit explained that *cy pres* may be appropriate where tiny additional distributions would not produce meaningful compensation and where a recipient concerned with consumer-protection issues would better serve the indirect interests of the class. *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013).

This case fits that model, if residual funds remain at all: direct compensation comes first, and the residual mechanism exists only to ensure that remaining funds continue to benefit the Class's broader consumer-protection interests rather than revert to Sirius XM. Settlement

11

Agreement §§ 18.1(b) & 18.3.  That is precisely the sort of residual mechanism Seventh Circuit law permits. *See also Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997).

Objector's cited cases are not to the contrary.  *See In re Google*, 934 F.3d at 326 (describing the "usual *cy pres* case" as one where "money from a class settlement fund remains after distributions to class members"); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (explaining that *cy pres* distribution of remainders is appropriate after "claims from class members have been paid" and that "[m]oney not claimed by class members should be used for the class's benefit to the extent that is feasible").  In *Pearson*, the court criticized a guaranteed *cy pres* award of $1.13 million because the record had not shown why the money could not feasibly be distributed to class members. 772 F.3d at 784. But the court did not hold *cy pres* unlawful. To the contrary, it reaffirmed the ordinary rule that *cy pres* is appropriate only for funds that cannot feasibly be awarded to the intended beneficiaries.  *Id.*  That principle is fully respected here because the Settlement directs funds first to Class Members, and only residual amounts remaining after the claims process would be sent to a recipient aligned with the Class's interests.

Objector's *cy pres* argument is further weakened by the actual structure of the Settlement Agreement. This is not a *cy-pres*-only settlement in which Class Members receive nothing while third-parties receive the monetary value.  Aside from the per member figure being reasonable under the TCPA's statutory damages model, the Settlement Fund here is designed to provide direct cash payments to claiming Class Members; *cy pres* arises, if at all, only after the direct-distribution process has run its course. Courts have repeatedly drawn a line between *cy-pres*-only settlements and settlements that provide direct relief first, with only residual funds *distributed cy*

12

*pres. See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). This case falls squarely in the latter category.

### 3.    NCLC Has the Requisite Nexus to the Class's Interests

NCLC is not an arbitrary group.  It is a nationally recognized consumer-protection organization whose work includes issues directly related to abusive telemarketing, unwanted calls, consumer financial protection, and the enforcement of rights affecting consumers nationwide.  A residual award to NCLC therefore bears the requisite nexus to the interests advanced by this TCPA action.  That is exactly the kind of alignment that courts evaluating *cy pres* have required. *See Hughes*, 731 F.3d 672.  The objection does not contend that NCLC lacks any connection to consumer protection; it instead seeks categorical disqualification based on an alleged affiliation.  That is a different question, and one the governing authorities do not answer in Objector's favor.

Courts in this Circuit have approved NCLC as an appropriate recipient in TCPA settlements, and at least one court in this Circuit has rejected the contention that routine professional connections between consumer lawyers and NCLC render the organization conflicted.  *See, e.g., Duncan v. JPMorgan Chase Bank, N.A*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *17 (W.D. Tex. May 24, 2016) (finding that the NCLC was an appropriate *cy pres* recipient in a consumer class action), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016); *Leung*, 326 F.R.D. at 206 (finding that "the selection of NCLC as *cy pres* recipient is reasonable, and will tend to further the goals of the TCPA").  While Objector points to positions NCLC has taken in unrelated litigation and policy debates, those positions have no bearing on the instant litigation—because the Settlement

13

Agreement strictly prohibits any use of funds for litigation[3]—and as such should be, at best, preserved for the water cooler as the point does not answer the actual Rule 23 inquiry.

### 4. There Is no *Per Se* Disqualification Based on an Alleged Institutional Affiliation

Objector overstates the law by implying that any relationship between an attorney in counsel of record's firm and a proposed *cy pres* recipient automatically invalidates the recipient. No controlling Seventh Circuit decision adopts such a categorical rule, and the Objector has failed to identify such a decision. The practical limits of such a rule are obvious (or, at least, should be). The 125+ attorneys at LCHB volunteer for hundreds of organizations. Hutchinson Decl. ¶16. Ms. Cabraser alone volunteers for 25 different organizations. *Id.* ¶17. Sirius XM's counsel at Jones Day reports 2,500 attorneys, who presumably volunteer for thousands of organizations. *See Jones Day: Values*, JONES DAY, https://www.jonesday.com/en/values (last visited Apr. 10, 2026). A *per se* rule would encompass thousands of attorneys in this case alone. As discussed above, none of the cases cited by Objector contain or support such a *per se* rule.

In any case, Class Counsel have submitted a declaration sharing the full extent of their knowledge to address Objector's concerns. Ms. Cabraser has shared with Class Counsel that she is willing to submit a declaration further confirming that she played no role in this case. Class Counsel are at the Court's pleasure if the Court desires anything more.

### C. The Notice Adequately Described the Settlement's Economic Structure

The touchstone of notice is practical adequacy, not encyclopedic detail. Under *Mullane*, the notice must provide the information necessary for Class Members to make an informed decision whether to submit a claim, object, or opt out. It need not function as a mini-brief reproducing every operative provision of the Settlement Agreement. *See Mullane v. Cent.*

---

[3] Settlement Agreement § 18.3.

*Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Here, the notice informed Class Members that the case had settled for a fixed common fund, described how to file a claim, provided the relevant deadlines, and directed Class Members to the Settlement Website and Settlement Agreement for additional detail.  That is sufficient under Rule 23, especially where all class members are treated alike under a uniform allocation method and there is no claim that one subgroup was favored over another.

### 1.    Notice of the Potential *Cy Pres* Distribution Was Adequate

The Seventh Circuit rejected a materially similar *cy pres* notice objection in *Birchmeier*, holding it sufficient that the notice informed class members that a *cy pres* recipient might later be selected, explained how class members could recommend recipients, and directed them to additional sources of information.  That is the proper level of generality for settlement notice.  *Birchmeier*, 896 F.3d at 798.  Objector cites *Katrina*, a Fifth Circuit decision that does not compel a different result.[4]

To the extent Objector argues that the notice should have identified the specific *cy pres* recipient or disclosed additional details regarding potential affiliations, the Objector is factually incorrect.  Here, the notice program included the Settlement Website, where NCLC was identified as a potential *cy pres* recipient, and Class Counsel themselves had no affiliation with NCLC.  To the extent that any additional disclosure is warranted, it has now occurred by this brief and its supporting declaration.  Any issue can be readily cured without disturbing the

---

[4] *Katrina* involved a mandatory-class settlement that created serious concern absent class members might receive no direct compensation while a *cy pres* distribution substituted for individual relief.  Here, by contrast, the Settlement provides direct cash relief to claiming class members from a substantial common fund, and *cy pres* arises only as a true residual mechanism after two rounds of distributions have been made and stale checks resolved.  *In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010).

Settlement.  *See In re Sw. Airlines*, 799 F.3d at 716.  That approach fully protects the interests of the Class while preserving a Settlement that provides substantial direct monetary relief.

The Seventh Circuit has rejected an identical argument, stating: "We can quickly dispose of [the objector's] remaining argument: He insists that the notice sent to the class insufficiently described the process for selecting a *cy pres* recipient. Not so."  *Birchmeier*, 896 F.3d at 798.  The court found it sufficient that the notice told class members that a *cy pres* recipient might be selected, gave instructions for recommending recipients, and provided a website where members could learn more about the Settlement.  *Id.*  Here, as in *Birchmeier*, the notice informed Class Members of the *cy pres* provision and directed them to the Settlement Website for additional details.

### 2.    Notice of the Settlement Allocation Was Adequate

As to the allocation methodology, Rule 23 requires fair communication of the Settlement's economic structure.  Class Members clearly understood from the plain language of the class notices that, by filing a claim, they would receive a proportionate share of the Settlement Fund.  Indeed, contrary to Objector's assertion that this information was "buried," the first page of the claim form states:  "Class Members who submit valid and timely Claim Forms will receive a *pro rata* share of the $28 million Settlement Fund after payment of costs related to required notices, any administrative costs, Class Counsels' attorneys' fees, any incentive awards, all costs, and any other expenses related to this Settlement have been paid."  Settlement Agreement at Ex. E3; *see also Claim Form,* SXM TCPA SETTLEMENT,
www.sxmtcpasettlement.com/docs/Claim_Form.pdf (last visited Apr. 10, 2026).  Indeed, the detailed mechanics remain in the Settlement Agreement and Settlement Website materials. *See Birchmeier*, 896 F.3d at 798.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances." The notice must convey sufficient information for class members to make informed decisions about whether to opt out, object, or file a claim. *See Mullane*, 339 U.S. at 317. It need not contain every mechanical detail of allocation, every possible residual-distribution contingency, or billing data regarding counsel's lodestar. No Seventh Circuit authority requires that the notice separately itemize the allocation formula.

**D.    The Notice Was Not Defective Because It Did Not Itemize Which Business-Practice Changes Predated the Settlement**

Objector separately complains that the Settlement describes certain business-practice changes "to the extent not presently utilized" without identifying which measures predated the Settlement Agreement. That criticism does not warrant denial of final approval.

As a legal matter, Plaintiffs agree that only incremental relief counts in evaluating settlement value. The Seventh Circuit has emphasized that district courts should focus on the actual benefit secured by the settlement rather than on relief the defendant had already provided voluntarily. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002). But that principle does not help Objector here for two reasons.

First, Objector's argument ignores the substantial common fund providing direct cash relief to the Class. Second, the business-practice changes are in addition to that central monetary recovery. This is, therefore, not a case in which the Settlement's fairness depends on attributing inflated value to illusory injunctive relief.

**E.    The Challenged Objection Procedures Did Not Materially Burden Class Members' Rights and Caused No Prejudice**

Objector also attacks the mechanics for submitting objections and exclusions, including the requirement that objections be served by mail on counsel and that objectors disclose certain prior objection history. Those complaints do not justify denial of approval. To the contrary,

17

they are identical to the provision in countless other class action settlements.  *See Koeller v. Numrich Gun Parts Corp.*, No. 1:22-cv-675 (N.D.N.Y. Dec. 20, 2023), Dkt. 38 at 8–9  (order granting preliminary approval of class action settlement and directing class notice); *In re Facebook, Inc. Consumer Privacy User Profile Litig.,* No. 3:18-md-02843-VC (N.D. Cal. Mar. 29, 2023), Dkt. 1130 at 4–5 (order certifying settlement class and granting preliminary approval of class action settlement); *Wachala v. Astellas US LLC*, No. 1:20-cv-03882 (N.D. Ill. June 29, 2023), Dkt. 231 at 12 (order granting motion for preliminary approval of class action settlement). That is presumably why the Court approved these same procedures here.  Plaintiffs respectfully submit that, where objections—and particularly professional objectors—threaten to delay or overturn a class settlement that would benefit millions of people, they should at least be required to comply with minimum procedures such as providing notice to the Court, notice to the parties, and background information about their objection(s).

### 1.    Mail Service on Counsel Is Appropriate

Service by mail remains a standard method authorized by the Federal Rules. *See* Fed. R. Civ. P. 5(b)(2)(C).  It remains so even in the digital age because mail does not get caught in a spam filter or disappear if one character is mistyped.  Class Counsel have a duty to review and respond to objections.  They cannot do that if they do not promptly and reliably receive copies of an objection from a trusted source.  Requiring an objector in a large class action to serve counsel of record by mail imposes, at most, a modest administrative burden.  It does not extinguish the right to object, as this very objection confirms.

### 2.    The Prior-Objection Disclosure Requirement Is Warranted

The same is true of the requirement that objectors disclose prior objections.  The Court and the parties should be aware of serial objectors such as CCAF.  Reasonable disclosures

18

designed to illuminate whether an objection arises in good faith or as part of a broader objector practice are appropriate.

Indeed, the 2018 amendments to Rule 23(e)(5) were enacted against a recognized background concern with bad-faith objector tactics and side settlements. The Seventh Circuit has acknowledged those concerns and held that objectors who obtain consideration for abandoning an appeal assume obligations to the class and may not privately settle away class interests without court approval. *See Pearson v. Target Corp.*, 968 F.3d 827, 830 (7th Cir. 2020). That history confirms that the concern underlying a disclosure requirement is legitimate.

In any event, the challenged disclosure requirement caused no prejudice here. Objector complied, filed his objection, and fully presented his arguments. At most, if the Court concludes that the requirement was unnecessary, the Court may disregard it as immaterial to approval or direct that similar language not be used in future notice. It is not a basis to deny a settlement that otherwise benefits the Class.

### 3.    There Was No Prejudice

In fact, the most immediate problem with Objector's challenge is the absence of prejudice. Objector received notice, submitted a claim, filed a detailed objection, served the required recipients, and will be heard at the fairness hearing. He therefore cannot show that the challenged procedures deprived him of a meaningful opportunity to object. Nor has he identified any class member who wished to object but was unable to do so because of the service requirements.

### F.    Escrow Administration Is Addressed Through the Settlement Agreement and a Confirmatory Declaration

Objector's final point concerns whether the claims administrator has an undisclosed arrangement with the bank holding settlement funds that could affect the interest earned on the

19

qualified settlement fund. It does not, nor was there any basis for Objector's speculation. The Settlement Agreement provides that Class Counsel was and is solely responsible for establishing the escrow account and selecting the escrow agent. Settlement Agreement § 7.1; Hutchinson Decl. ¶3. That is exactly what happened here.

Class Counsel identified Citibank, N.A. ("Citibank") to serve as the Escrow Agent for this matter. Hutchinson Decl. ¶4. Class Counsel negotiated the terms of an escrow agreement. *Id.* As required by the Settlement Agreement, Sirius paid $28,000,000 into the Escrow Account, where the Escrow Funds have accumulated interest at market rates. *Id.* ¶5. The Settlement Administrator played no role in the selection of Citibank, and has had no role in the Escrow Fund. *Id.* ¶7. As Objector acknowledges, Class Counsel shared these facts (which, again, were obvious from the Settlement Agreement), but Objector still objected. Why? Presumably because CCAF is in the business of objecting, regardless of how strong the settlement or how much class counsel obtains for the class. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *4 (N.D. Cal. Mar. 17, 2017) (overruling CCAF's objection to Volkswagen "Clean Diesel" settlement providing consumers *billions* in compensation). Objector's objections should each be overruled so that the Class can benefit from the Settlement that Plaintiffs and Class Counsel obtained.

## V.    CONCLUSION

For the foregoing reasons, Objector's objections should be overruled.

20

Dated:  April 10, 2026

Respectfully submitted,


By: */s/ Daniel M. Hutchinson*
Daniel M. Hutchinson
Jahi L. Liburd
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com
Email: jliburd@lchb.com

Mason A. Barney
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 532-1091
Email: mbarney@sirillp.com

Jarrett L. Ellzey
ELLZEY & ASSOCIATES, PLLC
4200 Montrose Blvd., Ste. 200
Houston, TX 77006
Telephone: (888) 350-3931
Email: Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

*Counsel for Plaintiffs and the Proposed Class*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.


*/s/ Daniel M. Hutchinson*
Daniel M. Hutchinson