E-FILED
Wednesday, 15 April, 2026  10:11:53 PM
Clerk, U.S. District Court, ILCD

**THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| JULIE CAMPBELL, DIANA BICKFORD and KERRIE MULHOLLAND, on behalf of themselves and all others similarly situated, | |
| Plaintiffs | Case No.  2:22-cv-02261-CSB-EIL |
| v. | |
| SIRIUS XM RADIO, INC., | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................3

   I.   SUMMARY OF THE LITIGATION ................................................................3

   II.   SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT.......................3

      A.  Settlement Class...............................................................................3

      B.  Settlement Benefits ..........................................................................4

      C.  Preliminary Approval, Notice, and Claims .................................................6

      D.  Exclusions and Objections ..................................................................7

ARGUMENT .....................................................................................................................8

   I.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE............8

      A.  Rule 23(a) Requirements Remain Satisfied.................................................8

      B.  The Predominance and Superiority Requirements of Rule 23(b)(3) Remain Satisfied..........................................................................................10

   II.   THE SETTLEMENT MEETS THE STANDARD FOR FINAL APPROVAL UNDER RULE 23(E) ................................................................................................11

      A.  Fed. R. Civ. P. 23(e)(2)(A):  Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class in this Action .......................................12

      B.  Fed. R. Civ. P. 23(e)(2)(B):  The Settlement Was Negotiated at Arm's Length ........13

      C.  Fed. R. Civ. P. 23(e)(2)(C):  The Settlement Provides Substantial Relief for the Settlement Class.............................................................................14

         1.  Fed. R. Civ. P. 23(e)(2)(C)(i):  The Costs, Risks, and Delay of Arbitration, Trial, and Appeal Weigh in Favor of Final Approval .......................................14

         2.  Fed. R. Civ. P. 23(e)(2)(C)(ii):  The Method of Providing Relief is Effective .....16

         3.  Fed. R. Civ. P. 23(e)(2)(C)(iii):  The Proposed Award of Attorneys' Fees and Litigation Costs is Fair and Reasonable           17

         4.  Fed. R. Civ. P. 23(e)(2)(C)(iv):  No Additional Agreements Are Required to be Identified Under Rule 23(e)(3)................................................................17

      D.  Fed. R. Civ. P. 23(e)(2)(D):  The Settlement Agreement Treats Settlement Class Members Equitably.......................................................................17

      E.  The lack of objections and opt-outs favor settlement approval................................18

i

III.   THE NOTICE PROGRAM ADEQUATELY APPRISED CLASS MEMBERS OF THE SETTLEMENT.................................................................................................................20

CONCLUSION.................................................................................................................................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agne v. Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)................................................................................................ 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................................. 10

*Armstrong v. Bestway USA Inc.*,
  No. CV-24-02812-PHX-SHD, 2026 U.S. Dist. LEXIS 71220 (D. Ariz. 2026) ................... 21

*Association for Disabled Americans v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002).............................................................................................. 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)........................................................................................ 12, 15

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................................................... 19

*In re Capital One*,
  80 F. Supp. 3d 781 (N.D. Ill. 2018) ........................................................................................ 19

*Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago*,
  307 F.R.D. 475 (N.D. Ill. 2015)................................................................................................ 9

*Conner v. Fox Rehab. Servs., P.C.*,
  Nos. 23-1550, 23-1684, 2025 U.S. App. LEXIS 1578 (3d Cir. 2025) ................................. 13

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015).................................................................................... 16

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. 2009)............................................... 8

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016).............................................................................................. 19

*Hung v. Vu, D.D.S. v. I Care Credit, LLC*,
  No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639 (C.D. Cal. 2022) ......................... 15

*Ira Holtzman, C.P.A. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ................................................................................................... 10

*Karpilovsky v. All Web Leads, Inc.*,
  No. 17 C 1307, 2018 U.S. Dist. LEXIS 105259 (N.D. Ill. 2018).......................................... 8

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)........................................................................................ 13, 19

*Lee v. Global Tel\*Link Corp.*,
No. 2:15-cv-02495-ODW (PLA), 2018 U.S. Dist. LEXIS 163410 (C.D. Cal. 2018).... 18, 19

*Markos v. Wells Fargo Bank, N.A.*,
2017 U.S. Dist. LEXIS 17546, 2017 WL 416425 (N.D. Ga. 2017) .............................. 15, 16

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................................ 18

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .......................................................................................... 10

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 3d 1002 (N.D. Ill. 2000) ............................................................................ 20

*Murtoff v. My Eye Dr. LLC*,
No. 1:21-CV-02607, 2024 U.S. Dist. LEXIS 172280 (N.D. Ill. 2024) .............................. 13

*Nolte v. Cigna Corp.*,
No. 2:07–cv–2046–HAB–DGB, 2013 U.S. Dist. LEXIS 184622,
2013 WL 12242015 (C.D. Ill. 2013)................................................................................ 18

*Pearson v. Target Corp.*,
968 F.3d 827 (7th Cir. 2020) .......................................................................................... 19

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ........................................................................... 18

*Savanna Grp., Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. 2013) ......................................... 8

*Sessa v. Ableto, Inc.*,
No. 8:23-cv-2219-TPB-CPT, 2026 U.S. Dist. LEXIS 2468 (M.D. Fla. 2026) ................... 15

*Sorsby v. TruGreen Ltd. Partnership*,
No. 20-cv-2601, 2023 U.S. Dist. LEXIS 3345 (N.D. Ill. 2023) ........................................ 13

*Svoboda v. Amazon.com Inc.*,
162 F.4th 821 (7th Cir 2025) .......................................................................................... 11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .................................................................................... 14, 18

*T.K. v. Bytedance Technology Co., Ltd.*,
No. 19-CV-7915, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. 2022) ..................................... 12

*In re Tiktok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ......................................................................... 18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)............................................................................................... 20

*Wilkins v. HSBC Bank Nevada, N.A.*,
    No. 14 C 190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. 2015)..............................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...................................................................................11

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ....................................................................................12

*Wright v. Nationstar Mortgage LLC,*
    No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. 2016)...................................8, 16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958 ADM/AJB, 2012 U.S. Dist. LEXIS 149738 (D. Minn. 2012) ..............21

**Regulations**

47 C.F.R. § 64.1200(f) ................................................................................................5

Fed. R. Civ. P. 23(a)(1), (4) ....................................................................................8, 9

Fed. R. Civ. P. 23(b)(3)..........................................................................................8, 10

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................20

Fed. R. Civ. P. 23(e)(1)(C), (2), (A), (B), (C), (D),
(i), (ii), (iii), (iv), (3) ...........................................................  11, 12, 13, 14, 16, 17, 20

**Other Authorities**

*Judges' Class Action Notice and Claims Process Checklist and
Plain Language Guide* (2010) ....................................................................................21

Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland (collectively, "**Plaintiffs**" or "**Settlement Class Representatives**") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement on the terms set forth in the Settlement Agreement dated September 26, 2025 (ECF No. 121-1) and for final certification of the Settlement Class.

## INTRODUCTION

Over three and a half years ago, Plaintiffs Julie Campbell, Diana Bickford, and Kerrie Mulholland ("**Plaintiffs**")[1] filed this class action lawsuit on behalf of themselves and all others similarly situated, against Defendant Sirius XM Radio Inc.[2] ("**Defendant**" or "**SiriusXM**" and collectively with Plaintiffs, the "**Parties**"), alleging that, since 2020, the company had made illegal telemarketing calls in violation of the TELEPHONE CONSUMER PROTECTION ACT ("**TCPA**"), 47 U.S.C. § 227, *et seq*. (ECF No. 1.) SiriusXM denied any liability, maintained that a litigation class would not have been certified, and believed that its calling practices were lawful and proper. SiriusXM asserted multiple defenses, which if granted, would have been case dispositive, including "established business relationship" ("**EBR**"), prior consent, and reasonable procedures. (*See* Answer and Affirmative Defenses of Defendant SiriusXM Radio LLC, ECF No. 91.) Nevertheless, following years of litigation, and the assistance of two separate mediators, the parties reached the Settlement which created a $28,000,000 non-reversionary common fund to be used to send cash payments to settlement class members. In addition, SiriusXM agreed to make multiple practice changes to its calling procedures.

---

[1] Plaintiff Keith Sadauskas voluntarily dismissed his claims against SiriusXM (ECF. 19).

[2] On September 6, 2024, defendant Sirius XM Radio Inc., a Delaware corporation, was converted into Sirius XM Radio LLC, a Delaware limited liability company, under Delaware law. To avoid any misunderstanding regarding the scope of this action, both entities are granted a release in the Settlement.

On November 10, 2025, this Court granted preliminary approval to the Settlement. (ECF No. 128.) Now, after a months-long notice campaign and hundreds of thousands of claims being filed, Plaintiffs move to seek final approval of that Settlement. If approved, the Settlement Administrator anticipates that the Settlement will pay approximately $39.63 to each of approximately 427,627 individual Class Members who filed claims. *See* Declaration of Steven Weisbrot Re: Notice and Administration ("**Admin. Decl.**"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class, including through implementing business practice changes to correct the issues raised by Plaintiffs, without requiring further delay, risk, and expense.

Pursuant to the preliminary approval order, the Court-ordered notice plan has since been executed and nothing has changed to alter the Court's initial assessment that the Settlement is more than fair, reasonable, and adequate. Individual notice was provided directly to potential Settlement Class Members via email as well as first-class mail, successfully reaching 82.5% of the potential Settlement Class Members and easily meeting the due process standard. (Admin. Decl. ¶ 18.) The Settlement Class's reaction to the Settlement has been positive. Despite notice being sent to over nineteen million (19,000,000) potential Class Members, only one person (represented by professional objector's counsel at the Center for Class Action Fairness ("**CCAF**")) has submitted a timely objection and only forty-five (45) Class Members submitted timely and valid exclusion requests. (Admin. Decl. ¶ 28.) This response weighs strongly in favor of final approval.

For the reasons detailed below, this Settlement is an excellent result for Plaintiffs and Settlement Class Members after years of litigation and hard-fought negotiations. Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class.

2

Plaintiffs request that the Court finally approve the Settlement, grant Plaintiffs' Motion for Approval of Attorneys' Fees, and enter a final judgment dismissing this case.

## BACKGROUND

### I.    SUMMARY OF THE LITIGATION

The Court is familiar with the history of this intensively fought litigation and of Class Counsel's efforts over the past several years to bring the case to a successful resolution. As such, in the interest of judicial efficiency, Plaintiffs respectfully refer the Court to and hereby incorporate by reference Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 121), Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses (ECF No. 132), and the Declaration of Court-Appointed Class Counsel (ECF No. 132-1) for a detailed recitation of the substantive and procedural background of this litigation.

### II.    SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT

#### A.    Settlement Class

The Court preliminarily certified a Settlement Class, which includes

> All natural persons in the United States: (1) who received more than one telephone solicitation call in a 12-month period between April 27, 2019 and October 31, 2025 on their landline, wireless, cell or mobile telephone numbers made by or on behalf of Sirius XM, (2) where such calls were received more than 31 days after registering their telephone number with the National Do-Not-Call Registry, and (3) the person was not a self-paying Sirius XM subscriber at the time of the first call or before the start of the second call.

> All natural persons in the United States: (1) who received more than one telephone solicitation call in a 12-month period between April 27, 2019 and October 31, 2025 on their landline, wireless, cell or mobile telephone numbers made by or on behalf of Sirius XM, and (2) where such calls were received after the person asked to register the landline, wireless, cell or mobile telephone number on which they received those telephone calls on Sirius XM's internal Do-Not-Call list.

(*See* Order granting Prelim. Approval, ECF 128 at 2-3; S.A., Ex. 3.)

3

**B.    Settlement Benefits**

The Settlement provides that Plaintiffs and Settlement Class Members will be entitled to a pro rata distribution of a twenty-eight million dollar ($28,000,000.00) non-reversionary settlement fund, subject to a maximum individual cap of fifteen hundred dollars ($1,500.00), after deducting costs related to required notices, any administrative costs, Class Counsel's attorneys' fees and litigation costs, any incentive awards, and any other costs and expenses related to this Settlement. (S.A. §§ 3, 18.1.) To receive a pro rata payment from the Settlement Fund, Class Members needed to sign a claim form on the Website or submit a paper form. (*Id.* §§ 6.1,6.3.) Any residual amount remaining after two rounds of distribution will, subject to Court approval, be paid to the National Consumer Law Center as a *cy pres* award, not to be used in furtherance of any litigation. (*Id.* § 18.3.) Pursuant to the Court's Preliminary Approval Order, SiriusXM funded the Settlement on or about January 15, 2026. (ECF No. 142-1, at ¶ 5.) The funds were placed in an interest-bearing escrow account with Citibank, N.A., and will continue to remain there until distributed in accordance with this Court's order, wherein, the interest will become part of the corpus used to pay Settlement Class Members. (*Id.*)

In addition, the Settlement also includes business-practice changes addressing SiriusXM's outbound telemarketing activities, informed by the litigation record and expert analysis. (*See* S.A., Ex. 3 § 4 (Practice Changes); Order granting Prelim. Approval, ECF No. 128.) These new business practice changes include requirements that:

> Sirius XM shall include in the letter accompanying its welcome kit an explanation of how Sirius XM communicates with consumers and shall provide notice that Sirius XM may call them regarding their service and trial or other subscription, a URL where they can manage their contact preferences, and an 800 number they can call for customer service.
>
> Sirius XM shall distribute up-to-date business compliance rules to its outbound telemarketing vendors. Such business compliance rules

shall include (a) a requirement that telemarketing vendors scrub the names of consumers who Sirius XM has advised the telemarketing vendors have placed their names on Sirius XM's Do Not Call registry or whose names otherwise are required to be suppressed under applicable state law; (b) Sirius XM's policies regarding maximum number of calls to consumers for each of Sirius XM's marketing campaigns; and (c) Sirius XM's policies regarding daily calling windows.

For the next three years following the Effective Date of this Agreement, Sirius XM or its designees shall use reasonably available technologies to review on a regular basis audio recordings of outbound telemarketing calls, placed by its outbound telemarketing vendors, that are 30 seconds or longer and that were not dispositioned as reflecting a Do-Not-Call request. Should that technology-based review result in a telemarketing call being deemed as a possible Do-Not-Call request, Sirius XM or its designees shall take steps to have the audio recording of the call further reviewed by a person, which may include the vendor that originally placed the call, to determine whether that consumer did in fact make a Do-Not-Call request.

For the next three years following the Effective Date of this Agreement, Sirius XM shall continue to implement a two-way acceptance screen within the touchscreen In-Vehicle Infotainment device (or similar mechanism, such as via a mobile application) in order for a purchaser or lessee to initially access the Sirius XM radio service in all new purchased, used, or leased automobiles that include Sirius XM radio's enabled 360L technology.

(*Id.*)  As this last section shows, for individuals who purchase or lease new vehicles with enabled SiriusXM's 360L technology and register on either the federal or an applicable state Do-Not-Call list, SiriusXM will not make outbound telephone solicitations to them unless that individual took a specified step to enter into a two-way communication with SiriusXM.  (*See* S.A., Ex. 3 § 4.4.)

SiriusXM's practice changes have been fully implemented and should satisfy the requirements of an established business relationship, as set forth in 47 CFR § 64.1200(f).  (*See* S.A., Ex. 3 § 4.)  These non-monetary commitments complement the monetary fund and further the TCPA's privacy-protection objectives.

5

C.     **Preliminary Approval, Notice, and Claims**

On October 3, 2025, Plaintiffs moved the Court for preliminary approval of the Settlement, approval of the proposed notice plan, direction that notice be given to the Settlement Class, and a date for a Final Approval Hearing. (ECF No. 121.) On November 10, 2025, the Court preliminarily approved the Settlement. (ECF No. 128.)

Consistent with the Preliminary Approval Order, the Settlement Administrator implemented the notice plan. SiriusXM provided a number of data files to the Administrator containing the contact information for the potential class members. After quality control checks and deduplication, a total of 19,136,262 unique records were used to provide notice of the Settlement to potential Class Members. (Admin. Decl. ¶ 8.) The Settlement Administrator sent notice via email to 18,061,749 potential Class Members (15,627,098 of which were successfully delivered, i.e. 86.52% of the emails were successful) and ultimately mailed postcard notices to 1,065,543 potential Class Member records without a valid email address. (Admin. Decl. ¶¶ 8, 13, 18.) The Settlement Administrator further disseminated 17,560,725 reminder email notices to potential Class Members who had not unsubscribed from receiving future email correspondence and not already filed a claim. (*Id*. ¶ 14.)

In addition to these direct notices, the Administrator also undertook a successful media notice campaign with advertisements placed on the internet and in various social media platforms. (*Id*. ¶¶ 15-17.) That campaign resulted in over 17.8 million combined impressions, which further spread the reach of the notice campaign. (*Id*.) In total, the Settlement Administrator believes it provided direct notice to 82.5% of the potential Settlement Class Members. (*Id*. ¶ 18.)

The Notice instructed Settlement Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment, either via physical mail or the online claim form; the option to ask to be excluded from the Settlement and

retain the right to bring an individual action against SiriusXM; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (Admin. Decl. ¶¶ 12, 20; ECF No. 128; S.A. Ex. E1, E2, E3.)

Even though the claims period closed on March 21, 2026, to provide the maximum opportunity for Class Members to sign up, the Parties agreed, subject to Court approval, to accept claims filed as late as April 21, 2026.  As of April 13, 2026, with a little over a week left, the Settlement Administrator received 427,627 claims. (Admin. Decl. ¶ 25.) Assuming a total potential class size of up to 20,220,465 people based on the data files provided by SiriusXM, the already filed claims forms represent at least a 2.1% claims rate.  (*Id.*)

D.    **Exclusions and Objections**

The deadline for Settlement Class Members to exclude themselves or object to the proposed Settlement passed on March 26, 2026. (Admin. Decl. ¶ 27.) As of April 7, 2026, only forty-five (45) Class Members filed valid and timely exclusion requests. (Admin. Decl. ¶ 28.)

Out of the nearly 20 million potential class members, just one person filed an objection. The objector, Nigel Cohen, advocated for creating new law with regard to, *inter alia,* designation of the *cy pres* recipient, certain minor aspects of the notice and objection procedures, and the amount of attorneys' fees to be awarded; he also questioned whether the Settlement Administrator had any part in the selection of the escrow bank (it did not).  (ECF Nos. 138, 140.) Each of these objections is baseless, and both Plaintiffs and SiriusXM filed separate responses that describe in detail why the objections are meritless.  (ECF Nos. 143, 144.) For the reasons stated in those responses, the Court should overrule the objections in their entirety.

7

**ARGUMENT**

**I.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

On November 10, 2025, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure ("Rule") 23(a)—numerosity, commonality, typicality, and adequacy—and the predominance and superiority requirements of Rule 23(b). (ECF No. 128.) Since this Order, there have been no developments that warrant alteration of this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

**A.    Rule 23(a) Requirements Remain Satisfied**

*Numerosity*. Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 at *14 (N.D. Ill. 2013). Here, there are approximately 427,627 Class Members who submitted claims and over 18 million potential Class Members who received settlement notice. (Admin. Decl. ¶¶ 18, 25.) Joinder is therefore impracticable, and the Settlement Class satisfies the numerosity requirement under Rule 23. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 U.S. Dist. LEXIS 105259, at *17 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient).

*Commonality.* The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because, by definition, calling programs are carried out on a mass basis, a proposed TCPA class typically contains common issues of law and fact. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *13 (N.D. Ill. Aug. 20, 2009) (collecting cases); *See also Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *20 (N.D. Ill. Aug. 29, 2016) (finding commonality met in

8

TCPA case). Determination of these common issues can resolve the material allegations of TCPA liability for the Settlement Class in one stroke. Indeed, common questions include, *inter alia*, (i) whether SiriusXM's telemarketers placed telemarketing calls on behalf of SiriusXM; (ii) whether the calls were placed to persons registered for the DNC Registry; and (iii) whether SiriusXM's conduct was willful. Thus, the commonality requirement is met.

*Typicality.* Plaintiffs satisfy the typicality requirement under Rule 23 because their claims arise from SiriusXM's calling practices. To satisfy the "typicality" requirement, Plaintiffs' TCPA claim need only arise "from the same event or practice or course of conduct that gives rise to the claims of other class members" and be "based on the same legal theory." *Chicago Teachers Union, Local 1 v. Board of Educ. of the City of Chicago,* 307 F.R.D. 475, 480-81 (N.D. Ill. 2015). Here, Plaintiffs were subjected to the same SiriusXM calling practices, suffered from the same injuries, and will benefit from the relief provided by the Settlement in the same way as the absent Settlement Class members. Thus, Plaintiffs' claims are typical of the class as a whole. As such, typicality is met here.

*Adequacy.* The adequacy requirement is satisfied where (i) there are no antagonistic interests between named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *See Agne v. Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491–92 (N.D. Ill. 2015) (TCPA claim satisfies Rule 23 because the people received the same calls). Here, Plaintiffs have no interests that are antagonistic to the Class. Similarly, the record reflects Class Counsel's zealous efforts in bringing about the Settlement, which satisfies the adequacy prong. (*See* ECF Nos. 42-23, 42-24, & 42-25.)

**B.**    **The Predominance and Superiority Requirements of Rule 23(b)(3) Remain Satisfied**

In addition to satisfying the Rule 23(a) requirements, for settlement purposes the proposed Class must satisfy the additional requirements in Rule 23(b). *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(b)(3), which pertains to a class seeking monetary relief is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." F.R.C.P. 23(b)(3). These requirements are satisfied here.

*Predominance.* The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, while SiriusXM vociferously contested predominance throughout this litigation, for purposes of settlement, common questions predominate over any questions affecting only individual members. TCPA claims, by their nature, involve large numbers of plaintiffs who received similar telemarketing calls using standard scripts, all from a single defendant, and each person is harmed in much the same way. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (discussing how "[c]lass certification is normal in litigation under [the TCPA]"). The facts in the instant matter closely follows the standard TCPA pattern, where all class members were called, more than 31 days after registering on the National Do-Not-Call Registry, where the SiriusXM agents were told to use a script when talking to the call recipients, and all the class members were equally disrupted by the telemarketing calls. (*See* ECF No. 121-3.)

*Superiority.* Furthermore, Settlement Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Settlement Class

10

Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *see also Svoboda v. Amazon.com Inc.*, 162 F.4th 821, 826 (7th Cir 2025). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620.

In sum, final certification of the Settlement Class for purposes of settlement is appropriate.

## II. THE SETTLEMENT MEETS THE STANDARD FOR FINAL APPROVAL UNDER RULE 23(E)

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors: whether

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2). These considerations overlap with the factors previously articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018, which include: (i) the strength of the plaintiff's case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the reaction of members of the class to the settlement; (v) the opinion of competent counsel; and (vi) the stage

11

of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). The record in this case makes clear that approval of the Settlement is warranted under these factors.

A.    **Fed. R. Civ. P. 23(e)(2)(A): Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class in this Action**

Plaintiffs and their chosen Class Counsel have more than adequately represented the Class in this action.  Class Counsel have ample experience litigating TCPA class actions and are well versed in the legal claims at issue and the risks of this case. (*See* ECF Nos. ECF Nos. 42-23, 42-24, & 42-25 (firm resumes of Class Counsel).) Class Counsel have prosecuted this case on behalf of the Class with vigor and dedication for more than three years. (*See* ECF No. 121-3 (Ellzey Decl.); ECF No. 132-1 (Class Counsel Decl.).) "The adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation." *T.K. v. Bytedance Tech. Co., Ltd.*, No. 19-CV-7915, 2022 U.S. Dist. LEXIS 65322, at *11 (N.D. Ill. Mar. 25, 2022) ("Plaintiffs present unrefuted evidence of their counsel's expertise"); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (approving appointment where class counsel had experience and devoted time to the case).

Indeed, Class Counsel is highly experienced in prosecuting class actions, and they are uniquely qualified in that they previously prosecuted the *Buchanan* action. That experience was essential here, as Class Counsel leveraged both their general experience in complex class actions— and their specific experience litigating against SiriusXM—to address the new factual and legal arguments presented by SiriusXM at every stage of this litigation. To prosecute the Class claims, Class Counsel engaged in thorough offensive and defensive discovery, and extensive motions practice. (*See* ECF No. 121-3 (Ellzey Decl.); ECF No. 132-1 (Class Counsel Decl.).) This case settled only after Class Counsel vigorously prosecuted this matter to the edge of class certification.

12

Victory in this case was far from certain at any point. SiriusXM moved to strike class allegations and to dismiss this action.  (ECF Nos. 6, 16.) Thereafter, during the litigation it raised numerous defenses, including EBR, prior consent, and implementation of reasonable procedures. *See Conner v. Fox Rehab. Servs., P.C.,* Nos. 23-1550, 23-1684, 2025 U.S. App. LEXIS 1578, at *27 (3d Cir. Jan. 24, 2025) (affirming denial of class certification in TCPA matter because questions regarding consent). SiriusXM vigorously disputed discovery issues, requiring Plaintiffs to move to compel production, and it opposed Plaintiffs' request for class certification. (ECF No. 78.) If the Court denied class certification, the case would end from a class standpoint, and the Class Members would receive nothing. *See e.g., Murtoff v. My Eye Dr. LLC*, No. 1:21-CV-02607, 2024 U.S. Dist. LEXIS 172280, at *22 (N.D. Ill. Sep. 24, 2024) (denying class certification due to effort required to establish EBR); *Sorsby v. TruGreen Ltd. Partnership*, No. 20-cv-2601, 2023 U.S. Dist. LEXIS 3345, at *16 (N.D. Ill. Jan. 9, 2023) (striking class allegations because of individualized analysis of EBR).  Even if a class were certified and upheld on appeal, the Class would face the risk, expense, and delay of trial and a potentially lengthy appellate process. Because of these costs, risks to both sides, and delays, the Settlement presented a fair and reasonable alternative to continuing litigation.

**B.      Fed. R. Civ. P. 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length**

The Court should next consider whether the settlement was "negotiated at arm's length," and here there can be no question that that this requirement is met.  Fed. R. Civ. P. 23(e)(2)(B). A settlement process facilitated by a neutral mediator is a reliable indicator that the negotiated settlement is reasonable. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 496 (N.D. Ill. 2015) (finding no collusion where the parties reached a settlement with a mediator). Here, the Settlement Agreement arose out of lengthy, well informed, and non-collusive negotiations facilitated by not one, but two nationally recognized mediators, first with Randall Wulff, and, after those

13

negotiations broke down and ended, with retired Magistrate Judge Morton Denlow. (ECF No. 121-3 (Ellzey Decl. ¶¶ 11, 12).)

The mediation took place over three separate sessions, with the first two occurring with Mr. Wulff, and Plaintiffs walking away after the second session believing that settlement was not possible at that time. (ECF No. 34.) Thereafter, the parties returned to litigation, briefing and filing multiple motions, including the motions for class certification and SiriusXM's motion to amend its answer. (ECF Nos. 40-59, 63-64.) Only after this briefing did the parties return to the negotiating table. The parties executed a memorandum of understanding regarding the Settlement following their third full day mediation session, this one with Judge Denlow, and even after reaching that understanding the negotiations continued to reduce the understanding to a formal agreement. (ECF NO. 121-3 ¶ 12.) These lengthy negotiations, along with the lack of any evidence of collusion, mean that this factor also supports final approval.

### C. Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief for the Settlement Class

Federal Rule of Civil Procedure 23(e)(2)(c) requires examination of the relief provided by the Settlement.

#### 1. Fed. R. Civ. P. 23(e)(2)(C)(i): The Costs, Risks, and Delay of Arbitration, Trial, and Appeal Weigh in Favor of Final Approval

In this case, the relief to the Settlement Class is more than adequate in light of the costs, risks, and time required to litigate this action through trial and appeal. "The most important factor relevant to the fairness of a class action settlement is […] the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation modified). Compromise in exchange for certain and timely benefits is an unquestionably reasonable outcome. Settlement is appropriate

14

where plaintiffs face significant hurdles to success. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

Even though Plaintiffs are confident in the merits of their claims, as noted above SiriusXM had several highly credible defenses in this action.  In its opposition to Plaintiffs' motion for class certification, SiriusXM strongly relied on its EBR defense. (ECF No. 78 at pp. 10-15.) It argued that, through a Class Member's purchase of an automobile equipped with a SiriusXM radio, the company had an EBR with "many" of the proposed class members, a fact that alone could have necessitated "millions of mini-trials."  (ECF No. 78 at p. 10.) In addition to the EBR defense, the Court permitted SiriusXM to also plead affirmative defenses of prior express consent and "proper procedures." (ECF No. 90 at p. 6.)  Either defense could have been case dispositive and therefore fatal to Plaintiffs' claims.  (ECF No. 78 at p. 21 (discussing consent defense).)

In contrast, the Settlement secures a cash payment of $28 million and practice changes. Based on the figures presented here (and assuming the Court grants Plaintiffs' fees, costs, and service award requests, and the ultimate administrative costs are consistent with the administrator's projections), the Settlement Administrator anticipates that each Class Member who has asserted a claim should receive approximately $39.63. (Admin. Decl. ¶ 26.) This per-person payment compares favorably to the amounts awarded in other TCPA settlements *E.g., Sessa v. Ableto, Inc.*, No. 8:23-cv-2219-TPB-CPT, 2026 U.S. Dist. LEXIS 2468, at *22 (M.D. Fla. Jan. 7, 2026) (approving settlement preliminarily because $23 recovery "compares favorably to settlement recoveries sanctioned in other TCPA actions in this Circuit and elsewhere." (collecting cases)); *Hung v. Vu, D.D.S. v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639, at *29 (C.D. Cal. Nov. 4, 2022) (finding that the $18.57 "per claimant amount is within the range of other class action settlements under the TCPA" (collecting cases) ); *Markos v. Wells Fargo*

15

*Bank, N.A.*, 2017 U.S. Dist. LEXIS 17546, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides $24.00 per class member, calling the settlement an "excellent result"); *Wright v. Nationstar Mtge. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *28 (N.D. Ill. Aug. 29, 2016) ("the $45 recovery per claimant is also in line with other TCPA settlements"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1040 (S.D. Cal. 2015) (approving settlement where class members received $13.75).  When weighed against SiriusXM's potential defenses, this excellent recovery for the Class weighs strongly in favor of final approval.

### 2.    *Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Providing Relief is Effective*

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

The Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. As shown in the Motion for Preliminary Approval, the Settlement Agreement called for the potential Class Members to receive notice through a number of different methods, ensuring the best practicable notice under the circumstances, which included notice via email, direct mail, a dedicated website, and a social media campaign. (Admin. Decl. ¶¶ 8, 11, 13, 15-17.)

Thereafter, every Class Member was afforded more than adequate time to file for a claim, opt-out of the settlement, or object to the settlement. (*Id*. ¶ 20.) The claim forms were easily available via the Website or in paper form. (*Id*.) To file a claim, Settlement Class Members needed only complete a simple Claim Form and submit it online or through mail. (S.A. § 6.) The claims administrator, Angeion, is an experienced and nationally recognized class action administration firm. (*See* ECF No. 121-2.) Angeion has been reviewing claims for completeness and eligibility, and making final decisions to disallow claims using a review process approved by both parties.

16

(Admin Decl. ¶ 25; S.A. § 6.5.) This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

### 3. Fed. R. Civ. P. 23(e)(2)(C)(iii): the Proposed Award of Attorneys' Fees and Litigation Costs is Fair and Reasonable

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." In accordance with Rule 23(e) and the Settlement Agreement, on February 25, 2026, Class Counsel filed a motion seeking one-third of the settlement fund in attorneys' fees and $167,882 in reimbursable litigation expenses. (ECF No. 132 (the "Fee Motion").) This fee request is reasonable and comparable to other awards in TCPA cases, as discussed in Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (*Id.*). In addition, Plaintiffs are seeking service awards of $10,000 for each Plaintiff, which are appropriate and supported by ample authority within and beyond this Circuit. (*Id.*) Therefore, for the reasons further discussed in the Fee Motion, Plaintiffs' request for fees and a service award are reasonable, and this factor favors approval.

### 4. Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements Are Required to be Identified Under Rule 23(e)(3)

As no additional agreements requiring identification exist, this factor does not weigh either in favor of or against final approval.

### D. Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to submit a claim

17

for a pro rata cash payment. (S.A. § 6.) Because all Settlement Class Members are treated exactly the same, the proposed Settlement satisfies this standard as well. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a pro rata plan of allocation "ha[d] an obvious rational basis" and "the benefit of simplicity").

Further, Direct Notice was sent to potential Settlement Class Members, and they were provided the opportunity to object to or exclude themselves from the Settlement. (Admin. Decl. ¶¶ 25, 27.) The named Plaintiffs each are seeking a Service Award of $10,000.00 for their services on behalf of the Settlement Class. These awards are modest relative to the $28,000,000 common fund (approximately 0.1%) and reflect the Class Representatives' concrete efforts over nearly three years, including assisting the investigation, producing documents, maintaining regular contact with counsel, sitting for full-day depositions, responding to follow-up discovery, and supporting the mediation and settlement process. *Cf. Nolte v. Cigna Corp.*, No. 2:07–cv–2046–HAB–DGB, 2013 U.S. Dist. LEXIS 184622, 2013 WL 12242015, at *4 (C.D. Ill. Oct. 15, 2013) (approving $25,000 incentive awards).  Therefore, the service awards do not create an improper motivation to settle or give rise to undue inequities across the Class.

### E.    The lack of objections and opt-outs favor settlement approval

The Seventh Circuit has held that courts should also consider the opposition, if any, to class settlements when evaluating them for fairness. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Here, 427,627 claims were filed, representing a 2.1% claims rate, which is very much in line with claims rates in other similar TCPA class actions.  *E.g., Lee v. Global Tel\*Link Corp.*, No. 2:15-cv-02495-ODW (PLA), 2018 U.S. Dist. LEXIS 163410, at *21 (C.D. Cal. Sep. 24, 2018) (approving TCPA settlement with claims rate of 1.8%); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 U.S. Dist. LEXIS 23869, at *12 (N.D. Ill. Feb. 27, 2015) (same for 3.16% claims rate); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78, 1384

18

(S.D. Fla. 2007) (same for 1.2% claims rate); *see also In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 929 (N.D. Ill. 2022) ("the average claims rate for class sizes over 2.7 million is about 1.4%").

The opt-out and objection rate also strongly favors approval. The opt-out and objection period to the Settlement ended on March 27, 2026, and the Claims Administrator reports forty-five (45) requests for exclusion and one objection to the Settlement. (Admin Decl. ¶ 28.) This extremely low number of opt-outs and objections counsels in favor of approving the settlement. *Lee*, 2018 U.S. Dist. LEXIS 163410 at *21 (stating that a "low opt-out rate" of just 19 out-outs from a class of 1.8 million "indicates a favorable reception by the class"). "A small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). Here, the opt-out/objection rate ends up being 0.0002%, infinitesimal and in line with other extremely small opt-out rates in other class actions settlements approved in this circuit. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 230 (N.D. Ill. 2016) (holding that a 0.000697% opt-out rate supports the settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) (same, for 0.0002209%); *In re Capital One*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2018) (same, for 0.0032%); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (same, for less than .01%).

Here, the single objection made to the settlement (ECF No. 138) only identifies minor issues with the settlement, none of which are viable based on the factual record here or under Seventh Circuit law. As the Seventh Circuit recently observed "[g]ood-faith objectors should be able to say specifically why the class or a part of it has been deprived of the fair, reasonable, and adequate settlement to which it is entitled." *Pearson v. Target Corp.*, 968 F.3d 827, 838 (7th Cir.

2020). Here, the Objector's attempts fail to show why the Settlement is not fair, reasonable, and adequate. He is only one person out of millions potential of Class Members, and for the reasons stated in the objection responses, Plaintiffs do not believe he is representative of the sentiments of other Class Members but instead has his own political objectives in filing the objection. (*See* ECF Nos. 142, 143, 144.)

As the foregoing shows, it is evident that the Settlement has been well-received by the Settlement Class, meriting final approval. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 3d 1002, 1021 (N.D. Ill. 2000) (where, as here, more than "99.9% of class members have neither opted out nor filed objections," that fact is "strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001).

\* \* \*

As demonstrated by the above, the Settlement is fair, reasonable, and adequate and merits final approval.

## III.    THE NOTICE PROGRAM ADEQUATELY APPRISED CLASS MEMBERS OF THE SETTLEMENT

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. 23(e)(1)(B).  The standard for the adequacy of notice to the class is reasonableness. Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to a class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Here, the Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

20

The Court appointed Angeion to disseminate class notice and to administer the Settlement. (ECF No. 128, ¶ 10.) In accordance with the Court's directive, Angeion employed direct notice that has effectively notified the Settlement Class of their rights under the Settlement. During the Notice Period, Angeion sent notice to 18,061,749 potential Class Members via email and 1,065,543 potential Class Members via direct mail using email and mailing addresses on the class list provided by SiriusXM. (*See* Admin. Decl. ¶¶ 9, 12-13.) Although not required to do so by the Settlement Agreement, Plaintiffs took the additional step of sending reminder email notices to potential Class Members during the crucial period shortly before the claims deadline. (*See* Admin. Decl. ¶ 14.) The reach rate of the notice program was greater than 80% according to the Settlement Administrator. That rate is consistent with that of other class action settlements.[3] *See Armstrong v. Bestway USA Inc.,* No. CV-24-02812-PHX-SHD, 2026 U.S. Dist. LEXIS 71220, at \*28 (D. Ariz. Apr. 1, 2026) (approving notice plan with email, mail, and advertising components, along with a reminder email that would "ensure that at least 80 percent of the class receive action notice"); *In re Zurn Pex Plumbing Prods. Liab. Litig*., No. 08-MDL-1958 ADM/AJB, 2012 U.S. Dist. LEXIS 149738, at 23 (D. Minn. Oct. 18, 2012) (preliminarily approving class where the "anticipated 'reach' of this Notice Plan exceeds 80 percent and meets due process requirements of Rule 23"). Settlement Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. Further, the Notice fully advised Class Members of the binding effect of the judgment on them.

---

[3] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("It is reasonable to reach between 70–95%.").

21

In addition to the direct e-mailed and mailed notice, the Settlement was also widely publicized online.[4] The Settlement was featured on topclassactions.com. and classaction.org.[5] Angeion also created a dedicated Settlement Website — www.sxmtcpasettlement.com. (Admin. Decl. ¶ 20.) The Settlement Website "went live" on January 19, 2026, and was designed to be user friendly to allow Settlement Class Members to easily find general information about this class action Settlement, including important dates, deadlines and answers to frequently asked questions. (*Id.*) On the website, Settlement Class Members can view or download copies of the Class Notice, Claim Form, the Settlement Agreement, and other relevant Court documents. (*Id.*) The Settlement Website also has a "Contact Us" page whereby Settlement Class Members can send a query to Angeion. Angeion also established a dedicated email address to allow Class Members to submit questions regarding the Settlement. (*Id.*) Indeed, the Notice program issued pursuant to the Settlement meets the requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

## CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant final approval of class action settlement and enter the proposed Order.

Dated: April 15, 2026                              Respectfully Submitted,

                                        */s/ Mason Barney*

---

[4] https://listenercare.siriusxm.com/prweb/autoredirect/app/ExternalKM/help/SupportCenter/article/KC-554215/How-do-I-submit-a-claim-for-the-Do-Not-Call-%28Campell-v-SiriusXM%29-proposed-class-action-settlement%3F%C2%A0; https://www.usatoday.com/story/money/2026/02/01/siriusxm-settlement-how-to-qualify/88465040007/.

[5] https://www.classaction.org/media/campbell-et-al-v-sirius-xm-radio-inc-notice.pdf; https://topclassactions.com/lawsuit-settlements/closed-settlements/28m-siriusxm-tcpa-class-action-settlement/.

Mason A. Barney
SIRI & GLIMSTAD LLP
745 Fifth Ave, Ste 500
New York, NY 10151
Telephone: (212) 532-1091
Email: mbarney@sirillp.com

Daniel M. Hutchinson
Jahi L. Liburd
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com
Email: jliburd@lchb.com

Jarrett L. Ellzey
ELLZEY & ASSOCIATES, PLLC
4200 Montrose Blvd., Ste. 200
Houston, TX 77006
Telephone: (888) 350-3931
Email: Jarrett@ellzeylaw.com

Carl R. Draper
FELDMAN WASSER
1307 South 7th Street
Springfield, IL 62703
Telephone: 217-544-3403
Email: cdraper@feldman-wasser.com

*Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(4), the foregoing complies with the type volume limitation, as it is double-spaced and does not contain more than 7000 words or 45,000 characters.

/s/ Mason Barney

23